UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

**RONALD KRICK**, et al.,

       Plaintiffs,

v.

RAYTHEON COMPANY, et al.;

       Defendants.
------------------------------------------------------------x

       Civil Action No. 1:23-cv-8093
       (Donnelly, D.J.)
       (Marutollo, M.J)

<u>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO FILE UNDER SEAL**</u>

       Plaintiffs Ronald Krick, et al. ("Plaintiffs") respectfully submit this memorandum of law in opposition to the motion by Defendants Raytheon Company, et al. ("Defendants") to file confidential settlement releases under seal.

## I.      <u>PRELIMINARY STATEMENT</u>

       Defendants seek to shield from public view settlement agreements that are central to their pending motion to dismiss. They argue these releases should remain permanently sealed because they were confidential when executed over 20 years ago. But courts have repeatedly held that the mere existence of a confidentiality agreement does not justify sealing judicial records which are presumptively open to the public. This is especially true where the case involves matters of significant public concern.  The crash of TWA Flight 800 in 1996 was a tragedy of immense proportions. 230 lives were lost. The disaster prompted sweeping federal investigations and significant reforms to aviation safety. The public has a compelling interest in understanding all aspects of the resulting litigation, including the settlements that are pivotal to Defendants' dismissal motion now before the Court.

Defendants fail to overcome the strong presumption favoring public access to judicial documents. They provide only vague assertions of confidentiality without demonstrating any specific harm from disclosure. The releases contain no trade secrets or sensitive business information that could conceivably warrant sealing. A decades-old confidentiality agreement between private parties does not bind this Court to conceal records that are essential to its public adjudicatory function, especially when they are the lynchpin of a dispositive motion.  Allowing Defendants and those who control the releases to assert their own agreement over which court filings to disclose would undermine the openness of these proceedings and public confidence in the judiciary.

## II.    <u>BACKGROUND</u>

On the evening of July 17, 1996, TWA Flight 800 crashed into the Atlantic shortly after takeoff from New York's JFK Airport. All 230 passengers and crew perished. The tragedy sparked a massive probe by the National Transportation Safety Board, lasting four years and costing over $40 million. Investigators determined the probable cause was an explosion of the center wing fuel tank, resulting from ignition of flammable fuel/air mixture inside.  Multiple victims' families sued Boeing, TWA and fuel system manufacturer Hydro-Aire in various courts. The cases were consolidated in the Southern District of New York by the Judicial Panel on Multidistrict Litigation, entitled *In re Air Crash Off Long Island*, New York, on July 17, 1996, 1:96-mc-07986. The cases settled in 2000 and 2001 after completion of discovery. The releases at issue here emerged from those settlements.

Plaintiffs, representing TWA 800 victims' estates and heirs, filed this action against Defendants in June 2022. The matter was originally filed in the District of Massachusetts before transfer to this District in Fall 2023. On February 1, 2024, Defendants moved for leave to

2

subpoena the prior settlement releases from Boeing. (ECF No. 131.) Magistrate Judge Marutollo granted that application. (Feb. 10, 2024 Minute Order.) Boeing produced the releases subject to a protective order.  Defendants intend to move to dismiss, contending *inter alia* that Plaintiffs' claims are precluded by the releases.

### III.    <u>LEGAL STANDARD</u>

Both the common law and First Amendment grant the public a qualified right of access to judicial documents. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006). Judicial documents are items filed with the court that are relevant to the performance of the judicial function and useful in the judicial process. The Second Circuit has held that documents submitted to a court for its consideration in a summary judgment motion are - as a matter of law - judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment. This principle extends equally to materials submitted in connection with any pleadings or dispositive motions. *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 140-41 (2d Cir. 2016).  The mere existence of a confidentiality agreement does not overcome the presumption of access to judicial documents. *Aioi Nissay Dowa Ins. Co. Ltd. v. ProSight Specialty Mgmt. Co., Inc.*, 2012 WL 3583176, at *6 (S.D.N.Y. Aug. 21, 2012) (denying motion to seal). Rather, the party seeking to seal records must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection and that no alternative exists to continued sealing. *Alexandria Real Est. Equities, Inc. v. Fair*, 2011 WL 6015646, at *2-3 (S.D.N.Y. Nov. 30, 2011). Broad and general findings and conclusory assertions are insufficient to justify deprivation of public access. *Bernstein*, 814 F.3d at 144-45.

IV.  **ARGUMENT**

**A. The Releases Are Judicial Documents Subject to the Presumption of Public Access:**

The settlement releases are concededly "judicial documents" to which the public has a potent right of access. Defendants intend to rely on the releases as the foundation for their dismissal motion. The Court must substantively review the releases to adjudicate the motion. Documents submitted to the court in support of a motion to dismiss are quintessential judicial records. *See Standard Inv. Chartered, Inc. v. Fin. Indus. Regul. Auth., Inc.*, 347 F. App'x 615, 617 (2d Cir. 2009) (summary order). Thus, the presumption of access afforded judicial documents is at its zenith here. *Alexandria Real Est. Equities*, 2011 WL 6015646, at *2.

**B.  Defendants Fail to Overcome the Presumption of Access:**

Defendants do not contest that the releases are judicial documents. Instead, they assert the releases should remain sealed because (1) they were confidential when originally executed, and (2) they contain personal identifying information. Neither argument withstands scrutiny. Confidentiality agreements between parties do not bind the court's treatment of filed materials. In *Lugosch*, the Second Circuit held that documents submitted to a court in support of or in opposition to a motion for summary judgment are judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment, even if the parties have agreed to keep the documents confidential. 435 F.3d at 121. The same rule applies to motions to dismiss. *See Chigirinskiy v. Panchenkova*, 319 F. Supp. 3d 718, 737 (S.D.N.Y. 2018) ("settlement agreement and the parties' briefs pertain to matters directly affecting this Court's adjudication — indeed, the entirety of this motion concerns the interpretation of the Settlement Agreement, and the parties' arguments regarding that motion are presented in the parties' briefs"); and *In re New York City Policing During Summer 2020*

4

*Demonstrations*, 635 F. Supp. 3d 247, 254 (S.D.N.Y. 2022) ("the mere fact that the parties agreed to a confidentiality designation does not overcome the presumption of access to judicial documents", citing *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 168 (S.D.N.Y. 2018) (citing cases).)

Courts roundly reject the proposition that a mere confidentiality agreement defeats the right of access to judicial documents. The parties cannot contract away the public's presumptive right of access to documents that are filed with the Court. This is true even if the parties have agreed to keep the documents confidential amongst themselves. The public's presumptive right of access to judicial documents is rooted in the public's right to monitor the functioning of our courts and to ensure quality, honesty, and respect for our legal system. *Alcon Vision, LLC v. Lens.com, Inc.*, 2020 WL 6784351, at *4 (E.D.N.Y. Nov. 18, 2020) (quoting *Bernstein*, 814 F.3d at 141). The parties' long-ago agreement to confidentiality does not diminish the public's right to access the releases now that Defendants will have placed them before the Court for a merits determination. Holding otherwise would permit litigants to evade the presumption of openness merely by agreeing among themselves to secrecy.

As for personal information, although courts may sometimes seal highly sensitive details like social security numbers or financial records, Defendants fail to show the releases implicate any comparable privacy interests justifying sealing. Defendants vaguely reference personal and business information but do not specify what that entails or how disclosure would inflict harm. Nor do they explain why targeted redactions would not suffice to protect any cognizable privacy concerns short of wholesale sealing. These conclusory assertions fall far short of the specific, on-the-record findings required to conceal judicial documents from public view. *Lugosch*, 435 F.3d at 124.

**C.  The Court Has an Independent Duty to Safeguard the Public's Right of Access Regardless of the Parties' Wishes:**

Even if parties agreed to keep the releases confidential, this Court bears an independent obligation to protect the public's right of access to court records. As the Second Circuit explained in *Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019), judges have a responsibility to carefully scrutinize sealing requests and ensure public access absent the most compelling countervailing interests. The Second Circuit has long noted that the press plays a vital role in ensuring the public right of access and in enhancing the quality and safeguards the integrity of the factfinding process. The Court admonished that district courts must exercise the full range of their substantial powers to ensure against improper sealing. The *Brown* Court vacated sealing orders that failed to conduct a sufficiently searching and particularized analysis, holding that the District Court failed to review the documents individually and produce specific, on-the-record findings that sealing is necessary to preserve higher values.

Likewise here, the Court must take an active role in evaluating Defendants' sealing request and vindicate the public interest, even if both sides prefer secrecy. That parties may have agreed to confidentiality does not absolve the Court of its independent duty to safeguard openness, especially given Defendants' scant factual showing and the paramount public interest at stake. Judicial records should not remain under seal absent the most compelling reasons.

**D.  The Public Interest in Disclosure is Compelling:**

The public's interest in accessing the releases could hardly be greater. The TWA 800 disaster was a seminal event in our nation's history. Air crashes terrify people, and when a case is settled away, the public wants to know why, and understand what is the secret settlement for victim passengers.  The public has an interest in understanding the resulting litigation, particularly the settlements that may impact the fate of this case.  As the Second Circuit

recognized in *Westmoreland v. Columbia Broadcasting System, Inc.*, 752 F.2d 16 (2d Cir. 1984),

the First Amendment does secure to the public and to the press a right of access to civil

proceedings. Public access to civil trials enhances the quality and safeguards the integrity of the

factfinding process, fosters an appearance of fairness, and heightens public respect for the

judicial process, while permitting the public to participate in and serve as a check upon the

judicial process - an essential component in our structure of government. These principles apply

with maximum force here. Concealing the releases would impermissibly hinder the public's

ability to follow these proceedings and evaluate the Court's reasoning.

The TWA 800 disaster and resulting lawsuits have garnered massive media attention.

Numerous press reports covered the litigation and eventual settlements:

> Federal authorities became concerned with the wiring in aging aircraft after an investigation indicated that wiring failures were the possible cause of the TWA 800 accident off the shore of Long Island, New York. In response, President Clinton established the "Gore Commission" to study aircraft safety and security issues, including wiring. In its Final Report, the Gore Commission recommended, inter alia, that the Federal Aviation Administration ("FAA"), in cooperation with airlines and manufacturers, expand its Aging Aircraft program to cover non-structural systems such as wiring.

*Block v. United States*, 66 Fed. Cl. 68, 69–70 (2005). The public wants to know, as seen in *Lahr*

*v. Nat'l Transp. Safety Bd.*, 2006 WL 2854314, at *2 (C.D. Cal. Oct. 4, 2006):

> Plaintiff's main contention, which he seeks to prove through his FOIA requests, is that the Defendants helped participate in a massive cover-up of the true cause of the crash of Flight 800, which he believes was a missile strike.

Even criminal cases have resulted:

> The defendants point principally to a press release announcing the criminal charges, to a letter offered by the government at sentencing, and to a hearsay statement recounted on the NBC Nightly News. The press release announcing the criminal charges stated, in pertinent part:
>
> The criminal complaint outlines efforts by JAMES SANDERS to have laboratory tests done on portions of the TWA 800 wreckage which he unlawfully possessed. An individual employed at the laboratory has informed the FBI that SANDERS

7

emphasized his desire for the tests to identify the presence of solid rocket propellant. The tests were conducted and provided no conclusive evidence of the presence of solid rocket fuel. These results were communicated to SANDERS.

*United States v. Sanders*, 211 F.3d 711, 717–18 (2d Cir. 2000). Given the extensive public reporting on the TWA 800 settlements, shielding the releases now also would serve little practical purpose. The court should not endorse an artificial attempt to conceal information that has already entered the public domain through widespread media coverage.

### E.  The Fact of the Decades Old Settlements is Public Already:

Sealing the releases here would be especially inappropriate because the fact of settlement releases has been judicially reported:

> The Court notes that Plaintiffs previously sued Boeing, TWA, and Hydro-Aire (fuel system manufacturer) in the Southern District of New York and received a settlement. [Dkt. 74 at 14]; see In Re Air Crash off Long Island, No. 96 Civ. 7986, MDL No. 1161 (S.D.N.Y. Oct. 24, 1996).

*Krick v. Raytheon Co.*, 695 F. Supp. 3d 202, 208 (D. Mass. 2023). The redacted releases submitted by Defendants contain no settlement amounts, trade secrets, proprietary information, or other details warranting confidentiality. Furthermore:

> On February 1, 2024, Defendants requested that this Court "permit them to issue subpoenas to [non-party] The Boeing Company for production of the Settlement Agreements or Releases relating to the Plaintiffs or the decedents identified in the Amended Complaint ..." See Dkt. No. 131.

*Krick v. Raytheon Co.,* 2024 WL 4441029, at *2 (E.D.N.Y. Oct. 8, 2024), appeal denied, 2024 WL 4833685 (E.D.N.Y. Nov. 20, 2024).  As this Court has ready made public:

> The Court notes that Plaintiffs previously sued Boeing, TWA, and Hydro-Aire (a fuel system manufacturer) in the Southern District of New York and received a settlement. Dkt. 74 at 14; see In Re Air Crash off Long Island, No. 96-CV-7986, MDL No. 1161 (S.D.N.Y. Oct. 24, 1996); Krick, 695 F. Supp. 3d at 208 n.1.

*Krick*, 2024 WL 4441029, at *2.

8

## V.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to seal and order

the settlement releases filed on the public docket.

Dated: February 3, 2025

                                    Respectfully submitted,

                                    */s/ Stephani L. Ayers*

                                    Stephani L. Ayers
                                    T.M. Guyer and Ayers & Friends, PC
                                    116 Mistletoe Street
                                    Medford, Oregon 97501
                                    stephani@guyerayers.com
                                    T: 813.382.7865

                                    Counsel for Plaintiffs

    TO: All parties of record (via ECF)

9