UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

RONALD KRICK, et al.,

|  |  |
|---|---|
| Plaintiffs, | Civil Action No. 1:23-cv-8093-JAM |
| v. | (Donnelly, D.J.) (Marutollo, M.J) |
| RAYTHEON COMPANY, et al.; |  |
| Defendants. |  |

----------------------------------------------------------x

_____

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LOCKHEED MARTIN CORPORATION'S MOTION TO DISMISS**

_____

Defendant Lockheed Martin Corporation ("Lockheed Martin"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), hereby files this Memorandum of Law in support of its Motion to Dismiss the Plaintiffs' Second Amended Complaint.

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 1

      I.      Background. ................................................................................................... 1

      II.     Procedural History. ....................................................................................... 2

LEGAL STANDARD............................................................................................................. 3

ARGUMENT....................................................................................................................... 5

      I.      Plaintiffs Lack Capacity and Standing to bring their Current Claims. ................... 6

      II.     Plaintiffs Released their Claims Arising from the Crash of TWA 800 Decades ago. ................................................................................................ 12

            A.     Plain Language of Releases Require Dismissal ....................................... 13

            B.     This Court Must Dismiss Irrespective of the Standard Applied ............... 16

      III.    Plaintiffs' Claims are barred by the applicable Statute of Limitations. ................ 19

      IV.    This Case Presents Nonjusticiable Political Questions, warranting dismissal................................................................................................... 22

CONCLUSION................................................................................................................... 26

ii

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*767 Third Ave. Assoc. v. Consulate Gen. of Socialist Fed. Republic of Yugoslavia*,
 218 F.3d 152 (2d Cir. 2000)................................................................................................25

*Aiello v. Kellogg, Brown & Root Servs.*,
 751 F. Supp. 2d 698 (S.D.N.Y. 2011).................................................................................5

*In re Air Crash at Belle Harbor*,
 2006 U.S. Dist. LEXIS 27387 (S.D.N.Y. May 9, 2006)......................................................7

*Alperin v. Vatican Bank*,
 410 F.3d 532 (9th Cir. 2005) .............................................................................................23

*American Pipe & Constr. Co. v. Utah*,
 414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974).......................................................20

*Ashcroft v. Iqbal*,
 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)....................................................4

*Baker v. Carr*,
 369 U.S. 186, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962)..............................................5, 22, 23, 26

*Bao Hua Jie v. United States*,
 2024 U.S. Dist. LEXIS 162793 (E.D.N.Y. Sep. 10, 2024, No. 23-CV-4961).............13, 14, 16

*Barshay v. Naithani*,
 2023 U.S. App. LEXIS 33408 (2d Cir. Dec. 18, 2023, No. 23-382)......................................13

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)......................................................4

*Bennett v. United States Lines*,
 64 F.3d 62 (2d Cir. 1995)....................................................................................................21

*Bryant v. Steele*,
 25 F. Supp. 3d 233 (E.D.N.Y. 2014) .....................................................................................3

*Burnett v. New York Cent. R. R. Co.*,
 380 U.S. 424, 85 S. Ct. 1050, 13 L. Ed. 2d 941 (1965).......................................................20

*Butler v. Am. Trawler Co.,*
    887 F.2d 20 (1st Cir. 1989)............................................................................................8

*Estate of Capo v. Haquif,*
    2019 U.S. Dist. LEXIS 92713 [S.D.N.Y. May 31, 2019]..............................................4, 7, 11

*Carmichael v. Kellogg, Brown & Root Servs.*
    572 F.3d 1271 (11th  Circ. 2009).................................................................................22

*Cerbone v. International Ladies' Garment Workers' Union,*
    768 F.2d 45 (2d Cir. 1985)..........................................................................................21

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002).........................................................................................4

*Cherry v. Hillside Manor Rehab. & Extended Care,*
    No. 06-cv-3296, 2008 WL 2559378, 2008 U.S. Dist. LEXIS 48235 (E.D.N.Y. June
    23, 2008) ......................................................................................................................6

*Corrie v. Caterpillar, Inc.,*
    503 F.3d 974 (9th Cir. 2007) .....................................................................................22

*Cruz v. Korean Air Lines Co.,*
    838 F. Supp. 843 (S.D.N.Y. 1993) ...........................................................................8, 11

*Dillman v. Combustion Engineering, Inc.,*
    784 F.2d 57 (2d Cir. 1986)..........................................................................................21

*Ellul v. Congregation of Christian Bros.,*
    774 F.3d 791 (2d Cir. 2014).........................................................................................5

*Fernandez v. City of NY,*
    2012 U.S. Dist. LEXIS 181631, (E.D.N.Y. Mar. 21, 2012, No. 10 CV 5933).......................17

*Frederick v. Biden,*
    2023 U.S. Dist. LEXIS 200030 (S.D.N.Y. Nov. 6, 2023, No. 23-CV-7659)........................25

*United States ex rel. Geisler v. Walters,*
    510 F.2d 887 (3d Cir. 1975)........................................................................................17

*Gilligan v. Morgan,*
    413 U.S. 1, 93 S. Ct. 2440, 37 L. Ed. 2d 407 (1973)..............................................24

*Glus v. Brooklyn E. Term.,*
    359 U.S. 231, 79 S. Ct. 760, 3 L. Ed. 2d 770 (1959).....................................................20

*Goldman v. Belden*,
    754 F.2d 1059 (2d Cir. 1985)..................................................................................17

*Gregory v. Monroe County Water Authority*,
    795 F. Supp. 92 (W.D.N.Y. 1992) ...........................................................................7

*Hartke v. Bonhams*,
    2024 U.S. Dist. LEXIS 11483 (S.D.N.Y. Jan. 23, 2024).........................................12

*Herb v. Pitcairn*,
    325 U.S. 77, 65 S. Ct. 459, 89 L. Ed. 789 (1945)...................................................20

*Holmberg v. Armbrecht*,
    327 U.S. 392, 66 S. Ct. 582, 90 L. Ed. 743 (1946).................................................20

*In Re Air Crash off Long Island*,
    No. 96 Civ. 7986, MDL No. 1161 (S.D.N.Y. Oct. 24, 1996)..................................18

*Japan Whaling Ass'n v. Am. Cetacean Soc.*,
    478 U.S. 221, 106 S. Ct. 2860, 92 L. Ed. 2d 166 (1986)........................................22

*Joachim v. United States*,
    2023 U.S. Dist. LEXIS 173129 (E.D.N.Y. Sep. 27, 2023, No. 22-cv-5719) .....................7, 11

*Jones v. Bock*,
    549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007)...........................................5

*Kamen v. American Tel. & Tel. Co.*,
    791 F.2d 1006 (2d Cir. 1986)..................................................................................13

*Kramer v. Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991)....................................................................................17

*Krick v. Raytheon Co.*,
    695 F. Supp. 3d 202 (D. Mass. 2023) .....................................................................18

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).......................................11

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)..................................................................4, 11, 13, 16

*Maxwell v. Swain*,
    833 F.2d 1177, 1987 U.S. App. LEXIS 16319 (5th Cir. 1987)................................20

*McCarthy v. Dun & Bradstreet Corp.*,
  482 F.3d 184 (2d Cir. 2007)................................................................................................4

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
  438 F. Supp. 2d 291 (S.D.N.Y. 2006)...............................................................................5

*Miller v. United States*,
  725 F.2d 1311 (11th Cir. 1984) .........................................................................................7

*Occidental of Umm al Qaywayn, Inc. v. A Certain Cargo of Petroleum etc.*,
  577 F.2d 1196 (5th Cir. 1978) .........................................................................................23

*Osbourne v. United States*,
  164 F.2d 767, 1947 U.S. App. LEXIS 3189 (2d Cir. 1947) ...........................................20

*Pearl v. City of Long Beach*,
  296 F.3d 76 (2d Cir. 2002)...............................................................................................20

*Prime Contrs. Inc. v. Aps Contrs. Inc.*,
  2024 U.S. Dist. LEXIS 179233 [E.D.N.Y. Oct. 1, 2024, No. 22-CV-1581]................3, 16, 17

*Ramakrishna C. V. Rao v. New York City Dep't of Parks and Recreation*,
  No. 92 Civ. 2463, 1997 U.S. Dist. LEXIS 13081 (S.D.N.Y. Aug 26, 1997) ..........................21

*Republic of Colombia v. Diageo North America Inc.*,
  531 F.Supp.2d 365 (E.D.N.Y. 2007) .................................................................................5

*Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*,
  896 F.2d 674 (2d Cir. 1990).............................................................................................14

*Richards v. Johnson & Johnson, Inc.*,
  2018 U.S. Dist. LEXIS 152016 (N.D.N.Y. Mar. 30, 2018)..........................................4, 6, 7

*Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*,
  748 F.2d 774 (2d Cir. 1984).............................................................................................17

*Schoeps v. Museum of Modern Art*,
  594 F. Supp. 2d 461 (S.D.N.Y. 2009)................................................................................7

*Roeder v. J.P. Morgan Chase & Co.*,
  2022 U.S. App. LEXIS 2183 (2d Cir Jan. 25, 2022, No. 21-552)........................................20

*Smith v. Keane*,
  1998 U.S. Dist. LEXIS 3702, 1998 WL 146225 (S.D.N.Y. 1998)......................................21

*Smith v. McGinnis*,
 208 F.3d 13 (2d Cir. 2000)..................................................................................21

*Solis v. 666 Fifth Assoc. LLC*,
 2021 U.S. Dist. LEXIS 242532 (S.D.N.Y. Dec. 20, 2021) ................................13, 16

*Stillman v. Marlboro State Hosp*.,
 2003 U.S. Dist. LEXIS 18343 (S.D.N.Y. Oct. 15, 2003) ......................................22

*Estate of Vaiselberg*,
 2003 U.S. Dist. LEXIS 6166, 2003 WL 1878248 .....................................................7

*Whyte v. Bayview Loan Servicing, LLC*,
 2022 U.S. Dist. LEXIS 175095 (E.D.N.Y. Sep. 27, 2022, No. 21-CV-3301)...........4

*In re World Trade Center Lower Manhattan Disaster Site Litigation*,
 828 Fed.Appx. 734 (2d Cir. 2020) .......................................................................13

*Yung v. Lee*,
 432 F.3d 142 (2d Cir. 2005)...................................................................................4

**State Cases**

*Carrick v. Cent. Gen. Hosp*.,
 51 N.Y.2d 242, 414 N.E.2d 632, 434 N.Y.S.2d 130 (N.Y. 1980) .......................7, 11

*Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*,
 17 N.Y.3d 269, 952 N.E.2d 995, 929 N.Y.S.2d 3 (N.Y. 2011).............................13

*Hernandez v. NY City Health & Hosps. Corp*.,
 78 N.Y.2d 687 (1991) ...........................................................................................19

*Mingone v. New York*,
 100 A.D.2d 897, 474 N.Y.S.2d 557 (2d Dept. 1984) .............................................7

*O'Hara v. Bayliner*,
 89 N.Y.2d 636 [1997] ............................................................................................20

**Federal Statutes**

46 U.S.C. § 761.......................................................................................................8

46 U.S.C. § 30106...................................................................................................19

**State Statutes**

N.Y. Est. Powers & Trusts Law § 1-2.13 .................................................................................6, 9

N.Y. Est. Powers & Trusts Law § 5-4.1 ....................................................................................19

N.Y. Est. Powers & Trusts Law § 5-4.1(1)..................................................................................6

**Rules**

Fed. R. Civ. P. § 12 .................................................................................................................2, 4

Fed. R. Civ. P. § 12(b) ...............................................................................................................13

Fed. R. Civ. P. § 12(b)(1)....................................................................1, 3, 4, 5, 7, 11, 12, 13, 16, 26

Fed. R. Civ. P. § 12(b)(6)..........................................................1, 3, 4, 5, 7, 11, 13, 16, 17, 18, 26

Fed. R. Civ. P. § 17(b)(3)............................................................................................................6

Fed. R. Civ. P. § 56....................................................................................................................17

Fed. R. Evid. § 201 ...............................................................................................................17, 19

NY CPLR § 214(5) ....................................................................................................................19

## PRELIMINARY STATEMENT

This case arises out of the July 17, 1996 crash of Trans World Airlines Flight 800 ("TWA 800") into the Atlantic Ocean off the coast of Long Island, New York, resulting in the death of all 230 passengers and crew. Plaintiffs' Second Amended Complaint must be dismissed as Plaintiffs are not authorized personal representatives of estates that have been closed for decades. This lack of standing cannot be corrected through substitution or an amendment, as personal representatives—with the assistance of legal counsel—agreed to and signed general releases decades ago extinguishing all claims related to the subject crash. Plaintiffs' claims must be dismissed for other reasons also, namely as Plaintiffs' claims are barred by the expiration of the statute of limitations and the doctrine of political question. All claims warrant dismissal with prejudice pursuant to Rule 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

### I.    Background.

On July 17, 1996, TWA 800 departed from John F. Kennedy International Airport at approximately 8:20 p.m. and began its transatlantic journey to Paris, France. Within minutes after takeoff, TWA 800 exploded and crashed into the Atlantic Ocean off the coast of Long Island, New York, claiming the lives of all 230 passengers and crew on board. Years of extensive investigation led to the NTSB's finding that the likely cause of the crash was an electrical fire in the aircraft's center fuel tank. Doc. No. 33 ¶ 3. Families asserted wrongful death claims by way of multi-district litigation which ultimately resulted in settlements.

1

Since the crash, multiple conspiracy theories emerged about alternative causes of the crash garnering significant media attention and leading to the vast spread of illogical and false information. Freedom of Information Act ("FOIA") litigation on behalf of physicist, Dr. Tom Stalcup, led Plaintiffs to believe that the NTSB's report is false and amounts to a coverup by the federal government. Doc. No. 33 ¶ 5,6. Further, Plaintiffs filed the present lawsuit on the premise that "Defendants, acting in concert… were testing the Aegis Weapons System and firing SM-2 missiles with live warheads from warship(s) at aerial missile targets off the coast of New York in close proximity to commercial airline flight paths." Doc. No. 33 at ¶ 5. More specifically, Plaintiffs adamantly believe that one of the missiles struck TWA 800, causing it to explode and subsequently crash into the Atlantic Ocean. Based on what Plaintiffs claim to be "newly discovered evidence" obtained from Dr. Stalcup, they initiated the present suit.

## II.    Procedural History.

Plaintiffs, through counsel, filed the instant action on June 28, 2022, in the United States District Court for the District of Massachusetts on behalf of victims Oliver Krick, Ralph G. Kevorkian, Yonatan Rojany[1], Daniel Gaetke[2], O. Lamar Allen and Ashton Allen, and Donald Gough. Doc. No. 33. However, motion practice revealed that venue was improper in Massachusetts and the Judge transferred the matter to the Eastern District of New York on

---

[1] All parties that previously appeared on behalf of victim Yonatan Rojany filed dismissals with prejudice. See Doc. No.'s 139 and 148.

[2] Jodelle Gearon previously appeared on behalf of victim Daniel Gaetke and recently filed a dismissal with prejudice. See Doc. No's 137. Similarly, Todd Gaetke (brother of victim Daniel Gaetke) previously appeared in this action individually, and recently filed a Stipulation of Dismissal with Prejudice. See Doc. No. 138. Craig Gaetke (brother of victim Daniel Gaetke) remains in this action, individually.

September 29, 2023. Doc. No. 99. Shortly thereafter, counsel for all Defendants properly expressed their intent to renew their previously filed Rule 12 motions. Doc. No.'s 108-110.

Subsequently, this Court, at Defendants' request, issued a subpoena to Boeing Company to obtain releases previously executed on behalf of the respective estates (which were unavailable when Defendants filed their dispositive motions in the District of Massachusetts). After the parties obtained the releases, this Court established a briefing schedule for Defendants' Motions to Dismiss. Subsequently, before Defendants filed their opening briefs, Plaintiffs' prior counsel filed a Motion to Withdraw, which was granted on October 8, 2024. Doc. No. 140, 152. The Court then ordered Plaintiffs Ronald Krick, Wanda Kemp, Eileen Zaharioudakis, and Douglas Kevorkian to show cause why they should be allowed to proceed *pro se* with this action on behalf of decedents Oliver Krick, O. Lamar Allen and Ashton Allen, Donald E. Gough, and Ralph G. Kevorkian estates, respectively. Doc. No. 152. The Court specifically directed each of these then *pro se* Plaintiffs to affirm that they were the sole beneficiaries of the estate, that there were no creditors, and to explain why the decedent's survivors do not defeat their status as beneficiaries. Doc. No. 152. The then *pro se* Plaintiffs never provided an adequate response to this order.

On October 18, 2024, Attorney Stephani Ayers filed a Motion to Appear Pro Hac Vice, which was granted the same day. Doc. No. 153. Subsequent to all of these developments, this Court established the most recent briefing schedule for Defendants' Motions to Dismiss which brings us before the Court at this juncture. Defendants also moved to file the subject releases under seal and Plaintiffs objected. Doc. No. 168-174. Subsequently, Defendants received permission

from Boeing to file redacted copies of the subject releases without the need for sealing, and the Court ordered the filing accordingly. Doc. No. 177-178.

## LEGAL STANDARD

Federal courts have consistently held that "the standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'" *See Prime Contrs. Inc. v. Aps Contrs. Inc.,* 2024 U.S. Dist. LEXIS 179233, at \*11 (E.D.N.Y. Oct. 1, 2024, No. 22-CV-1581). A federal court may only exercise subject matter jurisdiction over a cause of action "when it has authority to adjudicate the cause pressed in the Complaint." *Id.* at \*12 (quoting *Bryant v. Steele,* 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014). Therefore, in reviewing a motion to dismiss under Rule 12(b)(1), federal courts are required to "accept as true all material factual allegations in the complaint," and should not "[draw] inferences from the pleadings favorable to the party asserting jurisdiction." *See Whyte v. Bayview Loan Servicing, LLC*, 2022 U.S. Dist. LEXIS 175095, at \*8 (E.D.N.Y. Sep. 27, 2022, No. 21-CV-3301). To prevail, parties asserting subject matter jurisdiction have the "burden of proving by a preponderance of the evidence that it exists." *Id.* (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); Federal Rule 12(b)(6).

"To survive a motion to dismiss for failure to state a claim [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Moreover, "[w]hen deciding a motion to dismiss, the Court's review is ordinarily limited

4

to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.'" *Richards v. Johnson & Johnson, Inc.*, 2018 U.S. Dist. LEXIS 152016, at *28 (N.D.N.Y. Mar. 30, 2018) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, "[t]he Court may also consider 'any document not incorporated but that is, nevertheless, 'integral' to the complaint because the complaint 'relies heavily upon its terms and effect.'" *See Yung v. Lee*, 432 F.3d 142, 146 (2d Cir. 2005) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).

Federal courts have held that Rule 12 motions are the appropriate vehicle for raising defenses based on lack of standing and previously released claims. *See* e.g. *Estate of Capo v. Haquif*, 2019 U.S. Dist. LEXIS 92713 (S.D.N.Y. May 31, 2019). Rule 12(b)(6) is an appropriate method of raising a statute of limitations defense. *See Ellul v. Congregation of Christian Bros.*, 774 F.3d 791 (2d Cir. 2014). If the allegations in a complaint show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim. *See Jones v. Bock*, 549 U.S. 199, 215, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007).

And, finally, federal courts in this state have held that the political question doctrine may properly be raised under Rule 12(b)(1) and Rule 12(b)(6). *See Aiello v. Kellogg, Brown & Root Servs.*, 751 F. Supp. 2d 698, 702 (S.D.N.Y. 2011); *Baker v. Carr*, 369 U.S. 186, 198, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962); *see also Republic of Colombia v. Diageo North America Inc.*, 531 F.Supp.2d 365, 381 (E.D.N.Y. 2007). Pursuant to *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* "[a] motion to dismiss pursuant to the political question doctrine is a motion to dismiss for

5

failure to state a justiciable cause of action." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 438 F. Supp. 2d 291, 295-96 (S.D.N.Y. 2006). "[F]or a motion to dismiss on nonjusticiability to succeed, it must be clear from the Complaint that the case involves or requires determination of an inextricably linked political question." *Id.* at 295.

## ARGUMENT

Plaintiffs are not authorized personal representatives of any estate purportedly pursuing this action, and therefore lack standing and legal capacity to bring claims on behalf of the respective estates. Any opportunity to rectify this defect via amendment or otherwise at this juncture would be futile because general releases were properly executed on behalf of each respective estate in the early 2000s barring any and all future claims such as those asserted in the present action. Even if these incurable defects did not exist, Plaintiffs' claims were asserted after the expiration of the applicable statute of limitations and no tolling provision applies to revive Plaintiffs' claims. Likewise, Plaintiffs' Second Amended Complaint raises several nonjusticiable political questions that fall outside the purview of this Court warranting dismissal.

### I.    Plaintiffs Lack Capacity and Standing to bring their Current Claims.

The Federal Rules of Civil Procedure provide that "capacity to sue for individuals seeking to act in representative capacities is determined 'by the law of the state where the court is located.'" *Richards* at 28, (quoting Fed. R. Civ. P. 17(b)(3)). New York law sets forth clear rules regarding standing to sue in the context of wrongful death claims. Pursuant to N.Y. Est. Powers & Trusts L. § 5-4.1(1), "[t]he personal representative, duly appointed in this state or any other jurisdiction, of a decedent who is survived by distributees may maintain an action to recover damages for a

6

wrongful act, neglect or default which caused the decedent's death against a person who would have been liable to the decedent by reason of such wrongful conduct if death had not ensued." Consequently, the individual entitled to commence a wrongful death action is not the decedent's distributee -- who is the beneficiary of the claim -- but the decedent's personal representative. *Id.* Therefore, the capacity to sue in the wrongful death context is solely vested in a duly appointed representative. New York law specifically defines a personal representative in this context as "a person who has received letters to administer the estate of the decedent. N.Y. Est. Powers & Trusts Law § 1-2.13.

Consequently, New York law prohibits individuals from bringing wrongful death claims on behalf of an estate without a duly appointed personal representative. Likewise, "[a] person who undertakes to settle the estate of [a] decedent without the formality of court administration is known as a 'voluntary administrator' and does not have the power to enforce a claim for the wrongful death or personal injuries of a decedent.'" *See Cherry v. Hillside Manor Rehab. & Extended Care*, No. 06-cv-3296, 2008 WL 2559378, at *5, 2008 U.S. Dist. LEXIS 48235, at *17-18 (E.D.N.Y. June 23, 2008); accord *Schoeps v. Museum of Modern Art*, 594 F. Supp. 2d 461, 466 (S.D.N.Y. 2009). Moreover, "the existence of a qualified administrator is essential to the maintenance of the action and [the] statutory right to recover for wrongful death does not even arise until an administrator has been named through the issuance of letters of administration." *See Estate of Capo v. Haquif*, 2019 U.S. Dist. LEXIS 92713, at *7 (S.D.N.Y. May 31, 2019) (quoting *Carrick v. Cent. Gen. Hosp.*, 51 N.Y.2d 242, 414 N.E.2d 632, 434 N.Y.S.2d 130, 134 n.2 (N.Y. 1980). Thus under New York law, "a [P]laintiff's failure to obtain the requisite letters of

7

administration means that the [P]laintiff cannot rightfully be a personal representative of an estate within the meaning of the statute and thus lacks capacity to bring survival and wrongful death claims." *Richards* at 31.

New York Courts have repeatedly dismissed under both Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1) in instances where individuals who have not been duly appointed as personal representatives have sought to assert wrongful death claims due to a lack of legal capacity. *See* e.g. *Estate of Capo v. Haquif*, 2019 U.S. Dist. LEXIS 92713 [S.D.N.Y May 31, 2019] and *Estate of Vaiselberg*, 2003 U.S. Dist. LEXIS 6166, 2003 WL 1878248 at *1. *See also Mingone v. New York*, 100 A.D.2d 897, 474 N.Y.S.2d 557, 560 (2d Dept. 1984); *Gregory v. Monroe County Water Authority*, 795 F. Supp. 92, 94-95 (W.D.N.Y. 1992); *Joachim v. United States*, 2023 U.S. Dist. LEXIS 173129 (E.D.N.Y. Sep. 27, 2023, No. 22-cv-5719).

If this Court finds that maritime law should apply and there is admiralty jurisdiction, Plaintiffs likewise do not have standing. *Miller v. United States*, 725 F.2d 1311, 1315 (11th Cir. 1984); *See also In re Air Crash at Belle Harbor*, 2006 U.S. Dist. LEXIS 27387, at **21-39 (S.D.N.Y. May 9, 2006) (holding that cases involving the claims of the passenger decedents from the crash of American Airlines Flight 587 over Belle Harbor, New York fell within the admiralty jurisdiction of the federal courts); *see also Butler v. Am. Trawler Co.*, 887 F.2d 20, 21 (1st Cir. 1989).

In the event the Court applies substantive maritime law to this action, the Death on High Seas Act ("DOHSA") may properly be applied. DOHSA provides in pertinent part:

> Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or

8

the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued.

46 U.S.C. § 761 et seq.

Courts have held that the difference between the New York wrongful death statute and DOHSA is "academic, [as] the New York statute has the same effect as DOHSA." See *Cruz v. Korean Air Lines Co.*, 838 F. Supp. 843, 847 (S.D.N.Y. 1993). As further set forth in *Cruz*, "[c]ourts have consistently interpreted language in § 761 [to mean] that the personal representative "may maintain a suit for damages . . . for the exclusive benefit" of other claimants to mean that only the personal representative may bring the claims of the other claimants. *Id*. at 846-847. Therefore, as Plaintiffs in this action have not been duly appointed as personal representatives for the respective estates, they lack capacity to bring the current action under both New York state and maritime law.

Plaintiffs' unsupported statements in this action claiming they are the "personal representatives" on behalf of respective estates have no basis and the Court should disregard them. Specifically, the Second Amended Complaint makes blanket assertions, without supporting documentation, that:

- (1) Plaintiff Ronald Krick brings this action individually and as personal representative on behalf of the Estate of Oliver Krick;

- (2) Plaintiff Douglas Kevorkian brings this action individually and as personal representative on behalf of the Estate of Ralph G. Kevorkian;

- (3) Plaintiff Wanda Kemp brings this action individually and as personal representative on behalf of the Estates of O. Lamar Allen and Ashton Allen; and

9

- (4) Plaintiff Eileen Zaharioudakis brings this action individually and as personal representative on behalf of the Estate of Donald E. Gough.

Doc. No. 33 ¶ 15, 18, 19, 21, 24, 26; *see also* ¶ 106, 122, 130.

In addition to the vague conclusory statements, the Second Amended Complaint fails to provide information concerning whether **any** of the named Plaintiffs are *duly appointed* personal representatives of the estates or if these self-proclaimed personal representatives are qualified to administer the estate in accordance with N.Y. Est. Powers & Trusts Law § 1-2.13. The Second Amended Complaint makes no mention of the timing of any appointments of the purported "personal representatives" in this action, and no letters of administration or documentation whatsoever accompany the Second Amended Complaint to confirm the appointment of any Plaintiff in this action.  This is perplexing in light of the fact that this very issue has been raised in this litigation. *See*, *i.e.*, Transcript of Dec. 16, 2024, Hearing, p. 16. Taken a step further, Plaintiffs aforementioned blanket assertions concerning the identities of alleged personal representatives of the respective estates contradict representations made in the general releases as follows:

| Decedents' Estates | Personal Representative Identified in the Second Amended Complaint | Personal Representative(s) Identified on the face of the Release |
|---|---|---|
| Krick | Ronald Krick | Co-Personal Representatives Ronald W. Krick and Margaret J. Krick |
| Kevorkian | Douglas Kevorkian | Douglas Kevorkian (although Christine Enlow signed the release as surviving spouse of decedent, and is also named as personal representative of the Kevorkian estate in pertinent estate documents |

10

| | | rather than Douglas Kevorkian) |
|---|---|---|
| Gough | Eileen Zaharioudakis | William E. Smith |
| O. Lamar Allen | Wanda Kemp | Betty Anne Allen |
| Ashton Allen | Wanda Kemp | Betty Anne Allen |

In light of Plaintiffs' failure to adequately provide proof of their qualifications to represent each respective estate in this action, all of the purported "personal representatives" in this action lack capacity and standing to sue for wrongful death, are unqualified to recover for the estates, and do not possess the statutory right to do so.

Notwithstanding the lack of information provided concerning the qualifications of these purported administrators, it is well understood that the respective estates in this action were opened decades ago and have been closed for several years without being reopened. A review of estate documents on behalf of the estates of Decedents Krick, Kevorkian, Gough, and the Allens reveals that each estate was closed in the early 2000s. See **Exhibit A**. Plaintiffs Kevorkian, Zaharioudakis, and Kemp are not now, nor have they ever been duly appointed representatives of the Kevorkian, Gough, or Allen estates. Similarly, estate documents reveal that back in the late 90s, Plaintiffs Margareta and Ronald Krick were appointed as personal representatives of the estate of Decedent Oliver Krick. *Id*. However, the Krick estate was closed in August of 2001 and has never been reopened, notwithstanding Margareta and Ronald Krick's representations to the Court that they have assigned their rights in the estate to their son, Christopher Krick, and expressed their wishes to have Christopher Krick serve as the executor of Decedent Krick's estate. Doc. No. 161.

11

Therefore, there is no indication that the remaining Plaintiffs in this action have authority to administer the respective estates or file this action; this includes the remaining Plaintiffs seeking to bring claims individually. This lack of authority is underscored by the Plaintiffs' failure to adequately respond to the Court's order directing the then *pro se* Plaintiffs to explain their relationship to the estates. Doc. No. 152; 161-163.

Much like the children of Decedent Alfredo Cruz discussed in *Cruz v. Korean Airlines Co.*, several of the Plaintiffs in this action are passive beneficiaries and have no authority to bring claims on behalf of the respective estates. *See Cruz* at 846-847 (explaining that the right to settle and litigate wrongful death claims rested with Roberta Cruz, the widow of Decedent Alfredo Cruz and duly appointed legal representative of his estate, and the children of the Decedent lacked standing to prosecute their claims). Likewise, this case is also similar to *Estate of Capo v. Haquif*, in which the Plaintiffs did not possess letters of administration at the commencement of their action, resulting in the dismissal of their action pursuant to Rule 12(b)(6). *Estate of Capo v. Haquif*, 2019 U.S. Dist. LEXIS 92713 (S.D.N.Y. May 31, 2019).

As stated in *Makarova v. United States*, "[a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. *See Makarova* at 119. In *Joachim v. United States*, this Court dismissed the Plaintiff's wrongful death action pursuant to Rule 12(b)(1) because the Plaintiff had not received letters of administration for the Decedent's estate at the time of filing her complaint. *See Joachim* at *7; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 n. 5, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (noting that the absence of standing is considered a jurisdictional defect and

12

"standing is to be determined as of the commencement of suit."); *Carrick v. Cent. Gen. Hosp.*, 51 N.Y.2d 242, 249, 414 N.E.2d 632, 434 N.Y.S.2d 130 (noting that under New York law, standing is assessed at the time of filing).

Similarly in *Hartke v. Bonhams*, a Plaintiff sought to bring an action on behalf of the estate of her uncle without being duly appointed as a personal representative of his estate, resulting in the Court's determination that she lacked standing to bring the action. As a result, the Court dismissed the niece's action for lack of subject matter jurisdiction with prejudice pursuant to Rule 12(b)(1). *Hartke v. Bonhams*, 2024 U.S. Dist. LEXIS 11483 (S.D.N.Y. Jan. 23, 2024). Plaintiffs in this action have failed to provide letters of administration to prove the existence of a duly appointed administrator on behalf of any of the respective estates involved in this action. As they lack standing, Plaintiffs' current action is jurisdictionally defective.

Providing Plaintiffs with an opportunity to correct these issues is not possible; any such attempt to become a personal representative would conflict with a predecessor estate that was opened for the purpose of resolving earlier claims arising out of this crash. Moreover, such an opportunity would be prejudicial to Defendants, further delaying the resolution of a case that has been riddled with delays since its inception due to Plaintiffs' array of ongoing issues including, but not limited to, Plaintiffs filing in the wrong venue, Plaintiffs' former counsel seeking to be relieved, and the then *pro se* Plaintiffs' delay in responding to orders concerning their relationship to the estates of the decedents.

More importantly, any amendment of the pleadings would be futile as the estates released any claims arising out of this high-profile plane crash decades ago. These broad releases were

13

signed by the estates with the representation of highly skilled counsel in exchange for significant monetary settlements.

**II.     Plaintiffs Released their Claims Arising from the Crash of TWA 800 decades ago.**

Plaintiffs seek to use a conspiracy theory to litigate claims that were unequivocally released decades ago and are requesting that this Court disregard the effects and consequences of releases to enable Plaintiffs to relitigate barred and expired claims. This Court has offered differing opinions concerning the proper vehicle under Federal Rule 12(b) in which to present evidence of releases for the purposes of dismissal as will further be discussed below. Irrespective of whether the argument is made under Rule 12(b)(1) or 12(b)(6), this Court has sufficient grounds to dismiss Plaintiffs' claims due to the execution of broad releases on behalf of each respective estate.

**A.   <u>Plain Language of Releases Require Dismissal</u>**

When "resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court… may [consider] evidence outside the pleadings." *See Makarova* at 113; *see also Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986). A "valid release" typically operates as "a complete bar to an action on a claim which is the subject of the release." *Bao Hua Jie v. United States*, 2024 U.S. Dist. LEXIS 162793, at *7-8 (E.D.N.Y. Sep. 10, 2024, No. 23-CV-4961) (quoting *Centro Empresarial Cempresa S.A. v. América Móvil*, *S.A.B. de C.V.*, 17 N.Y.3d 269, 952 N.E.2d 995, 1000, 929 N.Y.S.2d 3 (N.Y. 2011). Moreover, "[i]f the language of the release is unambiguous, the signing of the release is binding on the parties. *Id*. Courts in this circuit have held that settlements have "the effect of mooting subsequent claims by a third party contemplated in the settlement agreement*." Solis v. 666 Fifth Assoc. LLC*, 2021 U.S. Dist. LEXIS

14

242532, at *8 (S.D.N.Y. Dec. 20, 2021); *see also In re World Trade Center Lower Manhattan Disaster Site Litigation*, 828 Fed.Appx. 734, 736 (2d Cir. 2020).

Generally, a Plaintiff's release of all claims against a Defendant devoids the Plaintiff of any cognizable interest in a related subsequent lawsuit asserting the same or similar claims. *Solis v. 666 Fifth Assocs. See also Barshay v. Naithani*, 2023 U.S. App. LEXIS 33408 (2d Cir. Dec. 18, 2023, No. 23-382). Our Courts have held that a motion to dismiss for failure to state a claim may only be decided after determining that the Court has subject matter jurisdiction to hear the case. *See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990). If a court lacks subject matter jurisdiction, it cannot properly address the merits of a Defendant's arguments that a Plaintiff has failed to state a claim for relief. *See Boa Hua Jie v. United States,* at *4. Here, the Court lacks subject matter jurisdiction over Plaintiffs' claims due to the existence of valid releases executed decades ago.

Plaintiffs instituted the present action despite the existence of previously executed *Releases of All Claims* entered into on behalf of each respective estate during the late 90's and early 2000s in response to the TWA 800 crash. *See* **Exhibit B**.  The releases brought an end to multi-district litigation resulting from the crash, namely case number 1:96-cv-7986, which consolidated various related cases. Each release contained the same language, with the exception of differing releasor and attorney's names to coincide with each respective estate. Each respective release contains clear language barring any future claims, such as the ones currently instituted. Specifically, the releases contain the following specific language including but not limited to the following:

> Releasors state that they intend to release fully all individuals, entities or corporations, whether specifically *named or not*, that might be liable for damages

15

arising out of the injury to or death of Decedent. Releasors agree that they will not, directly or indirectly, make or cause to be made any further action against any person (including any individual, corporation or other entity) for losses, damages, or injuries arising out of the injury to or death of Decedent.

*Exhibit B, Section 5* (emphasis added).

Further, Section 8 of the releases expressly provides the following clear language that

operates as a bar the present action:

Releasors enter this release contemplating the possibility that facts may be subsequently discovered that could support claims as yet unasserted against Releasees for compensatory, consequential and/or punitive damages. Releasors realize that losses, injuries or damages not now known may be subsequently discovered and that their known losses, injuries or damages may prove to be greater than presently believed. Releasors assume all risk, chance or hazard that their losses, injuries or damages may be or become permanent, progressive, greater or more extensive than is now known, anticipated or expected.  Releasors intend to discharge Releasees from all liability for all losses, injuries or damages arising out of the injury to or death of Decedent, both those now known and those that may be subsequently discovered. This Release shall not be subject to any claim of mistake of fact or law by Releasors. *Releasors also fully understand and acknowledge that facts concerning their claims may be found hereafter to be other than or different from the facts they now believe to be true. Releasors expressly accept and assume the risk of any such possible differences in facts and agree that this Release shall remain in full effect notwithstanding any such difference in facts.*

*Exhibit B, Section 8* (emphasis added).

Each Defendant in this action can be rightfully considered as an anticipated Releasee within

the meaning of the releases. The first page of the releases includes inclusive language to expand

the definition of Releasees and includes the following description of additional parties as Releasees

under the agreements:

[A]ll other persons and entities not specifically identified who are or may be liable to Releasors in whole or in part for any and/or all damages and losses to Releasors, whether known or unknown, arising out of or in any way related to or resulting from the loss of TWA Flight 800.

16

*Exhibit B, Pg. 1.*

Notwithstanding the unambiguous release language, Plaintiffs opted to proceed with the instant lawsuit for the exact same incident that is the subject matter of the prior lawsuit. Within each release, the Releasors acknowledged that they signed knowingly, voluntarily, and of their own free will, and expressly confirmed that they consulted with their attorneys concerning the release and had been fully advised with respect to their rights and obligations thereunder. *See* **Exhibit B**, Sections 17-18. In addition, *Stipulations and Orders of Dismissal with Prejudice of all Claims* arising from the deaths of each decedent referenced in this action were executed in the early 2000s. The *Stipulations and Orders of Dismissal* are referenced in each respective court docket, which is publicly accessible.

Plaintiffs recently acknowledged the existence and validity of the releases. Doc. No. 174. There is simply no basis to contest that they are binding on Plaintiffs. The parties to each respective release indicated that they were the "sole heirs at law of Decedent and that there is no "Executor, Executrix, Administrator, Administratrix, or other Personal Representative of the Will or of the Estate of Decedent other than the undersigned…'" **Exhibit B**, **Section 2**. Additionally, the releases extended to "all heirs and dependents of Decedent[s] not otherwise identified, and their successors, and assigns that may now or in the future assert a claim, demand, action or bring suit arising out of injury to or death of Decedent." **Exhibit B, Section 6**. Each Releasor to the subject releases signed each release with knowledge that any future claim on behalf of each respective estate would be barred, and with the intent that their claims would be forever discharged. Therefore, the current

17

action is barred by the subject releases, and this Court is devoid of jurisdiction over Plaintiffs' claims.

### B. <u>This Court Must Dismiss Irrespective of the Standard Applied</u>

Although not attached to Plaintiffs' Second Amended Complaint, the Court has authority to review and consider the releases to determine whether it lacks subject matter jurisdiction under Rule 12(b)(1). *See Makarova* [cite] at 113. This Court allowed the subpoena to Boeing to retrieve copies of the releases and their authenticity is undisputed. In fact, this Court recently dismissed at the same stage a Plaintiff's complaint for lack of subject matter jurisdiction due to a settlement effectively releasing all of the Plaintiff's claims. *See Bao v. United States,* 2024 U.S. Dist. LEXIS 162793 (E.D.N.Y. Sep. 10, 2024, No. 23-CV-4961)*; see also Solis v. 666 Fifth Assocs*., 2021 U.S. Dist. LEXIS 242532 (S.D.N.Y. Dec. 20, 2021).

Alternatively, dismissal is warranted under Federal Rule 12(b)(6). *Prime Contrs. Inc. v. Aps Contrs. Inc*., at \*15-16 (finding that a challenge to contractual standing implicates the merits of a claim rather than a court's subject matter jurisdiction).[3] Generally, when ruling on a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "[t]he Court [typically] limits itself to facts stated in the complaint, documents attached to the complaint as exhibits, or incorporated in the complaint by reference." *Fernandez v. City of NY*, 2012 U.S. Dist. LEXIS 181631, at \*5 (E.D.N.Y. Mar. 21, 2012, No. 10 CV 5933). However, "the Court may also take judicial notice of matters, as per Fed. R. Evid. 201." *Id*. at \*6; *Kramer v. Time Warner Inc*., 937

---

[3] Defendants recognize the differences in the case at bar from *Prime*, as Defendant Lockheed is not a signatory to the release but is a third party beneficiary of this broad release.

F.2d 767, 773 (2d Cir. 1991) (citing *Goldman v. Belden*, 754 F.2d 1059, 1065-66 (2d Cir. 1985), and *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir. 1984)). "A court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" *Kramer* at 774 (2d Cir. 1991) (citing *United States ex rel. Geisler v. Walters*, 510 F.2d 887, 890 n.4 (3d Cir. 1975)). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Fernandez* at *7.

"A court may only take 'judicial notice of a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned.'" *Prime Contrs. Inc. v. Aps Contrs. Inc.*, at *19. In some instances where courts have opted to take judicial notice of matters outside of the Complaint, they have chosen to convert the motion to dismiss under Rule 12(b)(6) into a motion for summary judgment under Rule 56. Although similar instances of such conversion have occurred during litigation in this very Court and within this circuit, this matter presents differing circumstances that may reasonably be considered to warrant dismissal under Rule 12(b)(6) as will further be discussed below.

Although the releases are not attached to the Complaint or in any way incorporated by reference, the Massachusetts District Court previously took judicial notice that "Plaintiffs previously sued Boeing, TWA, and Hydro-Aire (fuel system manufacturer) in the Southern District of New York and received a settlement. [Doc. 74 at 14]; *see In Re Air Crash off Long*

19

*Island*, No. 96 Civ. 7986, MDL No. 1161 (S.D.N.Y. Oct. 24, 1996); *Krick v. Raytheon Co.*, 695 F. Supp. 3d 202, 208 (D. Mass. 2023). Likewise, in the present case, the Court has (1) acknowledged and reviewed the subject releases on various occasions before setting a briefing schedule on this motion; (2) granted the parties' request to issue subpoenas to non-party Boeing Company for production of the settlement agreements or releases relating to the Plaintiffs or decedents identified in the Second Amended Complaint. Doc. No. 152 at 4; and (3) recently ordered the filing of the subject releases on the public docket. Doc. No. 177, which in and of itself will provide this Court with sufficient grounds to take judicial notice of the releases.

Plaintiffs do not dispute the existence or importance of the releases and have made strong assertions about the public's interest concerning the settlements, specifically noting that the "TWA 800 disaster and resulting lawsuits have garnered massive media attention, and that "[n]umerous press reports covered the litigation and eventual settlements." Doc. No. 174. Plaintiffs themselves have asserted that the releases are "judicial documents," and recently argued that "[d]ocuments submitted to the court in support of a motion to dismiss are quintessential judicial records." Doc. No. 174. Likewise, Plaintiffs themselves have also referenced this Court's acknowledgement of the existence of the subject releases, along with the Massachusetts District Court's acknowledgment of the prior settlements. Doc. No. 174 at 8.

Given the publicity surrounding the settlement itself, the publicly accessible Stipulations and Orders of Dismissals filed on behalf of the Plaintiffs, this Court's acknowledgement of the prior settlement and existence of releases, and Plaintiff's acknowledgment of the releases, this Court may reasonably take judicial notice of the releases pursuant to Fed. R. Evid. 201 without

20

need to convert the present motion to a motion for summary judgment. Based on the current facts, the existence of the releases is generally known within this trial Court's territorial jurisdiction and can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned. On its face, the release language is unequivocally clear enough to show that Plaintiffs' current claims are forever barred and are not rightfully before this Court. Therefore, dismissal with prejudice is appropriate under the circumstances because affording Plaintiffs the opportunity to establish standing at this time would undermine the purpose and effect of the releases which contemplated the present claims.

### III.     Plaintiffs' Claims are barred by the applicable Statute of Limitations.

Pursuant to New York Est., Powers & Trusts Law § 5-4.1, an action to recover damages for wrongful death must be commenced within two years after decedent's date of death. Failure of a personal representative to commence an action for wrongful death within two years of the date of decedent's death bars the action. *See Hernandez v. NY City Health & Hosps. Corp*., 78 N.Y.2d 687 (1991). Similarly, New York generally assigns a three-year period to personal injury claims. See N.Y. C.P.L.R. § 214(5). However, 46 U.S.C. § 30106 sets forth the applicable statute of limitations for maritime actions and states: "Except as otherwise provided by law, a civil action for damages for personal injury or death arising out of a maritime tort must be brought within 3 years after the cause of action arose." 46 U.S.C. § 30106. As aforementioned, regardless of whether maritime law or New York state law governs this action, Plaintiffs claims are equally barred as untimely because Plaintiffs [knew or had] "reason to know of the injury that is the basis of this action well before the statute of limitations expired." *See Roeder v. J.P. Morgan Chase & Co*.,

21

2022 U.S. App. LEXIS 2183 (2d Cir Jan. 25, 2022, No. 21-552) (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002).

Here, Plaintiffs filed their original Complaint on June 28, 2022. At the latest, the statute of limitations ran on July 17, 1999, making Plaintiffs' Second Amended Complaint over two decades too late. Therefore, it would be prejudicial to Defendants to allow Plaintiffs to proceed with this lawsuit in light of the expiration of the statute of limitations.

Pursuant to *O'Hara v. Bayliner*, "[t]he well-settled and limited circumstances for equitable tolling of the statute of limitations are summarized as follows: (1) the plaintiff timely filed the complaint in the wrong forum (see, *Burnett v. New York Cent. R. R. Co.*, 380 U.S. 424; *Herb v. Pitcairn*, 325 U.S. 77; *Maxwell v. Swain*, 833 F.2d 1177, supra; see also, *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, (2) the Defendant actively misled the plaintiff (see, *Glus v. Brooklyn E. Term.*, 359 U.S. 231; *Holmberg v. Armbrecht*, 327 U.S. 392), or (3) the Plaintiff in some extraordinary way had been prevented from complying with the limitations period (see, *Osbourne v. United States*, 164 F.2d 767, 769)." *O'Hara v. Bayliner*, 89 N.Y.2d 636, 646 [1997]. Here, Plaintiffs' Second Amended Complaint cannot reasonably be considered as timely because it was filed decades after the statute of limitations expired. Plaintiffs have not alleged sufficient facts to indicate that Defendant Lockheed Martin Corporation misled them in any form or fashion. Plaintiffs vaguely indicate in the Complaint that Defendants "took active steps to mislead the families and the public, as well as conceal that the TWA 800 crash was caused by a missile, including confiscating and concealing evidence from the United States Navy." Doc. No. 33 ¶ 100. However, Plaintiffs fail to explicitly assert how Defendant Lockheed Martin Corporation

22

specifically misled them. Plaintiffs indicate that they learned "key facts" during a meeting with Dr. Stalcup on April 15, 2021, however, they fail to include pertinent information about said key facts or an explanation of why those facts were incapable of discovery within the statutory time period. *Id*. at ¶ 98. For the same reasons, Plaintiffs cannot reasonably argue that they were prevented in some extraordinary way from complying with the limitations period and have not alleged sufficient facts to support such an assertion.

Equitable tolling is distinct from the doctrine of equitable estoppel; equitable tolling prevents the running of a statute of limitations against a Plaintiff who is unaware that he has a cause of action because of Defendant's fraudulent acts or concealment. *See Dillman v. Combustion Engineering, Inc*., 784 F.2d 57, 60 (2d Cir. 1986); *Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 48-49 (2d Cir. 1985). According to *Bennett v. United States Lines*, "[t]he doctrine may be applied in cases where the defendant is shown to have "engaged in conduct, often itself fraudulent, that concealed from the plaintiff the existence of the cause of action." *Bennett v. United States Lines*, 64 F.3d 62, 66 (2d Cir. 1995) (quoting *Cerbone*, 768 F.2d at 48). Equitable tolling, which allows a party to file an action beyond the expiration of a statute of limitations, "applies only in the rare and exceptional circumstance." *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). Our Courts have held that in order to effectively plead the doctrine of equitable tolling, the plaintiff must plead "(1) the wrongful concealment by the defendant of its actions; (2) the failure by the plaintiff to discover the operative facts underlying the action within the limitations period, and (3) the plaintiff's due diligence to discover the facts." *See Ramakrishna C. V. Rao v. New York City Dep't of Parks and Recreation*, No. 92 Civ. 2463, 1997 U.S. Dist.

23

LEXIS 13081, *15-16 (S.D.N.Y. Aug 26, 1997) (citing *Dillman v. Combustion Engineering, Inc.*, 784 F.2d 57, 60 (2d Cir. 1986)); *Smith v. Keane*, 1998 U.S. Dist. LEXIS 3702, 1998 WL 146225 at *4 (S.D.N.Y. 1998). *See also Stillman v Marlboro State Hosp.*, 2003 U.S. Dist. LEXIS 18343, at *4 (S.D.N.Y. Oct. 15, 2003).

Here, Plaintiffs alleged fraudulent concealment and an alleged coverup on behalf of the Defendants. Plaintiffs failed to show that they have acted diligently to discover the "newly discovered evidence." It is difficult to understand how any "key facts" were discovered 20+ years after this incident in light of the scope of the NTSB investigation, international publicity, and prior litigation where Plaintiffs were represented by legal counsel. Even if the Court were to determine that equitable tolling applies under the circumstances, Plaintiffs have effectively released their claims in this action, mooting any potential relief under the statute of limitations.

## IV.    This Case Presents Nonjusticiable Political Questions, warranting dismissal.

In their Second Amended Complaint, Plaintiffs raise nonjusticiable political questions concerning military affairs which falls outside the purview of federal courts. The political question doctrine prohibits federal courts from evaluating questions committed exclusively to coordinate branches of government. *Japan Whaling Ass'n v. Am. Cetacean Soc.*, 478 U.S. 221, 230 (1986); *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 982 (9th Cir. 2007); *Carmichael v. Kellogg, Brown & Root Servs.*, 572 F.3d 1271 at 1280. In *Baker v. Carr*, the Supreme Court identified the following six characteristics of political-question cases:

> (1)    A textually demonstrable constitutional commitment of the issue to a coordinate political department; or

24

(2)    A lack of judicially discoverable and manageable standards for resolving it; or

(3)    The impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or

(4)    The impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or

(5)    An unusual need for unquestioning adherence to a political decision already made; or

(6)    The potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker v. Carr*, 369 U.S. 186, 217 (1962).

While there is some room for overlap amongst the analyses, these are six independent tests—if any one factor is inextricably present, dismissal is appropriate. *Alperin v. Vatican Bank*, 410 F.3d 532, 544 (9th Cir. 2005); see also *Occidental of Umm al Qaywayn, Inc. v. A Certain Cargo of Petroleum etc.*, 577 F.2d 1196, 1203 (5th Cir. 1978). Similar to the many cases that directly implicate military affairs, this case raises a nonjusticiable political question and exhibits most of the characteristics of political question cases as set forth in *Baker*. Plaintiffs' Second Amended Complaint contains multiple allegations that invoke the political question doctrine. Specifically, Plaintiffs allege:

• Testing missiles off the east coast of the United States was a departure from prior practices. (Doc. No. 33, ¶ 32.)

• The missile program that resulted in the crash of TWA 800 became a high priority for the U.S. Government in 1996 when then Secretary of Defense William Perry sought an increase in funding for the Navy's Aegis Missile system. (*Id.* ¶ 55.)

• DOD proposed that this missile system proceed "as quickly as possible to production and deployment" in order to increase defense capabilities against missiles

25

from hostile countries. (*Id.* ¶ 56.)

- In a news briefing from the Missile Defense Agency and DOD, Secretary Perry characterized the missile threat from rogue nations as "here and now." (*Id.* ¶ 57.)

- Funding was approved and the Navy accelerated testing and development of the next-generation Aegis Missile System. (*Id.* ¶ 58.)

- Lockheed Martin designed the SPY-ID(V) radar pursuant to design plans and specifications. (*Id.* ¶ 145.)

- At that time there were no Navy ships that could accommodate the new radar and computer systems, so the radar testing was conducted from CSEDS. (*Id.* ¶¶ 63-64.)

- Instead of waiting five years for the ships to be constructed with the SPY-ID(V) radar so that testing could be conducted far from congested air corridors and at established test ranges, the SPY-ID(V) radar was tested on an expedited basis in and around the CSEDS in New Jersey. (*Id.* ¶ 65.)

- The United States "worked closely with all of the other Defendants in conducting the missile testing that caused the crash of TWA 800" and was "responsible for the decision to test missiles in the area where TWA 800 was downed." (*Id.* ¶¶ 114-16, 126-28.)

Therefore, it is quite evident that litigating this matter will certainly require consideration of the "foreign policy and national security" issues that courts recognize are outside of the scope of Article III's purview. Adjudication of the claims and defenses regarding Lockheed Martin's alleged negligence or any alleged product defect will require reviewing, among other things: (1) the DOD's decisions to make the Navy's Aegis missile system a high priority in 1996; (2) the decision to proceed "as quickly as possible to production and deployment" in order to increase defense capabilities against missiles from hostile countries; (3) the decision by the Navy to accelerate testing and development of the Aegis Weapons System; (4) the decision to conduct the SPY-ID(V) radar testing from CSEDS and off the East Coast near civilian air traffic (and the area

26

where TWA 800 was allegedly downed) on an expedited basis instead of waiting five years for the SPY-ID(V) radar to be installed on Navy ships; (5) the decision to depart from prior practices and test missiles off the East Coast; (6) the DOD's procurement decisions related to the SPY-ID(V) radar; and (7) the design plans and specifications of the SPY-ID(V) radar. Plaintiffs put these decisions directly at issue in the Second Amended Complaint. As the Supreme Court stated in *Gilligan v. Morgan*, these are all complex, "subtle, and professional decisions as to the composition, training, equipping, and control of a military force" and therefore improper for judicial second-guessing. *Gilligan*, 413 U.S. 1, 10 (1973).

In the event that this Court does not find that the Second Amended Complaint raises a political question, Lockheed Martin's anticipated affirmative defenses will likely raise political questions. As with any tort, causation is key here; Lockheed Martin would raise defenses and issues that directly call into question the military decision-making regarding the testing of the SPY-ID(V) radar as alleged by Plaintiffs. Lockheed Martin's defenses will require, among other things: (1) analyzing the SPY-ID(V) radar and other system specifications; (2) analyzing any decision-making by the United States with respect to when and where the testing was conducted; (3) subpoenaing all relevant military personnel records; (4) subpoenaing all relevant training manuals and documents for relevant military personnel conducing the alleged testing; (5) determining if operator error led to the alleged errant missile; and (6) determining if a product defect of another system not produced by Lockheed Martin was causal. Thus, Lockheed Martin's defenses in and of themselves raise a nonjusticiable political question. As illustrated in *767 Third Ave. Assoc. v. Consulate Gen. of Socialist Fed. Republic of Yugoslavia*, in instances where "adjudication would

27

force the court to resolve political questions, the proper course for the courts is to dismiss." *767 Third Ave. Assoc. v. Consulate Gen. of Socialist Fed. Republic of Yugoslavia*, 218 F.3d 152, 164 (2d Cir. 2000). *See also Frederick v Biden*, 2023 U.S. Dist. LEXIS 200030 (S.D.N.Y. Nov. 6, 2023, No. 23-CV-7659) (where Plaintiff's case was dismissed for lack of subject matter jurisdiction because his claims challenged policy choices and value determinations constitutionally committed for resolution to Congress).

Lastly, in order to adequately defend against Plaintiffs' products liability claims, Lockheed Martin will have to question the military decisions behind the testing of the SPY-ID(V) radar— decisions regarding the location, timing, type of missile(s), which Navy ships were involved, the Navy personnel involved, etc. These decisions would also relate back to when the United States made choices concerning the design of the various systems operated with the SPY-ID(V) radar. These questions are relevant to whether the SPY-ID(V) radar was the proximate cause of TWA 800's crash. Ultimately, it would be impossible for the Court to decide the issues in this case without making an initial policy determination of a kind clearly for non-judicial discretion (the third *Baker* factor). And the Court could not independently resolve these issues while simultaneously extending the Executive and Congress the respect due to a coordinate branch of government (the fourth *Baker* factor). The political question that Plaintiffs would force this Court to examine is inextricable and make this case nonjusticiable and subject to dismissal.

## CONCLUSION

In light of the foregoing, Lockheed Martin requests that the Court grant this Motion to Dismiss Plaintiffs' Second Amended Complaint under both Rule 12b(6) and 12(b)(1) with

prejudice. Lockheed Martin further requests that the Court grant any other and further relief that

the Court deems just and proper.

Dated this 1st day of April, 2025.


Respectfully submitted,

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP**


_____
William J. Katt (PHV)
william.katt@wilsonelser.com
John P. Loringer (PHV)
john.loringer@wilsonelser.com
David A. Frank II (PHV)
david.frank@wilsonelser.com
555 East Wells Street, Suite 1730
Milwaukee, WI 53202
414-276-8816

John P. Kelly
john.p.kelly@wilsonelser.com
150 E 42nd Street
New York, NY 10017
212-915-5848

Kathryn A. Grace (PHV)
kathryn.grace@wilsonelser.com
8444 Westpark Drive, Suite 510
McLean, VA 22102
703-852-7869

*Attorneys for Lockheed Martin Corporation*

29

## CERTIFICATE OF SERVICE

I, William J. Katt, hereby certify that the foregoing document was filed through the ECF system, the document will be sent electronically to the registered participants, and paper copies will be served via first class mail on those indicated as non-registered participants.

_____
William J. Katt

30