# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------x
                             23-CV-8093(AMD-JAM)

RONALD KRICK, ET AL,

                         United States Courthouse
        Plaintiffs,         Brooklyn, New York

        - versus -         August 22, 2024

RAYTHEON COMPANY, ET AL.,

        Defendants.
------------------------------x

      TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
        BEFORE THE HONORABLE JOSEPH A. MARUTOLLO
          UNITED STATES MAGISTRATE JUDGE
              VIA VIDEOCONFERENCE

APPEARANCES
Attorney for Plaintiffs: BAILEY & GLASSER LLP
                        209 Capitol Street
                        Charleston, West Virginia 25301
                        BY:  TODD A. WALBURG, ESQ.
                             ERIC B. SNYDER, ESQ.

Attorney for Raytheon:  FITZPATRICK & HUNT, TUCKER, COLLIER
                        PAGANO, AUBERT LLP
                        Tower 49, Twelve E. 49th Street
                        31st Floor
                        New York, New York 10017
                        BY:  RALPH V. PAGANO, ESQ.
                             SHANE B. NICHOLS, ESQ.

For the Defendant:      WILSON ELSER MOSKOWITZ EDELMAN &
                        DICKER LLP
                        8444 Westpark Drive, Suite 510
                        McLean, Virginia 22102
                        BY:  KATHRYN A. GRACE, ESQ.
                        Wilson Elser
                        150 E 42nd Street
                        New York, New York 10017
                        BY:  JOHN KELLY, ESQ.

Transcription Service:  Georgette K. Betts, RPR, FCRR, CCR

(Appearances continued on next page.)

APPEARANCES

For the United States:    DOJ-CIV TORTS BRANCH
                          P.O. Box 14271
                          Washington, D.C. 20044
                          BY:  ROBERT KELLY, III, ESQ.

                          DOJ-CIV AVIATION, SPACE & ADMIRALTY
                          LITIGATION
                          BY:  JILL ROSA, ESQ.

                          DOJ-CIV CIVIL DIVISION, T-ASA
                          175 N Street NE 8th Floor
                          Washington, D.C. 20002
                          BY:  THOMAS M. BROWN, ESQ

Transcription Service:    Georgette K. Betts, RPR, FCRR, CCR
                          Phone:  (201)314-3902
                          Email:  Georgetteb25@gmail.com

Proceedings recorded by electronic sound recording.
Transcript produced by transcription service.

(In open court; all present via teleconference and/or videoconference.)

THE COURTROOM DEPUTY:  Docket number 23-CV-8093, Krick versus Raytheon Company.

Will the parties please state their appearances for the record starting with the plaintiff.

MR. WALBURG:  Todd Walburg, specially appearing for the plaintiffs.

MR. SNYDER:  Eric Snyder, your Honor, from Bailey & Glasser LLP in Charleston, West Virginia.  I am not pro hac'd, I want to note that please, and also specially appearing along with Mr. Walburg.

MR. KELLY:  For the defendants, your Honor, this is Robert Kelly for the Department of Justice.

THE COURT:  Okay.  Great.

MS. GRACE:  Good afternoon, your Honor.  Kathryn Grace from Wilson Elser.  I'm also here with John Kelly on behalf of Lockheed.

THE COURT:  Good afternoon.

Are there any other attorneys appearing on the line?

MR. PAGANO:  Yes, your Honor.  Ralph Pagano from Fitzpatrick Hunt & Pagano on behalf of the Raytheon Company.

MS. ROSA:  Jill Rosa with the Justice Department for the United States.

MR. BROWN:  Thomas Brown with the Justice Department

4

PROCEEDINGS

for the United States.  Good afternoon, your Honor.

MR. NICHOLS:  Yes, your Honor, I'm Shane Nichols with Raytheon, but I have not been pro hac'd and am observing.

THE COURT:  Okay.  And if we could, I know there are a number of other individuals on the line, including the individual plaintiffs, some of the individual plaintiffs.  If you haven't already identified yourself, if you could just identify, your Honor, and indicate whether or not you're a plaintiff to this case or a nonparty.

MS. MICHELSON:  Lisa Michelson, plaintiff.

THE COURT:  And again --

MR. RONALD KRICK:  Ronald Krick, plaintiff.

THE COURT:  -- if you just want to unmute yourself for those of you who are about to speak.

But go ahead, I think Mr. Rojany was just about to speak.

MR. ROJANY:  Yes.

MR. RONALD KRICK:  Ron Krick is on just to listen.

MR. ROJANY:  Eric Rojany, I'm a plaintiff.

MS. KEMP:  Wanda Kemp a plaintiff.

DR. STALCUP:  Tom Stalcup, a nonparty.  And I believe Margaret Krick tried to speak, but her microphone was muted.

MS. MARGARET KRICK:  Yes.

DR. GROGAN:  Good morning.  Christine Grogan,

PROCEEDINGS

plaintiff.

THE COURT: Okay. Is there anyone on the line who has not yet identified themselves?

Okay. So, again, I'm a Magistrate Judge Marutollo, we're here for a status conference. I'm grateful that the individual plaintiffs are on here as well.

Let me just ask first for plaintiffs' current counsel just to provide any updates, separate and apart from what was in the August 15th, 2024 status report. So, Mr. Walburg, can you start there, where things currently stand?

MR. WALBURG: Yes, your Honor, I'd be happy to. There have not been any real new developments. I was informed that certain plaintiffs are still looking for new counsel.

The one new development is that one of the plaintiffs, Christopher Krick, discharged me and my prior firm as counsel and has elected to proceed pro se in this action.

THE COURT: Okay. And Mr. Krick, Christopher Krick reached out, I believe he is flying at the moment, he's unavailable to be here. I believe I heard, though, another individual who was appearing on -- I don't want say on his behalf, if he's going to be a pro se litigant he's not allowed to have someone appearing on his behalf, but I think another person is on here who may be an associate to Mr. Krick; is that right?

PROCEEDINGS

DR. STALCUP: Yes, your Honor --

MR. RONALD KRICK: Yes, this is Ron Krick.

DR. STALCUP: -- that is me. Chris Krick asked me to come here because he and other plaintiffs asked me to help them find substitute counsel, so anything you have -- any questions you have in that regard I'm here to help answer those questions.

THE COURT: Okay. And just to be clear, is Ronald Krick also seeking at this point to discharge Mr. Walburg, or is it only Christopher Krick?

So, Mr. Ronald Krick, I think you may be on mute.

MR. RONALD KRICK: I'm sorry, you cut out. What was the question?

THE COURT: So Mr. Walburg just indicated that Christopher Krick has discharged Mr. Walburg and Christopher Krick is now appearing pro se. At least as of this moment, Mr. Ronald Krick, are you also discharging Mr. Walburg and planning to proceed pro se, or is that still to be determined?

MR. RONALD KRICK: Right now my son has full capacity for myself and my wife Margaret. So, basically, we've put Tom Stalcup in charge for now because Christopher is on a flight and he can't be here.

THE COURT: And just to be clear, I'm sorry, Margareta Krick?

MR. RONALD KRICK: Margaret Krick.

PROCEEDINGS

THE COURT:  Margaret Krick, sorry.  I see you on the line as well.  You're muted though just to note, Ms. Krick.

Just for clarity sake on the docket, are you both at this point, Mr. Ronald Krick and Margareta Krick, are you joining in Christopher Krick's request to discharge Mr. Walburg and to proceed pro se?

MR. RONALD KRICK:  Ronald Krick is definitely, but I don't know, Margaret is in Germany so she may have a hard time communicating.

THE COURT:  Ms. Krick, I see you but you're on mute, so if you could just unmute yourself.

MS. MARGARET KRICK:  Okay.

THE COURT:  There you go.

MS. MARGARET KRICK:  Can you hear me now?

THE COURT:  Yes.

MS. MARGARET KRICK:  Yes, I'm in Germany at the time.  I apologize the time frame issues and everything.

Yes, I'm with Ronald Krick.  Our son Chris is handling this from now on.  We signed the paper work that he will take care of this.

THE COURT:  Okay, well let me just back up for a second here, I want to revisit the Chris Krick proceeding pro se issue in a moment.

Mr. Walburg, was there anything else you wanted to raise at this point?

PROCEEDINGS

MR. WALBURG: No, thank you, your Honor.

THE COURT: Okay. Let me just hear from the government before I discuss the next steps here.

MR. KELLY: Yes, your Honor. This is Robert Kelly for the United States.

This is somewhat unprecedented. Dr. Stalcup is not a party, he's not an attorney, and he's here claiming to speak on behalf of multiple now pro se plaintiffs. We were not aware that this meeting -- this hearing was open to the public and we'd object to his presence here in general because he is not a party to this case and he cannot represent anybody.

Beyond that --

THE COURT: Well, let me just interrupt there.

So, first, I agree with the government that Mr. Stalcup is not and cannot represent any pro se litigants. However, he is able to attend this conference, which is a public conference, but I'm not going to, unless I ask him a question in terms of scheduling or something like that involving Christopher Krick, I'm not going to, you know, ask him to speak nor will I respond to any comments that are made.

So, Mr. Stalcup, again I appreciate you identifying yourself earlier, but you're not here as an attorney, you're not representing anyone but you're welcome to join as everyone as it is a public proceeding.

I interrupted the government, so go ahead.

MR. KELLY: In addition, your Honor, thank you, Eric Rojany is no longer a party to this case. I believe he dismissed his cause of action a little while ago. I may be wrong, I could possibly be corrected, but I believe Mr. Rojany dismissed his case a little bit ago.

There are several other plaintiffs who aren't in attendance here and obviously that's a very curious situation as well, but it's the United States' position, and I believe the rest of the defendants are joining us, that we've arrived at this point in time in this case, which we view more as a show cause point in time to determine why the plaintiffs should be even allowed to continue on.

The Court issued a very, very clear, explicit, nonnegotiable order back on June 24th that plaintiffs were to obtain new counsel by July 12th. Just before that date, the plaintiffs issued or requested an extension of time and the Court granted that for an additional 30 days and that 30 days passed on August 12th. On August 12th nothing happened. The plaintiffs didn't ask for more time, the plaintiffs didn't respond, rather they just blew off the Court's order.

There is no new attorney. We've been waiting months now, since apparently April 1st for the plaintiffs to find new attorneys. We've been told that there's one, two, three different potential law firms who have been investigated their participation in this case on behalf of the plaintiffs and

Case 1:23-cv-08933-AMD-JAM   Document 20-2   Filed 09/02/25   Page 101 of 333 PageID #: 1920

nobody showed up.  To us that means that there is nobody who is going to show up.

Granting the plaintiffs any additional time to find new counsel at this point in time is just wasting more government resources, more resources for Raytheon, more resources for Lockheed Martin, more resources for the Court.

This case has been in litigation for over two years and we haven't even gotten to the point where any party has answered a complaint yet.  The United States has been involved in this case for almost three years now because the administrative claims were filed on October 4th with the United States Navy, the Missile Defense Agency and the Department of Defense.  Time keeps ticking and the defendants have the right to defend themselves against these allegations and accusations and because the plaintiffs can't find counsel and because the plaintiffs don't seem interested in prosecuting this case anymore, we'd ask that the whole thing be dismissed.

As you're well aware, your Honor, from the last hearing, if Mr. Walburg, Mr. Snyder, the rest of Bailey Glasser are allowed to withdraw, pro se plaintiffs cannot represent an estate.  What's more so, and what we've come to learn since the last hearing, is that under the likely operable law, either admiralty or New York State law, pro se plaintiffs cannot bring their own action for a wrongful death.

Case 1:23-cv-08993-AMD-JAM   Document 20-2   Filed 09/02/25   Page 12 of 33 PageID #: 1521

Actions must be brought by personal representatives of an estate on behalf of a certain narrow group of beneficiaries. Without personal representatives, without estates none of these plaintiffs have standing.  And as to the United States, that's an issue of subject matter jurisdiction and sovereign which cannot be waived, cannot be equitably tolled, cannot be anything, it's the beginning and end of things because of the Court's inherent power.

As the United States explained during the last hearing, it is our belief that what undergirds this entire thing is the language of the releases.  And when lawyers who are being interviewed by these plaintiffs take a look at the language of the releases, they realize that these claims have all been waived, they've all been released, there is no moving forward for anybody here and we're just spinning our wheels and needlessly spending money.

And so, therefore, we do not take a position on specifically what it is that Mr. Walburg is asking for with regard to withdrawal for himself and Bailey Glasser, but it's our position that if that is granted, then this entire case needs to be dismissed.  And either if it isn't granted, we've run to the point where something has to be done.  Kicking this can any further down the road, your Honor, is just wasting time, wasting money, wasting resources that we should be spending on other things.

THE COURT:  Okay.  Do any of the other defendants want to be heard?

MS. GRACE:  Your Honor, on behalf of Lockheed Martin, I would just say that we join in Mr. Kelly's arguments.

MR. PAGANO:  Your Honor, Raytheon Company joins in Mr. Kelly's position and arguments.

THE COURT:  Let me ask class counsel, what's your position on whether withdrawal dooms your clients' claims?

MR. WALBURG:  Your Honor, we have no position on that, that seems like legal issue that would have to be briefed.

THE COURT:  Okay.  So let me ask -- and Mr. Walburg, if could you address this as well, my understanding are -- and I'll talk a little bit about what the government argued in a moment, but just as a matter of logistics, it seems like the -- there are two categories of plaintiffs, right, and we talked about this a little bit the last time at this conference.  There are plaintiffs who are appearing individually and then there are plaintiffs who are appearing on behalf of the estate of the decedents.  The individual plaintiffs -- and, again, here, Mr. Walburg, I'd like you to just tell me if I missed anyone or I missed saying anything.  The individual plaintiffs are:  Margareta Krick, Christopher Krick, Craig Gaetke, and again apologies if I'm mispronouncing

anyone's name, Christine Grogan, Michael Deteresa, Charles Henry Gray IV and Chadwick Graham Gray.

Are there any other individual plaintiffs, at least as it is listed right now in the complaint?

MR. WALBURG: Your Honor, two of the plaintiffs that you mentioned previously voluntarily dismissed their claims, that's the Gray plaintiffs that you mentioned at the end.

THE COURT: Okay.

MR. WALBURG: The other -- just for the record, the other plaintiffs that previously voluntarily dismissed their claims were Eric Rojany, Jodelle Gearon, and Todd Gaetke.

THE COURT: Okay.

MR. WALBURG: That's in response to your prior question. I don't know if I heard you mention Douglas Kevorkian as an individual plaintiff, he is one.

THE COURT: Well, let me just clarify, my understanding -- hang on just one second.

(Pause in proceedings.)

THE COURT: There are also the estate plaintiffs who are suing on behalf of the estates, that would be Ronald Krick on behalf of Oliver Krick; Douglas Kevorkian on behalf of Ralph Kevorkian; Lisa Michelson on behalf of Yonatan Rojany; Wanda Kemp on behalf of O. Lamar Allen and Ashton Allen; and Eileen Zaharioudakis on behalf of Donald Gough; is that right?

MR. WALBURG: That's correct, your Honor.

PROCEEDINGS

THE COURT: So with that in mind, are there any plaintiffs I missed, just as a procedural matter?

MR. WALBURG: Your Honor named all of the plaintiffs.

THE COURT: Okay.

I know there was a reference earlier made, Mr. Walburg, that some of the plaintiffs are still seeking counsel, which plaintiffs are seeking to obtain attorneys?

MR. WALBURG: I would -- let's see, perhaps the individual plaintiffs can speak to that or -- because I'm not involved in that process, it's --

THE COURT: Well, are any of the plaintiffs that are on the line right now currently seeking an attorney?

DR. GROGAN: Yes. Mr. Walburg asked me that this week and I replied that due to him withdrawing and then trying to find someone I am trying to seek someone. And what the Department of Justice just said is not exactly correct on the timing, but we can talk about that later.

THE COURT: Okay. So besides Dr. Christine Grogan, any other plaintiff who is currently seeking an attorney?

MS. KEMP: I am. Wanda Kemp.

THE COURT: All right. Any other plaintiffs on the line seeking an attorney?

MS. MICHELSON: I am. Lisa Michelson.

THE COURT: So let me ask Ms. Michelson, Dr. Grogan,

Ms. Kemp, the government is right, I mean I did set a deadline for the plaintiffs to obtain an attorney. What efforts were taken to try to obtain an attorney during the Court-ordered period?

Let me start with, Dr. Grogan.

DR. GROGAN: Sure. Both Wanda Kemp and myself were working with trying to get the same two lawyers. We've spent significant time with them. Tab -- I don't have their name in front of me, Mr. Walburg does. They went back to Mr. Walburg, did some discovery with him. They seemed to be all on board and then suddenly withdrew.

And there's some details behind that I think probably not best said in this particular situation for reasons -- Dr. Stalcup has more details on that.

DR. STALCUP: Yes.

DR. GROGAN: Very specific reasons they withdrew and the Department of Justice said we went through four sets of attorneys, that's not accurate. There was one --

THE COURT: Let me just interrupt you. I more interested in finding out the efforts to obtain new counsel.

DR. GROGAN: Yes, sir. We just found out about a week ago that we were turned down from this counsel, it might have been -- I don't have the calendar in front of me, but it was within I'd say 10 days and we obviously haven't been able to find anyone else.

We have one other attorney we're speaking to right now.

THE COURT: Okay. I guess let me just talk for a moment about next steps here for the plaintiffs.

Again, I reiterate what I said at the last conference in June, I share the government's -- first, let me say I share the government's concern here and frustration, because this is a case that has been stagnant for some time. The plaintiffs have an obligation to move the case forward. Federal Rules of Civil Procedure 1 requires a just and speedy resolution of cases and right now as the magistrate judge here, although I'm not presiding over this case in terms of dispositive motion practice, I do have an obligation to keep this case moving forward and I am a bit worried that while I gave a deadline for the plaintiffs to find new counsel, while there does appear to be some attempts taken to try to obtain new counsel, that there are -- there is no new counsel and the same issues remain.

I want to just emphasize again what I indicated at the last conference. Okay?

As I said in the minute entry, this is from June 24th: The plaintiffs are reminded that a person who is not an attorney may only represent himself in a pro se action. He may not represent another entity, citing to a case from the Southern District of New York. Hammond-Williams on behalf of

Hammond versus Fuchs.

Then, an administratrix or executrix of an estate may not proceed pro se when the estate has beneficiaries or creditors other than the litigants, and that was a citation to the case *Pridgen versus Andresen* from the Second Circuit, which is the Court appeals here, because they may not appear pro se on behalf of estate. Okay.

The personal interests of the estate, other survivors, and possible creditors...will be affected by the outcome of the proceeding and only an administrator and sole beneficiary of an estate with no creditors may appear pro se on behalf of estate.

Again, the government has pointed this out, if there is no attorney representing the estate plaintiffs, those claims and those plaintiffs will likely be dismissed from the case.

Further, as the government points out, under the relevant maritime law here and even under Second Circuit law, it would appear that the individuals, even as pro se litigants who are suing on behalf of wrongful death -- a wrongful death claim would be liable to have their claims dismissed as well.

So I want to emphasize that point because if the plaintiffs here are planning to proceed pro se, there is a real risk to the plaintiffs that the defendants will not only win on their motion, but I'm confident that the defendants

will move for costs stemming from their motion practice and the litigation overall. And it would appear to me that withdrawing the case now may perhaps avoid that as an option.

And, again, I speak as the magistrate judge here and I'm happy to kind of discuss the potential for settlement or resolution, but it would again appear to me, as a neutral arbiter, that if the government and the co-defendants are successful in their motion, the end result here will not only be that, you know, the plaintiffs lose, but that the defendants will have every incentive to move for costs.

And, again, I really emphasize that even apart from the issue related to standing for, you know, not having an attorney present, there's the larger issue that is shaping this discussion which is related to the underlying settlement, and the government raised at prior conferences that would seem to obviate any claims here.

So, ultimately -- and I also add that the plaintiffs need to keep in mind that I'm not going to indefinitely keep Mr. Walburg and plaintiffs' current counsel in this case indefinitely, right. The Court has to rule on that issue and the Court, frankly, is inclined to grant that motion. When that happens, the plaintiffs need to keep in mind that their claims may inherently be extinguished, right, and frankly, this may be something in which the plaintiffs need to think about whether they even want to proceed in this case because,

Case 1:23-cv-08993-AMD-JAM   Document 20-2   Filed 09/02/25   Page 20 of 33 PageID #: 1593

as I said a moment ago, if they have attorneys, if you have attorneys that doesn't necessarily mean that you'll get past any bar from prior settlement or statute of limitations issues.  And again I think the defendants, as most defendants would after, you know, defeating what they consider to be a frivolous motion, would move for costs and that might be avoided now, and I would encourage the parties if there's any interest in withdrawing the claims here, to think about whether the parties, the plaintiffs are interested in withdrawing claims to avoid having to pay costs later.

So I don't know if there's any thoughts here from any of the pro se plaintiffs about what I'm discussing.

DR. STALCUP:  Your Honor, the only pro se plaintiff here is Chris Krick.  I just want to say something not on his behalf, but I just want to say what he's in the proceeding of doing.  He's in the process of having his parents --

THE COURT:  Well, let me interrupt you first, Mr. Stalcup, there are other pro se plaintiffs on the screen here, I do want to hear from them first.  I take the government's point that --

DR. STALCUP:  I understand.

THE COURT:  -- a third party is not permitted to speak on behalf of pro se litigants.  Having said that, to the extent there is information that he'd like to share, I'll hear it but I'm not going to necessarily act on it --

DR. STALCUP: I understand.

THE COURT: -- but let me just ask, for the pro se plaintiffs that are on the line, if any of you are able to speak first. Dr. Grogan or Ms. Kemp, Ms. Michelson, Mr. Krick.

UNIDENTIFIED SPEAKER: An extension of time.

THE COURT: I'm sorry just to be clear, that was -- the line indicates Gaetke?

UNIDENTIFIED SPEAKER: Yes, Gaetke, yes.

UNIDENTIFIED SPEAKER: Yeah, I'd like to ask for more time.

UNIDENTIFIED SPEAKER: An extension of time.

DR. GROGAN: Definitely an extension of time. I think, your Honor -- I'm in healthcare so I'm not a lawyer, talking a lot of this lawyer talk is over my head, but I can tell you I was at the Federal Court in Boston with Wanda, she's my aunt and Ronald is my father and it seemed to me that the judge there felt there was very material data that would -- and I'm not going say the right wording legal-wise but the statute of limitation she sort of felt with this new data that came to light, which I won't get into specifics, she felt there was room for this to be relooked upon. And so we believed our counsel was all in based on this conversation, so it was quite a surprise for the withdrawal. And since we've had subsequent lawyers trying to talk to it, whatever

information they're getting, seems to be not coherently corroborated with the data we heard that day in Boston.

So, I'm probably talking in circles because I'm not a lawyer, I'm not using lawyer speak but --

THE COURT: No, no, Dr. Grogan, you're not speaking in circles and I appreciate that. I will say, though, a couple things. One, I understand what the judge in Massachusetts meant, that there may have been some insinuation made, but I also think that the situation has changed very drastically since that point.

We're right now in the Eastern District of New York, there is currently a plan here to move to dismiss this case separate and apart from whether or not the plaintiffs are represented, and there certainly seems to be a very strong basis to grant that motion, but separately, you know, keep in mind that the underlying issues here remain the same, right? The underlying issues related not just to the statue of limitations but the underlying settlement are significant.

Also, that Massachusetts court, you know, I think contrary to what was just stated, decided to rule on venue because the judge determined that there may be a valid statue of limitations argument to be heard in this district. So on the merits there does seem to be some real concerns the plaintiffs need to raise.

The reason why I keep coming back to this costs

PROCEEDINGS

issue, is that it would certainly seem to be -- some of the plaintiffs should consider here about -- and again, I appreciate this is at root a tragic case, and each of you have suffered, I'm sure, enormous on the plaintiffs' side enormous personal tragedies and losses as a result of this horrific crash, but I also want to be upfront with you all that if the government and the defendants win on their motion, which at this stage all signs point to them being successful given the law here, they will -- they can and will move for costs and it would just seem to be a real travesty, frankly, to have -- you have to pay costs here on top of everything else, but if the Court is left with no other choice, the Court will force costs, because this litigation has been going on for quite sometime.

So I do want the plaintiffs to kind of realize where things stand now. Obviously, the Court's not going to tell you, you can't proceed in the case, but the Court will tell you that if you do proceed and if there is motion practice and if a ruling is entered against the plaintiffs and the defendants move for costs, the Court will be inclined to grant such a motion given the circumstances.

DR. GROGAN: Well, wouldn't that be if it's frivolous case, your Honor? The data that was presented in Boston -- once again, I'm not a lawyer, but wouldn't that be if there's a frivolous case? What we're trying to politely

Case 1:23-cv-08933-AMD-JAM   Document 20092   Filed 09/02/25   Page 224 of 333 PageID #: 12037

tell you is there's a reason we haven't been able to obtain counsel, there's some misinformation out there, sir, and there are scientists involved and, unfortunately, Tom can't speak, he's scientist and can probably bring some things to light that Mr. Walburg does -- is aware of and felt very confident otherwise I don't think that firm would have taken the case, and something material changed that all the plaintiffs, while pretty not lawyer-ish, it is mystifying that all of a sudden we lost our representation.  So I'll leave with you.

If Mrs. Kemp wants to speak for a moment.

THE COURT:  Hang on just moment, if I could just take one moment here.

(Pause in proceedings.)

THE COURT:  Okay, apologies for that.

So let me just ask, any response from the government?

MR. KELLY:  Yes, your Honor.  I do want to impress upon the Court and the plaintiffs, since we're talking about this issues of costs, that it's not -- and this is for your Honor's benefit, this is not the traditional case of costs, statutory costs.  But because of the languages of the releases that the plaintiffs entered into with Boeing back in 2000 and 2001, the costs are full costs, which would include billable times, experts' fees, travel, things of that nature.  And just for the Court's visibility since this case started, I, alone,

have billed or reported more than 2,000 hours to this case, which if you believe the Fitzpatrick scale regarding fees that a FOIA case can have for somebody of my level of experience, that's $717 per hour for 2,000 plus hours, plus $75,000 for our experts that have been retained and already working on the case, plus at least four or five trips to support my investigation on behalf of the Department of Justice. I'm sure that Raytheon and Lockheed have similar dollar numbers.

So, you know, when you talk about the issue of costs, we're talking about substantial costs that we would be -- that the parties would be entitled to under the language of these releases. And of course, you know, we would offer in camera inspection for the Court for those releases at your convenience.

I do want to circle back to another issue, an issue of standing and an issue, unfortunately, candor that we have to deal with here.

Back in 2000 and 2001, when these cases were initially prosecuted, you know, against Boeing, Trans World Airlines, Hydro-Aire and anybody else that was involved in the initial case, certain plaintiffs were designated as personal representatives of the estates. Some of those individuals continued forward into this case obviously, but after those settlements were arrived at or reached in 2000, 2001, those estates were closed, and they were never apparently reopened.

And so despite the fact that the plaintiffs signed standard Form 95s with the United States Navy, with the Missile Defense Agency, with the Office of the Secretary of Defense, asserting or claiming that they were personal representatives of these estates, factually they may not have been. And that is again an issue of sovereign immunity and subject matter jurisdiction as to the United States. If these individuals, who are now claiming and asserting that they are, you know, personal representatives of the estates and deceased, but factually are not, because the estates were never reopened or in the case of Ms. Kemp or in the case of some others, they're just -- they just don't have a basis to go forward and that's a very real issue of candor that should be addressed sooner rather than later. And since we've got these specific plaintiffs on the line here, I'd love to know, through the Court, whether or not the estates actually ever were reopened because that could be another basis for dismissal.

THE COURT: Well, look, I feel like that's an issue that would be addressed obviously in any motion practice and it's another reason why I think the plaintiffs need to think about this a bit further.

Let me ask -- and Mr. Stalcup, if you wanted to speak, again not on behalf of Mr. Krick but if there's any information that you want to pass along in terms of where

things stand along with the law -- the lawyer request.

DR. STALCUP: Certainly, your Honor, I appreciate this moment to provide the Court with information.

We've spoken to maybe 50 law firms that tried to get counsel for these plaintiffs. Some were very interested and then suddenly were not interested and I'm not going to go in the reasons why that might be in this call.

It's difficult to do this especially when three plaintiffs -- I guess I had just heard there are a five now that have already dismissed their claims and what I wanted to say earlier on behalf of what you're saying about the administrators of the estates for pro se plaintiffs, I believe Chris Krick and his parents right now are in the process of putting all beneficiaries to Chris and have Chris be the administrator of the estate to transfer that over and that's exactly what's happening now. So if Chris proceeds pro se, he will be the administrator of the estate as well as the pro se individual. And that process is ongoing now. I thought that might be relevant, your Honor.

THE COURT: Thank you.

DR. STALCUP: And also, I just have to say Lisa Michelson is on this call and these settlement agreements aren't new. And Lisa and I got them --

THE COURT: Well, let me -- I'll stop you there --

DR. STALCUP: Yes.

THE COURT: -- because, again, I really only wanted to hear about the individual update --

DR. STALCUP: Okay.

THE COURT: -- and again I'm not going to allow nonparties to appear --

DR. STALCUP: Sure, yes.

THE COURT: -- and nonparties can't appear for pro se litigants and Ms. Michelson is on the line as well.

Let me again reemphasize this point. The government's argument is a fair one, right. If this -- and again, I want to be really clear about something here. I'm a neutral magistrate judge here. I have nothing to gain or lose from this case. At the end of the day and at this stage the -- if the plaintiffs are not able to obtain counsel here, there does not seem to be any viable path forward. Either the estate claims will be disposed of automatically, and even to Mr. Stalcup's point, you know, if Mr. Krick wants to become the administrator of the estate and he's pro se, it would still be a moot point because you can't be a pro se plaintiff representing the estate, but in this circumstance given the law in this area and maritime law here, it would also appear the individual plaintiffs would not be able to proceed pro se.

So I want emphasize these points because if they are not able to obtain counsel, the costs that might be sought here could be significant. And what's happened in other cases

where a lawsuit has been filed, the plaintiffs have been warned, as I'm warning you now, and motion practice proceeds and additional costs are expended, those costs are then ordered to be paid and there can be not just a judgment rendered, but garnishment of wages, among other things, to try to make sure that some of that money does come back to pay for the defendants and the government. And again here, there does seem to be a policy-driven reason why the government, in particularly a case like this where there have already been settlements, would want to proceed with obtaining costs here.

So what I'm willing to do is as follows: I'll give one last extension until September 13th, 2024 for the plaintiffs to obtain new counsel. I'll ask Mr. Walburg to file a letter on September 16th indicating whether any of the plaintiffs have obtained new counsel and if they have the name of that counsel, and then we can proceed accordingly.

If the plaintiffs are not able to obtain new counsel, I'm inclined to grant the motion to withdraw. We will then address whether or not, you know, there will be immediate motion practice from the government and the co-defendants, or whether or not there will be a need for a premotion conference or some other conference in front of Judge Donnelly, who is the presiding judge, but I think in short order a motion will be filed and assuming that it's granted, there also would be motion practice for costs.

In the interim, I also ask that the defendants and, where possible the plaintiffs, the pro se plaintiffs currently or with Mr. Walburg's assistance, the plaintiffs here discuss what a potential resolution would look like. And, again, as a magistrate judge here I'd be in charge of any settlement conferences. I'm happy to look in to and discuss a way out here so that the plaintiffs do not pay the costs in exchange for withdrawing their case and ending this case now with prejudice. But apart from that, it would seem to me that the defendants would have very little incentive to otherwise agree to anything in this case since their argument seems extremely strong.

So any question on that from any of the plaintiffs or the government or the defendants?

MR. KELLY: Nothing on behalf of United States, your Honor.

DR. GROGAN: I would only say, your Honor, this isn't about money. For most of us it's about some of the information that has not come to light that's been not given out to the public. So thank you, it's not about the money though, appreciate that.

THE COURT: And thank you for sharing that, Dr. Grogan. I will note, though, on that same point, I appreciate that this is obviously a very emotional case of course for all the plaintiffs, how could it not be, but I

also, again, I really want to emphasize this, I've said this multiple times in this conference, that if you're unsuccessful here, having the plaintiffs pay costs here is a real possibility given the circumstances. So I think there's a real consideration should be given to that and that, again, there may be something to the fact that, you know, despite basically a summer spent looking for new attorneys, there have been no new attorneys in this case. So I offer that for what it's worth.

I'm also going to order Mr. Walburg to obtain a copy of the transcript of this proceeding today, August 22nd, and to share a copy of that transcript on an expedited basis to not only the plaintiffs that appeared here but any plaintiffs that have not appeared at this conference just so everyone is on the same page.

And further, Mr. Walburg, if you could serve a copy of the text order that we're going to enter after this conference on each of the plaintiffs that are not here -- actually on all the plaintiffs just to be on the safe side, would just be a minute entry that we enter after this conference.

Anything further from any of the parties?

MR. PAGANO: Your Honor, Ralph Pagano on behalf of Raytheon. I would just offer that if the plaintiffs do withdraw their claim by September 13th, I would recommend to

my client that we waive all costs.

MR. KELLY: For the United States, we would similarly follow Raytheon's lead there.

MS. GRACE: And, your Honor, on behalf of Lockheed Martin I can say the same. I also want to note for the record that we join in the government's further arguments.

Thank you, your Honor.

THE COURT: Okay. Let me just add, you know, you just heard from the government about their costs, obviously that would be only the government's costs. I'm sure the other defendants would also have considerable costs here. So, again, I appreciate the frustration on the plaintiffs' side, but I also want to be up front and honest with you all about where this is headed and I, again, want to really try to avoid a scenario where six months from now we're engaging in motion practice whereby there's a discussion about how individual wages are garnished to pay the costs associated with this case.

All right. Anything further from any of the parties? All right. Thanks very much everyone.

MR. PAGANO: Thank you, your Honor.

MR. SNYDER: Thank you, your Honor. You have a good afternoon.

ALL: Thank you.

(Matter concluded.)

PROCEEDINGS

*    *    *    *    *

I certify that the foregoing is an accurate transcript from the official electronic sound recording of the proceedings in the above-entitled matter.


s/ Georgette K. Betts                    August 26, 2024

GEORGETTE K. BETTS                        DATE


*GEORGETTE K. BETTS, RPR, FCRR, CCR*