UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x

RONALD KRICK, et al.,

    Plaintiffs,

                                      Civil Action No.
        v.                      1:23-cv-8093-AMD-JAM

RAYTHEON COMPANY, et al.;

                                      (Donnelly, D.J)
    Defendants.                (Marutollo, M.J)

------------------------------------------------------x

# DEFENDANTS' JOINT SUPPLEMENTAL BRIEF

Defendants Raytheon Company, Lockheed Martin, and the United States of America submit this joint supplemental brief in support of their Motions to Dismiss, ECF 178, 181, and 185. This brief provides additional information that has emerged since the Motions were filed related to the claims asserted by Wanda Kemp, individually and as personal representative of the estate of O. Lamar Allen, and the claims of Charles Henry Gray IV, individually and as personal representative of the estate of Charles Henry Gray III, and Chadwick Graham Gray ("Gray Parties").

1. **WANDA KEMP IS NEITHER NOW, NOR EVER WAS, THE PERSONAL REPRESENTATIVE OF THE ESTATE OF O. LAMAR ALLEN.**

In the Second Amended Complaint Plaintiff Wanda Kemp alleged that she was the personal representative of the estates of O. Lamar Allen and Ashton Lamar Allen. ECF 33 ¶ 24. She had also earlier submitted an SF-95 tort claim to the U.S. Navy, signed under the penalty of perjury through her attorney Todd Walburg, asserting that she was acting on behalf of those two estates. *See* ECF 180-10 at 2, 9,

1

11. Ms. Kemp is the sister of O. Lamar Allen and the aunt of Ashton Allen. *See* ECF 33 ¶ 24. It is now apparent that she was never appointed by a court as the personal representative of either estate. Plaintiffs' counsel admitted that Ms. Kemp had not been appointed as a personal representative in her Third Request for an Extension of Time, ECF 192-1 ¶ 25, and in the Opposition to the United States' Motion to Dismiss. ECF 194-2 at 3-5. This concession is confirmed by Ms. Kemp's own admission in October of 2024 in response to the Court's Show Cause Order. ECF 162. As Ms. Kemp never had the authority to act on behalf of either the O. Lamar Allen estate or the Ashton Allen estate, all actions she took on behalf of those estates are void *ab initio*.

Rather than admit, in Plaintiffs' Opposition to the Defendants' Motions to Dismiss, that Ms. Kemp lacked standing to bring a claim on behalf of either estate thereby ending the case for those two estates, Plaintiffs' counsel argued that an attorney, Sheldon Friedman, could act as personal representative for the estate of O. Lamar Allen because he was named in Mr. Allen's will. *See* ECF 196 at 21, 194-2 at 3-6. In late June of 2025, Mr. Friedman petitioned the Cobb County, Georgia, probate court to be appointed personal representative of Mr. Allen's estate, claiming to have attempted to contact Betty Anne Allen, the widow of O. Lamar Allen, but receiving no response from her. *See* ECF 194-2 at 4. No further argument was provided by Plaintiffs' counsel in the Opposition about the estate of Mr. Allen's son, Ashton Allen, whom Ms. Kemp also claimed to represent.

After Plaintiffs submitted their Opposition, additional documents were filed in the probate court in Cobb County, including a letter from Amberly Ann Brasington, née Allen, the adult daughter of O. Lamar Allen and sister of Ashton Allen. Ex. 1 at 1, 7-8 [Brasington Decl.]. In the letter Ms. Brasington filed she stated that she "vehemently reject[ed]" the appointment of Mr. Friedman as executor of the estate. Ex. 1 at 7. She went on to say that it was "imperative that Sheldon E. Friedman not become the successor executor nor have the power to name any individual as successor executor, as he has caused severe financial harm to the rightful heirs and beneficiaries of the Estate . . . ." *Id.* Her letter goes on to detail a history of Mr. Friedman's unsavory dealings with the estate and its beneficiaries, which included his resignation from representation in 1998, and claims that he "*defrauded the beneficiaries* of the Estate out of substantial proceeds of a business deal" made by Mr. Allen. (Emphasis added.) *Id.*

Ms. Brasington's letter goes on to say that Mr. Friedman made misrepresentations about her mother, Betty Anne Allen's, intentions regarding any claim in the Eastern District of New York. *Id.* Most importantly, this included failing to ensure that the Court was aware of Mrs. Allen's desire that no one bring any claims on behalf of the estates. *Id.* Ms. Brasington also pointed out that the releases she and her mother signed released "all potential future claims and bar the claims in [this] litigation." Ms. Brasington also stated that Ms. Kemp "actively harassed and caused severe emotional and financial harm to my family," and that "[Ms. Kemp] *is fraudulently representing herself as a representative* and beneficiary

3

of the Estates of O. Lamar Allen and Ashton Lamar Allen." (Emphasis added.) *Id.* at 8.

On August 8, 2025, in response to Ms. Brasington's letter, Mr. Friedman filed a petition to discharge his appointment as executor. That petition was granted on August 11, 2025, Ex. 2 [probate court order], meaning he is no longer capable of acting as personal representative of the O. Lamar Allen estate. Subsequently, no individual has filed a petition in the probate case seeking to usurp Betty Anne Allen's position as personal representative of the O. Lamar Allen estate.

Despite the very clear conclusion that no one in this case was duly appointed to represent the interests of Mr. Allen's estate, a new individual, Plaintiff Christine Grogan, has claimed to step forward with the intention of petitioning the probate court to act as its personal representative. Dr. Grogan claims to be Mr. Allen's child from a relationship prior to his marriage to Betty Anne Allen. As of the date of this filing, and despite five intervening months, Dr. Grogan has not filed any petition or other document in the probate court seeking an appointment as personal representative. The Defendants contend, upon information and belief, that Dr. Grogan failed to file such a petition because she has no legal right to seek to represent Mr. Allen's estate as she has no legal relationship to him. It is the Defendants' belief that Dr. Grogan was adopted by Patricia and Donald Grogan in 1969. Under Georgia law, where Mr. Allen's estate was put through probate, the act of adoption severs any legal relationship, and therefore any right to bring a wrongful death action, with a child's biological parents making the child a stranger

4

to them. *Eig v. Savage*, 339 S.E.2d 752, 753 (Ga. Ct. App. 1986) (citing OCGA § 19-8-19). Therefore, Dr. Grogan would have no right to seek to usurp Betty Anne Allen's position as personal representative.

2. THE GRAY PARTIES PREVIOUSLY DISMISSED THEIR COMPLAINT.

The Gray Parties were not named in the original Complaint; but rather were added in the Amended Complaint filed on September 19, 2022. *See* ECF 6 ¶¶ 28-29. Three months later, Plaintiffs filed a Second Amended Complaint, which has served as the operative complaint for the last nearly three years. *See* ECF 33. The Gray Parties were omitted from both the caption and body of the Second Amended Complaint. Following the filing of the Second Amended Complaint, the case proceeded through the Plaintiffs' counsel's Motion to Withdraw, and ultimately to counsel's response to the Court's Order to provide contact information for each remaining Plaintiff. *See* ECF 151. In that letter Plaintiffs' counsel Todd Walburg listed nine remaining Plaintiffs; that list did not include the Gray Parties. *Id*. This confirmed Mr. Walburg's admission to the Court, that the Gray Parties had "voluntarily dismissed their claims." Ex. 3 13:5-7 [8/22/24 Hearing Trans.].

The prior dismissal of the Gray Parties is further supported by the filings of Plaintiffs' current counsel, Stephani Ayers. On October 21, 2024, Ms. Ayers filed a Notice of Appearance indicating that she would appeal the Court's Order granting the Motion to Withdraw. ECF 154 at 1. That Notice identified only the same nine Plaintiffs previously stated in Mr. Walburg's letter. *Id*. This Notice did not include the Gray Parties. On October 25, 2024, all parties submitted a Joint Status Report,

5

in which Plaintiffs' counsel acknowledged, again, that there were nine remaining Plaintiffs, naming all of them, and not including the Gray Parties. ECF 157 ¶ 3. Despite this case history, the Gray Parties re-emerged as active participants only after the Defendants filed their Motions to Dismiss, and without any notice.

"It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)). It is also true that causes of action not carried over from an original complaint to an amended one are generally deemed waived. *Elliot v. City of Hartford*, 649 F. App'x 31, 32 (2d Cir. 2016). When Plaintiffs amended their complaint, a second time, to remove the Gray Parties, it must be presumed that it was an intentional and deliberate act. Plaintiffs' former counsel's statement in open court on August 22, 2024, confirmed that it was an intentional and deliberate act.

This position is supported by review of Fed. R. Civ. P. 10 and case law from the Eastern District of New York. Rule 10(a) requires that "[t]he title of the complaint must name all the parties." This is strong evidence that the Gray Parties were dropped because while explicitly referenced in the Amended Complaint, they were not in the Second Amended Complaint. In *Perez v. Ponte*, the court indicated that one may look beyond just the caption to determine the identity of parties. 236 F. Supp. 3d 590, n 2 (E.D.N.Y. 2017). Comparing the body of the Amended Complaint, which includes reference to the Gray Parties with the Second Amended Complaint, which is devoid of reference to them, it is clear that their removal was

6

intentional. While Plaintiffs' now counsel may lament the fact that there was no separate motion to dismiss, the language of the complaints makes it fundamentally and obviously clear—the Gray Parties were dismissed.

3. THE GRAY PARTIES SHOULD BE DISMISSED AS THEY PREVIOUSLY RELEASED THESE CLAIMS AND FAILED TO FILE AN ADMINISTRATIVE CLAIM WITH THE U.S. NAVY.

The Defendants did not address the Gray Parties in their prior memoranda as they were previously dismissed. Assuming arguendo that they are still part of the case, the Gray Parties should be dismissed because they previously released the claims they pursue in this case when they settled with The Boeing Company. As stated in more detail in the Defendants' separate memoranda of law in support, ECF 179 at 24-28, 182 at 22-29, and 186 at 29-39, the releases signed with Boeing waived Plaintiffs' right to bring a subsequent lawsuit arising from the crash of Trans World Airlines Flight 800 against any party.

The Gray Parties signed releases accepting settlement funds from Boeing on November 30, 2001, both in their individual capacity and as co-personal representatives of the estate of Charles Henry Gray III. *See* Ex. 4 [Chadwick Gray Release]; Ex. 5 [Charles Gray IV]. The releases contained the same substantive language as the other Plaintiffs agreeing to not bring future lawsuits against any entity arising from the subject matter of the crash of TWA Flight 800. The Defendants are included among the broad category of released parties per the signed agreement. Therefore, the Court should dismiss these claims.

In addition, and specifically related to the United States, the Gray Parties, should be dismissed because they failed to submit administrative claims with the U.S. Navy prior to filing their lawsuit. *See* Ex. 6 ¶ 4 [Navy Decl.]. For the reasons stated in the United States' memorandum, the filing of an administrative claim is a jurisdictional prerequisite, and Plaintiffs' failure to do so deprives the Court of subject matter jurisdiction. ECF 179 at 31-32. Therefore, the Court must dismiss their claims against the United States.

## CONCLUSION

For the above-stated reasons, as well as those in their motions, the Defendants respectfully request the Court dismiss Plaintiffs' Second Amended Complaint.

Dated: December 15, 2025

Respectfully submitted,

/s/ Robert Kelly
ROBERT KELLY
JILL DAHLMAN ROSA
Senior Admiralty & Aviation Counsel
Torts Branch, Civil Division
U. S. Department of Justice
P.O. Box 14271
Washington, D.C. 20044-4271
(202) 616-4031
Robert.Kelly@usdoj.gov
Jill.Rosa@usdoj.gov

Attorneys for Defendant
UNITED STATES OF AMERICA

/s/ John P. Kelly
Kathryn A. Grace (PHV)
kathryn.grace@wilsonelser.com

/s/ Shane Nichols
Shane Nichols (PHV)
Fitzpatrick, Hunt, & Pagano, LLP
shane.nichols@fitzhunt.com
10 S. LaSalle St. Suite 3400
Chicago, Illinois 60062
T: (312) 728-4902
F: (312) 728-4950

Ralph V. Pagano, Esq. (RP7138)
Fitzpatrick, Hunt, & Pagano, LLP
ralph.pagano@fitzhunt.com
12 East 49th Street, 34th Floor
New York, New York 10017
T: (212) 937-4000
F: (212) 937-4050

Attorneys for Defendant
RAYTHEON COMPANY

8444 Westpark Drive, Suite 510
McLean, VA 22102
703-852-7869

William J. Katt (PHV)
william.katt@wilsonelser.com
John P. Loringer (PHV)
john.loringer@wilsonelser.com
David A. Frank II (PHV)
david.frank@wilsonelser.com
555 East Wells Street, Suite 1730
Milwaukee, WI 53202
414-276-8816

John P. Kelly
john.p.kelly@wilsonelser.com
150 E 42nd Street
New York, NY 10017
212-915-5848

Attorney for Defendant
LOCKHEED MARTIN CORP.


To: All attorneys of record via CM/ECF