1   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
2   ------------------------------x
                                        23-CV-8093(AMD-JAM)
3   RONALD KRICK, ET AL,
                                        United States Courthouse
4            Plaintiffs,               Brooklyn, New York

5            – versus –                August 22, 2024

6   RAYTHEON COMPANY, ET AL.,

7            Defendants.
    ------------------------------x
8
            TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
9           BEFORE THE HONORABLE JOSEPH A. MARUTOLLO
               UNITED STATES MAGISTRATE JUDGE
10                   VIA VIDEOCONFERENCE

11  APPEARANCES
    Attorney for Plaintiffs: BAILEY & GLASSER LLP
12                           209 Capitol Street
                             Charleston, West Virginia 25301
13                           BY:  TODD A. WALBURG, ESQ.
                                  ERIC B. SNYDER, ESQ.
14
    Attorney for Raytheon:   FITZPATRICK & HUNT, TUCKER, COLLIER
15                           PAGANO, AUBERT LLP
                             Tower 49, Twelve E. 49th Street
16                           31st Floor
                             New York, New York 10017
17                           BY:  RALPH V. PAGANO, ESQ.
                                  SHANE B. NICHOLS, ESQ.
18
    For the Defendant:       WILSON ELSER MOSKOWITZ EDELMAN &
19                           DICKER LLP
                             8444 Westpark Drive, Suite 510
20                           McLean, Virginia 22102
                             BY:  KATHRYN A. GRACE, ESQ.
21                           Wilson Elser
                             150 E 42nd Street
22                           New York, New York 10017
                             BY:  JOHN KELLY, ESQ.
23
    Transcription Service:   Georgette K. Betts, RPR, FCRR, CCR
24
    (Appearances continued on next page.)
25

1    APPEARANCES

2    For the United States:    DOJ-CIV TORTS BRANCH
                               P.O. Box 14271
3                              Washington, D.C. 20044
                               BY:  ROBERT KELLY, III, ESQ.
4
                               DOJ-CIV AVIATION, SPACE & ADMIRALTY
5                              LITIGATION
                               BY:  JILL ROSA, ESQ.
6
                               DOJ-CIV CIVIL DIVISION, T-ASA
7                              175 N Street NE 8th Floor
                               Washington, D.C. 20002
8                              BY:  THOMAS M. BROWN, ESQ

9

10

11

12

13

14

15

16

17

18

19

20   Transcription Service:    Georgette K. Betts, RPR, FCRR, CCR
                               Phone:  (201)314-3902
21                             Email:  Georgetteb25@gmail.com

22

23
     Proceedings recorded by electronic sound recording.
24   Transcript produced by transcription service.

25

PROCEEDINGS

1          (In open court; all present via teleconference

2    and/or videoconference.)

3          THE COURTROOM DEPUTY:  Docket number 23-CV-8093,

4    Krick versus Raytheon Company.

5          Will the parties please state their appearances for

6    the record starting with the plaintiff.

7          MR. WALBURG:  Todd Walburg, specially appearing for

8    the plaintiffs.

9          MR. SNYDER:  Eric Snyder, your Honor, from Bailey &

10   Glasser LLP in Charleston, West Virginia.  I am not pro hac'd,

11   I want to note that please, and also specially appearing along

12   with Mr. Walburg.

13         MR. KELLY:  For the defendants, your Honor, this is

14   Robert Kelly for the Department of Justice.

15         THE COURT:  Okay.  Great.

16         MS. GRACE:  Good afternoon, your Honor.  Kathryn

17   Grace from Wilson Elser.  I'm also here with John Kelly on

18   behalf of Lockheed.

19         THE COURT:  Good afternoon.

20         Are there any other attorneys appearing on the line?

21         MR. PAGANO:  Yes, your Honor.  Ralph Pagano from

22   Fitzpatrick Hunt & Pagano on behalf of the Raytheon Company.

23         MS. ROSA:  Jill Rosa with the Justice Department for

24   the United States.

25         MR. BROWN:  Thomas Brown with the Justice Department

PROCEEDINGS

1   for the United States.  Good afternoon, your Honor.

2           MR. NICHOLS:  Yes, your Honor, I'm Shane Nichols

3   with Raytheon, but I have not been pro hac'd and am observing.

4           THE COURT:  Okay.  And if we could, I know there are

5   a number of other individuals on the line, including the

6   individual plaintiffs, some of the individual plaintiffs.  If

7   you haven't already identified yourself, if you could just

8   identify, your Honor, and indicate whether or not you're a

9   plaintiff to this case or a nonparty.

10          MS. MICHELSON:  Lisa Michelson, plaintiff.

11          THE COURT:  And again --

12          MR. RONALD KRICK:  Ronald Krick, plaintiff.

13          THE COURT:  -- if you just want to unmute yourself

14  for those of you who are about to speak.

15          But go ahead, I think Mr. Rojany was just about to

16  speak.

17          MR. ROJANY:  Yes.

18          MR. RONALD KRICK:  Ron Krick is on just to listen.

19          MR. ROJANY:  Eric Rojany, I'm a plaintiff.

20          MS. KEMP:  Wanda Kemp a plaintiff.

21          DR. STALCUP:  Tom Stalcup, a nonparty.  And I

22  believe Margaret Krick tried to speak, but her microphone was

23  muted.

24          MS. MARGARET KRICK:  Yes.

25          DR. GROGAN:  Good morning.  Christine Grogan,

PROCEEDINGS

1    plaintiff.

2            THE COURT:  Okay.  Is there anyone on the line who

3    has not yet identified themselves?

4            Okay.  So, again, I'm a Magistrate Judge Marutollo,

5    we're here for a status conference.  I'm grateful that the

6    individual plaintiffs are on here as well.

7            Let me just ask first for plaintiffs' current

8    counsel just to provide any updates, separate and apart from

9    what was in the August 15th, 2024 status report.  So,

10   Mr. Walburg, can you start there, where things currently

11   stand?

12           MR. WALBURG:  Yes, your Honor, I'd be happy to.

13   There have not been any real new developments.  I was informed

14   that certain plaintiffs are still looking for new counsel.

15           The one new development is that one of the

16   plaintiffs, Christopher Krick, discharged me and my prior firm

17   as counsel and has elected to proceed pro se in this action.

18           THE COURT:  Okay.  And Mr. Krick, Christopher Krick

19   reached out, I believe he is flying at the moment, he's

20   unavailable to be here.  I believe I heard, though, another

21   individual who was appearing on -- I don't want say on his

22   behalf, if he's going to be a pro se litigant he's not allowed

23   to have someone appearing on his behalf, but I think another

24   person is on here who may be an associate to Mr. Krick; is

25   that right?

PROCEEDINGS

1          DR. STALCUP:  Yes, your Honor --

2          MR. RONALD KRICK:  Yes, this is Ron Krick.

3          DR. STALCUP:  -- that is me.  Chris Krick asked me

4    to come here because he and other plaintiffs asked me to help

5    them find substitute counsel, so anything you have -- any

6    questions you have in that regard I'm here to help answer

7    those questions.

8          THE COURT:  Okay.  And just to be clear, is Ronald

9    Krick also seeking at this point to discharge Mr. Walburg, or

10   is it only Christopher Krick?

11         So, Mr. Ronald Krick, I think you may be on mute.

12         MR. RONALD KRICK:  I'm sorry, you cut out.  What was

13   the question?

14         THE COURT:  So Mr. Walburg just indicated that

15   Christopher Krick has discharged Mr. Walburg and Christopher

16   Krick is now appearing pro se.  At least as of this moment,

17   Mr. Ronald Krick, are you also discharging Mr. Walburg and

18   planning to proceed pro se, or is that still to be determined?

19         MR. RONALD KRICK:  Right now my son has full

20   capacity for myself and my wife Margaret.  So, basically,

21   we've put Tom Stalcup in charge for now because Christopher is

22   on a flight and he can't be here.

23         THE COURT:  And just to be clear, I'm sorry,

24   Margareta Krick?

25         MR. RONALD KRICK:  Margaret Krick.

PROCEEDINGS

1          THE COURT:  Margaret Krick, sorry.  I see you on the

2    line as well.  You're muted though just to note, Ms. Krick.

3          Just for clarity sake on the docket, are you both at

4    this point, Mr. Ronald Krick and Margareta Krick, are you

5    joining in Christopher Krick's request to discharge

6    Mr. Walburg and to proceed pro se?

7          MR. RONALD KRICK:  Ronald Krick is definitely, but I

8    don't know, Margaret is in Germany so she may have a hard time

9    communicating.

10          THE COURT:  Ms. Krick, I see you but you're on mute,

11    so if you could just unmute yourself.

12          MS. MARGARET KRICK:  Okay.

13          THE COURT:  There you go.

14          MS. MARGARET KRICK:  Can you hear me now?

15          THE COURT:  Yes.

16          MS. MARGARET KRICK:  Yes, I'm in Germany at the

17    time.  I apologize the time frame issues and everything.

18          Yes, I'm with Ronald Krick.  Our son Chris is

19    handling this from now on.  We signed the paper work that he

20    will take care of this.

21          THE COURT:  Okay, well let me just back up for a

22    second here, I want to revisit the Chris Krick proceeding pro

23    se issue in a moment.

24          Mr. Walburg, was there anything else you wanted to

25    raise at this point?

PROCEEDINGS

1          MR. WALBURG:  No, thank you, your Honor.

2          THE COURT:  Okay.  Let me just hear from the

3     government before I discuss the next steps here.

4          MR. KELLY:  Yes, your Honor.  This is Robert Kelly

5     for the United States.

6          This is somewhat unprecedented.  Dr. Stalcup is not

7     a party, he's not an attorney, and he's here claiming to speak

8     on behalf of multiple now pro se plaintiffs.  We were not

9     aware that this meeting -- this hearing was open to the public

10    and we'd object to his presence here in general because he is

11    not a party to this case and he cannot represent anybody.

12         Beyond that --

13         THE COURT:  Well, let me just interrupt there.

14         So, first, I agree with the government that

15    Mr. Stalcup is not and cannot represent any pro se litigants.

16    However, he is able to attend this conference, which is a

17    public conference, but I'm not going to, unless I ask him a

18    question in terms of scheduling or something like that

19    involving Christopher Krick, I'm not going to, you know, ask

20    him to speak nor will I respond to any comments that are made.

21         So, Mr. Stalcup, again I appreciate you identifying

22    yourself earlier, but you're not here as an attorney, you're

23    not representing anyone but you're welcome to join as everyone

24    as it is a public proceeding.

25         I interrupted the government, so go ahead.

PROCEEDINGS

1      MR. KELLY:  In addition, your Honor, thank you, Eric

2  Rojany is no longer a party to this case.  I believe he

3  dismissed his cause of action a little while ago.  I may be

4  wrong, I could possibly be corrected, but I believe Mr. Rojany

5  dismissed his case a little bit ago.

6      There are several other plaintiffs who aren't in

7  attendance here and obviously that's a very curious situation

8  as well, but it's the United States' position, and I believe

9  the rest of the defendants are joining us, that we've arrived

10  at this point in time in this case, which we view more as a

11  show cause point in time to determine why the plaintiffs

12  should be even allowed to continue on.

13      The Court issued a very, very clear, explicit,

14  nonnegotiable order back on June 24th that plaintiffs were to

15  obtain new counsel by July 12th.  Just before that date, the

16  plaintiffs issued or requested an extension of time and the

17  Court granted that for an additional 30 days and that 30 days

18  passed on August 12th.  On August 12th nothing happened.  The

19  plaintiffs didn't ask for more time, the plaintiffs didn't

20  respond, rather they just blew off the Court's order.

21      There is no new attorney.  We've been waiting months

22  now, since apparently April 1st for the plaintiffs to find new

23  attorneys.  We've been told that there's one, two, three

24  different potential law firms who have been investigated their

25  participation in this case on behalf of the plaintiffs and

PROCEEDINGS

1   nobody showed up.  To us that means that there is nobody who

2   is going to show up.

3        Granting the plaintiffs any additional time to find

4   new counsel at this point in time is just wasting more

5   government resources, more resources for Raytheon, more

6   resources for Lockheed Martin, more resources for the Court.

7        This case has been in litigation for over two years

8   and we haven't even gotten to the point where any party has

9   answered a complaint yet.  The United States has been involved

10  in this case for almost three years now because the

11  administrative claims were filed on October 4th with the

12  United States Navy, the Missile Defense Agency and the

13  Department of Defense.  Time keeps ticking and the defendants

14  have the right to defend themselves against these allegations

15  and accusations and because the plaintiffs can't find counsel

16  and because the plaintiffs don't seem interested in

17  prosecuting this case anymore, we'd ask that the whole thing

18  be dismissed.

19        As you're well aware, your Honor, from the last

20  hearing, if Mr. Walburg, Mr. Snyder, the rest of Bailey

21  Glasser are allowed to withdraw, pro se plaintiffs cannot

22  represent an estate.  What's more so, and what we've come to

23  learn since the last hearing, is that under the likely

24  operable law, either admiralty or New York State law, pro se

25  plaintiffs cannot bring their own action for a wrongful death.

PROCEEDINGS

1   Actions must be brought by personal representatives of an

2   estate on behalf of a certain narrow group of beneficiaries.

3   Without personal representatives, without estates none of

4   these plaintiffs have standing.  And as to the United States,

5   that's an issue of subject matter jurisdiction and sovereign

6   which cannot be waived, cannot be equitably tolled, cannot be

7   anything, it's the beginning and end of things because of the

8   Court's inherent power.

9        As the United States explained during the last

10  hearing, it is our belief that what undergirds this entire

11  thing is the language of the releases.  And when lawyers who

12  are being interviewed by these plaintiffs take a look at the

13  language of the releases, they realize that these claims have

14  all been waived, they've all been released, there is no moving

15  forward for anybody here and we're just spinning our wheels

16  and needlessly spending money.

17       And so, therefore, we do not take a position on

18  specifically what it is that Mr. Walburg is asking for with

19  regard to withdrawal for himself and Bailey Glasser, but it's

20  our position that if that is granted, then this entire case

21  needs to be dismissed.  And either if it isn't granted, we've

22  run to the point where something has to be done.  Kicking this

23  can any further down the road, your Honor, is just wasting

24  time, wasting money, wasting resources that we should be

25  spending on other things.

PROCEEDINGS

1      THE COURT:  Okay.  Do any of the other defendants

2  want to be heard?

3      MS. GRACE:  Your Honor, on behalf of Lockheed

4  Martin, I would just say that we join in Mr. Kelly's

5  arguments.

6      MR. PAGANO:  Your Honor, Raytheon Company joins in

7  Mr. Kelly's position and arguments.

8      THE COURT:  Let me ask class counsel, what's your

9  position on whether withdrawal dooms your clients' claims?

10     MR. WALBURG:  Your Honor, we have no position on

11  that, that seems like legal issue that would have to be

12  briefed.

13     THE COURT:  Okay.  So let me ask -- and Mr. Walburg,

14  if could you address this as well, my understanding are -- and

15  I'll talk a little bit about what the government argued in a

16  moment, but just as a matter of logistics, it seems like

17  the -- there are two categories of plaintiffs, right, and we

18  talked about this a little bit the last time at this

19  conference.  There are plaintiffs who are appearing

20  individually and then there are plaintiffs who are appearing

21  on behalf of the estate of the decedents.  The individual

22  plaintiffs -- and, again, here, Mr. Walburg, I'd like you to

23  just tell me if I missed anyone or I missed saying anything.

24  The individual plaintiffs are:  Margareta Krick, Christopher

25  Krick, Craig Gaetke, and again apologies if I'm mispronouncing

PROCEEDINGS

1    anyone's name, Christine Grogan, Michael Deteresa, Charles

2    Henry Gray IV and Chadwick Graham Gray.

3              Are there any other individual plaintiffs, at least

4    as it is listed right now in the complaint?

5              MR. WALBURG:  Your Honor, two of the plaintiffs that

6    you mentioned previously voluntarily dismissed their claims,

7    that's the Gray plaintiffs that you mentioned at the end.

8              THE COURT:  Okay.

9              MR. WALBURG:  The other -- just for the record, the

10   other plaintiffs that previously voluntarily dismissed their

11   claims were Eric Rojany, Jodelle Gearon, and Todd Gaetke.

12             THE COURT:  Okay.

13             MR. WALBURG:  That's in response to your prior

14   question.  I don't know if I heard you mention Douglas

15   Kevorkian as an individual plaintiff, he is one.

16             THE COURT:  Well, let me just clarify, my

17   understanding -- hang on just one second.

18             (Pause in proceedings.)

19             THE COURT:  There are also the estate plaintiffs who

20   are suing on behalf of the estates, that would be Ronald Krick

21   on behalf of Oliver Krick; Douglas Kevorkian on behalf of

22   Ralph Kevorkian; Lisa Michelson on behalf of Yonatan Rojany;

23   Wanda Kemp on behalf of O. Lamar Allen and Ashton Allen; and

24   Eileen Zaharioudakis on behalf of Donald Gough; is that right?

25             MR. WALBURG:  That's correct, your Honor.

PROCEEDINGS

1          THE COURT:  So with that in mind, are there any

2     plaintiffs I missed, just as a procedural matter?

3          MR. WALBURG:  Your Honor named all of the

4     plaintiffs.

5          THE COURT:  Okay.

6          I know there was a reference earlier made,

7     Mr. Walburg, that some of the plaintiffs are still seeking

8     counsel, which plaintiffs are seeking to obtain attorneys?

9          MR. WALBURG:  I would -- let's see, perhaps the

10    individual plaintiffs can speak to that or -- because I'm not

11    involved in that process, it's --

12         THE COURT:  Well, are any of the plaintiffs that are

13    on the line right now currently seeking an attorney?

14         DR. GROGAN:  Yes.  Mr. Walburg asked me that this

15    week and I replied that due to him withdrawing and then trying

16    to find someone I am trying to seek someone.  And what the

17    Department of Justice just said is not exactly correct on the

18    timing, but we can talk about that later.

19         THE COURT:  Okay.  So besides Dr. Christine Grogan,

20    any other plaintiff who is currently seeking an attorney?

21         MS. KEMP:  I am.  Wanda Kemp.

22         THE COURT:  All right.  Any other plaintiffs on the

23    line seeking an attorney?

24         MS. MICHELSON:  I am.  Lisa Michelson.

25         THE COURT:  So let me ask Ms. Michelson, Dr. Grogan,

PROCEEDINGS

1  Ms. Kemp, the government is right, I mean I did set a deadline

2  for the plaintiffs to obtain an attorney.  What efforts were

3  taken to try to obtain an attorney during the Court-ordered

4  period?

5           Let me start with, Dr. Grogan.

6           DR. GROGAN:  Sure.  Both Wanda Kemp and myself were

7  working with trying to get the same two lawyers.  We've spent

8  significant time with them.  Tab -- I don't have their name in

9  front of me, Mr. Walburg does.  They went back to Mr. Walburg,

10  did some discovery with him.  They seemed to be all on board

11  and then suddenly withdrew.

12           And there's some details behind that I think

13  probably not best said in this particular situation for

14  reasons -- Dr. Stalcup has more details on that.

15           DR. STALCUP:  Yes.

16           DR. GROGAN:  Very specific reasons they withdrew and

17  the Department of Justice said we went through four sets of

18  attorneys, that's not accurate.  There was one --

19           THE COURT:  Let me just interrupt you.  I more

20  interested in finding out the efforts to obtain new counsel.

21           DR. GROGAN:  Yes, sir.  We just found out about a

22  week ago that we were turned down from this counsel, it might

23  have been -- I don't have the calendar in front of me, but it

24  was within I'd say 10 days and we obviously haven't been able

25  to find anyone else.

PROCEEDINGS

1          We have one other attorney we're speaking to right

2     now.

3          THE COURT:  Okay.  I guess let me just talk for a

4     moment about next steps here for the plaintiffs.

5          Again, I reiterate what I said at the last

6     conference in June, I share the government's -- first, let me

7     say I share the government's concern here and frustration,

8     because this is a case that has been stagnant for some time.

9     The plaintiffs have an obligation to move the case forward.

10    Federal Rules of Civil Procedure 1 requires a just and speedy

11    resolution of cases and right now as the magistrate judge

12    here, although I'm not presiding over this case in terms of

13    dispositive motion practice, I do have an obligation to keep

14    this case moving forward and I am a bit worried that while I

15    gave a deadline for the plaintiffs to find new counsel, while

16    there does appear to be some attempts taken to try to obtain

17    new counsel, that there are -- there is no new counsel and the

18    same issues remain.

19          I want to just emphasize again what I indicated at

20    the last conference.  Okay?

21          As I said in the minute entry, this is from

22    June 24th:  The plaintiffs are reminded that a person who is

23    not an attorney may only represent himself in a pro se action.

24    He may not represent another entity, citing to a case from the

25    Southern District of New York.  Hammond-Williams on behalf of

PROCEEDINGS

1    Hammond versus Fuchs.

2              Then, an administratrix or executrix of an estate

3    may not proceed pro se when the estate has beneficiaries or

4    creditors other than the litigants, and that was a citation to

5    the case *Pridgen versus Andresen* from the Second Circuit,

6    which is the Court appeals here, because they may not appear

7    pro se on behalf of estate.  Okay.

8              The personal interests of the estate, other

9    survivors, and possible creditors...will be affected by the

10   outcome of the proceeding and only an administrator and sole

11   beneficiary of an estate with no creditors may appear pro se

12   on behalf of estate.

13             Again, the government has pointed this out, if there

14   is no attorney representing the estate plaintiffs, those

15   claims and those plaintiffs will likely be dismissed from the

16   case.

17             Further, as the government points out, under the

18   relevant maritime law here and even under Second Circuit law,

19   it would appear that the individuals, even as pro se litigants

20   who are suing on behalf of wrongful death -- a wrongful death

21   claim would be liable to have their claims dismissed as well.

22             So I want to emphasize that point because if the

23   plaintiffs here are planning to proceed pro se, there is a

24   real risk to the plaintiffs that the defendants will not only

25   win on their motion, but I'm confident that the defendants

PROCEEDINGS

1    will move for costs stemming from their motion practice and

2    the litigation overall.  And it would appear to me that

3    withdrawing the case now may perhaps avoid that as an option.

4            And, again, I speak as the magistrate judge here and

5    I'm happy to kind of discuss the potential for settlement or

6    resolution, but it would again appear to me, as a neutral

7    arbiter, that if the government and the co-defendants are

8    successful in their motion, the end result here will not only

9    be that, you know, the plaintiffs lose, but that the

10   defendants will have every incentive to move for costs.

11           And, again, I really emphasize that even apart from

12   the issue related to standing for, you know, not having an

13   attorney present, there's the larger issue that is shaping

14   this discussion which is related to the underlying settlement,

15   and the government raised at prior conferences that would seem

16   to obviate any claims here.

17           So, ultimately -- and I also add that the plaintiffs

18   need to keep in mind that I'm not going to indefinitely keep

19   Mr. Walburg and plaintiffs' current counsel in this case

20   indefinitely, right.  The Court has to rule on that issue and

21   the Court, frankly, is inclined to grant that motion.  When

22   that happens, the plaintiffs need to keep in mind that their

23   claims may inherently be extinguished, right, and frankly,

24   this may be something in which the plaintiffs need to think

25   about whether they even want to proceed in this case because,

PROCEEDINGS

1   as I said a moment ago, if they have attorneys, if you have

2   attorneys that doesn't necessarily mean that you'll get past

3   any bar from prior settlement or statute of limitations

4   issues.  And again I think the defendants, as most defendants

5   would after, you know, defeating what they consider to be a

6   frivolous motion, would move for costs and that might be

7   avoided now, and I would encourage the parties if there's any

8   interest in withdrawing the claims here, to think about

9   whether the parties, the plaintiffs are interested in

10  withdrawing claims to avoid having to pay costs later.

11          So I don't know if there's any thoughts here from

12  any of the pro se plaintiffs about what I'm discussing.

13          DR. STALCUP:  Your Honor, the only pro se plaintiff

14  here is Chris Krick.  I just want to say something not on his

15  behalf, but I just want to say what he's in the proceeding of

16  doing.  He's in the process of having his parents --

17          THE COURT:  Well, let me interrupt you first,

18  Mr. Stalcup, there are other pro se plaintiffs on the screen

19  here, I do want to hear from them first.  I take the

20  government's point that --

21          DR. STALCUP:  I understand.

22          THE COURT:  -- a third party is not permitted to

23  speak on behalf of pro se litigants.  Having said that, to the

24  extent there is information that he'd like to share, I'll hear

25  it but I'm not going to necessarily act on it --

20

PROCEEDINGS

1          DR. STALCUP:  I understand.

2          THE COURT:  -- but let me just ask, for the pro se

3     plaintiffs that are on the line, if any of you are able to

4     speak first.  Dr. Grogan or Ms. Kemp, Ms. Michelson,

5     Mr. Krick.

6          UNIDENTIFIED SPEAKER:  An extension of time.

7          THE COURT:  I'm sorry just to be clear, that was --

8     the line indicates Gaetke?

9          UNIDENTIFIED SPEAKER:  Yes, Gaetke, yes.

10         UNIDENTIFIED SPEAKER:  Yeah, I'd like to ask for

11    more time.

12         UNIDENTIFIED SPEAKER:  An extension of time.

13         DR. GROGAN:  Definitely an extension of time.  I

14    think, your Honor -- I'm in healthcare so I'm not a lawyer,

15    talking a lot of this lawyer talk is over my head, but I can

16    tell you I was at the Federal Court in Boston with Wanda,

17    she's my aunt and Ronald is my father and it seemed to me that

18    the judge there felt there was very material data that

19    would -- and I'm not going say the right wording legal-wise

20    but the statute of limitation she sort of felt with this new

21    data that came to light, which I won't get into specifics, she

22    felt there was room for this to be relooked upon.  And so we

23    believed our counsel was all in based on this conversation, so

24    it was quite a surprise for the withdrawal.  And since we've

25    had subsequent lawyers trying to talk to it, whatever

PROCEEDINGS

 1   information they're getting, seems to be not coherently

 2   corroborated with the data we heard that day in Boston.

 3          So, I'm probably talking in circles because I'm not

 4   a lawyer, I'm not using lawyer speak but --

 5          THE COURT:  No, no, Dr. Grogan, you're not speaking

 6   in circles and I appreciate that.  I will say, though, a

 7   couple things.  One, I understand what the judge in

 8   Massachusetts meant, that there may have been some insinuation

 9   made, but I also think that the situation has changed very

10   drastically since that point.

11          We're right now in the Eastern District of New York,

12   there is currently a plan here to move to dismiss this case

13   separate and apart from whether or not the plaintiffs are

14   represented, and there certainly seems to be a very strong

15   basis to grant that motion, but separately, you know, keep in

16   mind that the underlying issues here remain the same, right?

17   The underlying issues related not just to the statue of

18   limitations but the underlying settlement are significant.

19          Also, that Massachusetts court, you know, I think

20   contrary to what was just stated, decided to rule on venue

21   because the judge determined that there may be a valid statue

22   of limitations argument to be heard in this district.  So on

23   the merits there does seem to be some real concerns the

24   plaintiffs need to raise.

25          The reason why I keep coming back to this costs

PROCEEDINGS

1    issue, is that it would certainly seem to be -- some of the

2    plaintiffs should consider here about -- and again, I

3    appreciate this is at root a tragic case, and each of you have

4    suffered, I'm sure, enormous on the plaintiffs' side enormous

5    personal tragedies and losses as a result of this horrific

6    crash, but I also want to be upfront with you all that if the

7    government and the defendants win on their motion, which at

8    this stage all signs point to them being successful given the

9    law here, they will -- they can and will move for costs and it

10   would just seem to be a real travesty, frankly, to have -- you

11   have to pay costs here on top of everything else, but if the

12   Court is left with no other choice, the Court will force

13   costs, because this litigation has been going on for quite

14   sometime.

15          So I do want the plaintiffs to kind of realize where

16   things stand now.  Obviously, the Court's not going to tell

17   you, you can't proceed in the case, but the Court will tell

18   you that if you do proceed and if there is motion practice and

19   if a ruling is entered against the plaintiffs and the

20   defendants move for costs, the Court will be inclined to grant

21   such a motion given the circumstances.

22          DR. GROGAN:  Well, wouldn't that be if it's

23   frivolous case, your Honor?  The data that was presented in

24   Boston -- once again, I'm not a lawyer, but wouldn't that be

25   if there's a frivolous case?  What we're trying to politely

PROCEEDINGS

1    tell you is there's a reason we haven't been able to obtain

2    counsel, there's some misinformation out there, sir, and there

3    are scientists involved and, unfortunately, Tom can't speak,

4    he's scientist and can probably bring some things to light

5    that Mr. Walburg does -- is aware of and felt very confident

6    otherwise I don't think that firm would have taken the case,

7    and something material changed that all the plaintiffs, while

8    pretty not lawyer-ish, it is mystifying that all of a sudden

9    we lost our representation.  So I'll leave with you.

10               If Mrs. Kemp wants to speak for a moment.

11               THE COURT:  Hang on just moment, if I could just

12   take one moment here.

13               (Pause in proceedings.)

14               THE COURT:  Okay, apologies for that.

15               So let me just ask, any response from the

16   government?

17               MR. KELLY:  Yes, your Honor.  I do want to impress

18   upon the Court and the plaintiffs, since we're talking about

19   this issues of costs, that it's not -- and this is for your

20   Honor's benefit, this is not the traditional case of costs,

21   statutory costs.  But because of the languages of the releases

22   that the plaintiffs entered into with Boeing back in 2000 and

23   2001, the costs are full costs, which would include billable

24   times, experts' fees, travel, things of that nature.  And just

25   for the Court's visibility since this case started, I, alone,

PROCEEDINGS

1    have billed or reported more than 2,000 hours to this case,

2    which if you believe the Fitzpatrick scale regarding fees that

3    a FOIA case can have for somebody of my level of experience,

4    that's $717 per hour for 2,000 plus hours, plus $75,000 for

5    our experts that have been retained and already working on the

6    case, plus at least four or five trips to support my

7    investigation on behalf of the Department of Justice.  I'm

8    sure that Raytheon and Lockheed have similar dollar numbers.

9         So, you know, when you talk about the issue of

10   costs, we're talking about substantial costs that we would

11   be -- that the parties would be entitled to under the language

12   of these releases.  And of course, you know, we would offer in

13   camera inspection for the Court for those releases at your

14   convenience.

15        I do want to circle back to another issue, an issue

16   of standing and an issue, unfortunately, candor that we have

17   to deal with here.

18        Back in 2000 and 2001, when these cases were

19   initially prosecuted, you know, against Boeing, Trans World

20   Airlines, Hydro-Aire and anybody else that was involved in the

21   initial case, certain plaintiffs were designated as personal

22   representatives of the estates.  Some of those individuals

23   continued forward into this case obviously, but after those

24   settlements were arrived at or reached in 2000, 2001, those

25   estates were closed, and they were never apparently reopened.

PROCEEDINGS

1          And so despite the fact that the plaintiffs signed

2     standard Form 95s with the United States Navy, with the

3     Missile Defense Agency, with the Office of the Secretary of

4     Defense, asserting or claiming that they were personal

5     representatives of these estates, factually they may not have

6     been.  And that is again an issue of sovereign immunity and

7     subject matter jurisdiction as to the United States.  If these

8     individuals, who are now claiming and asserting that they are,

9     you know, personal representatives of the estates and

10    deceased, but factually are not, because the estates were

11    never reopened or in the case of Ms. Kemp or in the case of

12    some others, they're just -- they just don't have a basis to

13    go forward and that's a very real issue of candor that should

14    be addressed sooner rather than later.  And since we've got

15    these specific plaintiffs on the line here, I'd love to know,

16    through the Court, whether or not the estates actually ever

17    were reopened because that could be another basis for

18    dismissal.

19          THE COURT:  Well, look, I feel like that's an issue

20    that would be addressed obviously in any motion practice and

21    it's another reason why I think the plaintiffs need to think

22    about this a bit further.

23          Let me ask -- and Mr. Stalcup, if you wanted to

24    speak, again not on behalf of Mr. Krick but if there's any

25    information that you want to pass along in terms of where

PROCEEDINGS

1  things stand along with the law —— the lawyer request.

2         DR. STALCUP:  Certainly, your Honor, I appreciate

3  this moment to provide the Court with information.

4         We've spoken to maybe 50 law firms that tried to get

5  counsel for these plaintiffs.  Some were very interested and

6  then suddenly were not interested and I'm not going to go in

7  the reasons why that might be in this call.

8         It's difficult to do this especially when three

9  plaintiffs —— I guess I had just heard there are a five now

10  that have already dismissed their claims and what I wanted to

11  say earlier on behalf of what you're saying about the

12  administrators of the estates for pro se plaintiffs, I believe

13  Chris Krick and his parents right now are in the process of

14  putting all beneficiaries to Chris and have Chris be the

15  administrator of the estate to transfer that over and that's

16  exactly what's happening now.  So if Chris proceeds pro se, he

17  will be the administrator of the estate as well as the pro se

18  individual.  And that process is ongoing now.  I thought that

19  might be relevant, your Honor.

20         THE COURT:  Thank you.

21         DR. STALCUP:  And also, I just have to say Lisa

22  Michelson is on this call and these settlement agreements

23  aren't new.  And Lisa and I got them ——

24         THE COURT:  Well, let me —— I'll stop you there ——

25         DR. STALCUP:  Yes.

PROCEEDINGS

1        THE COURT:  -- because, again, I really only wanted

2   to hear about the individual update --

3        DR. STALCUP:  Okay.

4        THE COURT:  -- and again I'm not going to allow

5   nonparties to appear --

6        DR. STALCUP:  Sure, yes.

7        THE COURT:  -- and nonparties can't appear for

8   pro se litigants and Ms. Michelson is on the line as well.

9        Let me again reemphasize this point.  The

10  government's argument is a fair one, right.  If this -- and

11  again, I want to be really clear about something here.  I'm a

12  neutral magistrate judge here.  I have nothing to gain or lose

13  from this case.  At the end of the day and at this stage

14  the -- if the plaintiffs are not able to obtain counsel here,

15  there does not seem to be any viable path forward.  Either the

16  estate claims will be disposed of automatically, and even to

17  Mr. Stalcup's point, you know, if Mr. Krick wants to become

18  the administrator of the estate and he's pro se, it would

19  still be a moot point because you can't be a pro se plaintiff

20  representing the estate, but in this circumstance given the

21  law in this area and maritime law here, it would also appear

22  the individual plaintiffs would not be able to proceed pro se.

23        So I want emphasize these points because if they are

24  not able to obtain counsel, the costs that might be sought

25  here could be significant.  And what's happened in other cases

PROCEEDINGS

1   where a lawsuit has been filed, the plaintiffs have been

2   warned, as I'm warning you now, and motion practice proceeds

3   and additional costs are expended, those costs are then

4   ordered to be paid and there can be not just a judgment

5   rendered, but garnishment of wages, among other things, to try

6   to make sure that some of that money does come back to pay for

7   the defendants and the government.  And again here, there does

8   seem to be a policy-driven reason why the government, in

9   particularly a case like this where there have already been

10  settlements, would want to proceed with obtaining costs here.

11          So what I'm willing to do is as follows:  I'll give

12  one last extension until September 13th, 2024 for the

13  plaintiffs to obtain new counsel.  I'll ask Mr. Walburg to

14  file a letter on September 16th indicating whether any of the

15  plaintiffs have obtained new counsel and if they have the name

16  of that counsel, and then we can proceed accordingly.

17          If the plaintiffs are not able to obtain new

18  counsel, I'm inclined to grant the motion to withdraw.  We

19  will then address whether or not, you know, there will be

20  immediate motion practice from the government and the

21  co-defendants, or whether or not there will be a need for a

22  premotion conference or some other conference in front of

23  Judge Donnelly, who is the presiding judge, but I think in

24  short order a motion will be filed and assuming that it's

25  granted, there also would be motion practice for costs.

PROCEEDINGS

1          In the interim, I also ask that the defendants and,

2    where possible the plaintiffs, the pro se plaintiffs currently

3    or with Mr. Walburg's assistance, the plaintiffs here discuss

4    what a potential resolution would look like.  And, again, as a

5    magistrate judge here I'd be in charge of any settlement

6    conferences.  I'm happy to look in to and discuss a way out

7    here so that the plaintiffs do not pay the costs in exchange

8    for withdrawing their case and ending this case now with

9    prejudice.  But apart from that, it would seem to me that the

10   defendants would have very little incentive to otherwise agree

11   to anything in this case since their argument seems extremely

12   strong.

13          So any question on that from any of the plaintiffs

14   or the government or the defendants?

15          MR. KELLY:  Nothing on behalf of United States, your

16   Honor.

17          DR. GROGAN:  I would only say, your Honor, this

18   isn't about money.  For most of us it's about some of the

19   information that has not come to light that's been not given

20   out to the public.  So thank you, it's not about the money

21   though, appreciate that.

22          THE COURT:  And thank you for sharing that,

23   Dr. Grogan.  I will note, though, on that same point, I

24   appreciate that this is obviously a very emotional case of

25   course for all the plaintiffs, how could it not be, but I

PROCEEDINGS

1   also, again, I really want to emphasize this, I've said this

2   multiple times in this conference, that if you're unsuccessful

3   here, having the plaintiffs pay costs here is a real

4   possibility given the circumstances.  So I think there's a

5   real consideration should be given to that and that, again,

6   there may be something to the fact that, you know, despite

7   basically a summer spent looking for new attorneys, there have

8   been no new attorneys in this case.  So I offer that for what

9   it's worth.

10         I'm also going to order Mr. Walburg to obtain a copy

11  of the transcript of this proceeding today, August 22nd, and

12  to share a copy of that transcript on an expedited basis to

13  not only the plaintiffs that appeared here but any plaintiffs

14  that have not appeared at this conference just so everyone is

15  on the same page.

16         And further, Mr. Walburg, if you could serve a copy

17  of the text order that we're going to enter after this

18  conference on each of the plaintiffs that are not here --

19  actually on all the plaintiffs just to be on the safe side,

20  would just be a minute entry that we enter after this

21  conference.

22         Anything further from any of the parties?

23         MR. PAGANO:  Your Honor, Ralph Pagano on behalf of

24  Raytheon.  I would just offer that if the plaintiffs do

25  withdraw their claim by September 13th, I would recommend to

PROCEEDINGS

1    my client that we waive all costs.

2             MR. KELLY:  For the United States, we would

3    similarly follow Raytheon's lead there.

4             MS. GRACE:  And, your Honor, on behalf of Lockheed

5    Martin I can say the same.  I also want to note for the record

6    that we join in the government's further arguments.

7             Thank you, your Honor.

8             THE COURT:  Okay.  Let me just add, you know, you

9    just heard from the government about their costs, obviously

10   that would be only the government's costs.  I'm sure the other

11   defendants would also have considerable costs here.  So,

12   again, I appreciate the frustration on the plaintiffs' side,

13   but I also want to be up front and honest with you all about

14   where this is headed and I, again, want to really try to avoid

15   a scenario where six months from now we're engaging in motion

16   practice whereby there's a discussion about how individual

17   wages are garnished to pay the costs associated with this

18   case.

19            All right.  Anything further from any of the

20   parties?  All right.  Thanks very much everyone.

21            MR. PAGANO:  Thank you, your Honor.

22            MR. SNYDER:  Thank you, your Honor.  You have a good

23   afternoon.

24            ALL:  Thank you.

25            (Matter concluded.)

PROCEEDINGS

```
1                    *      *      *      *      *

2          I certify that the foregoing is an accurate

3   transcript from the official electronic sound recording of the

4   proceedings in the above-entitled matter.

5

6   s/ Georgette K. Betts              August 26, 2024

7   GEORGETTE K. BETTS                 DATE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```