**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

RONALD KRICK, et al.,

      Plaintiffs,

v.                                                  **Case No. 1:23-cv-08093 (AMD) (JAM)**

RAYTHEON COMPANY, et al.,

      Defendants.

_____

**PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS' JOINT MEMORANDUM (ECF NO. 215) AND IN SUPPORT OF PLAINTIFFS' REQUEST FOR LIMITED DISCOVERY**

## I.  PRELIMINARY STATEMENT

Defendants' Joint Memorandum (ECF No. 215) seeks to terminate this litigation on threshold grounds by characterizing a decades-old global settlement release as a categorical bar to the present claims and by asserting jurisdictional defects regarding Federal Tort Claims Act (FTCA) presentment and party status. This approach improperly attempts to resolve complex, fact-intensive disputes on an incomplete record. Defendants ask the Court to interpret releases broadly to cover parties and claims not clearly encompassed by their terms, while simultaneously resisting the discovery necessary to determine the scope and validity of those releases. Furthermore, Defendants assert that certain Plaintiffs, including the Gray Plaintiffs, have forfeited their status as parties or failed to

1

exhaust administrative remedies, despite the absence of a dispositive court order or a complete administrative record.

Federal courts have consistently held that dispositive relief is inappropriate where key factual predicates remain contested and where the moving party relies on documents and evidence not fully before the court. The procedural history of this case, including the findings of the District of Massachusetts prior to transfer, underscores the fact-intensive nature of the issues presented, particularly regarding when Plaintiffs knew or should have known of the factual basis for their claims. *Krick v. Raytheon Co.*, 695 F. Supp. 3d 202, 219 (D. Mass. 2023). While Plaintiffs acknowledge their burden to establish jurisdiction and standing, a dispute over the content of missing records—records currently withheld by former counsel or buried in agency files—does not constitute a forfeiture of rights. Accordingly, the Court should deny Defendants' requested relief or, in the alternative, grant the limited discovery requested in the Declaration of Stephani Ayers to allow for a resolution of these issues on a complete evidentiary record.

## ARGUMENT

II. **DEFENDANTS HAVE NOT ESTABLISHED THAT THE DECADES-OLD GLOBAL RELEASE BARS THIS ACTION AS A MATTER OF LAW BECAUSE DISPUTED MATERIAL FACTS REMAIN REGARDING INTENT AND THIRD-PARTY BENEFICIARY STATUS**

Defendants argue that a global settlement and release executed over twenty years ago in separate litigation bars the current claims against the present non-

2

government defendants. However, New York law and federal precedent within the Second Circuit establish that the scope and applicability of a settlement release to non-parties involve factual questions that preclude summary adjudication when genuine disputes exist regarding the parties' intent. For non-signatories to enforce a settlement release, they must establish that they were intended third-party beneficiaries of the agreement. The United States District Court for the Southern District of New York has held that an intent to benefit the third party must be shown, and the language of the contract must clearly evidence an intent to permit enforcement by the third party. *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 401 (S.D.N.Y. 2023). Where a settlement agreement does not clearly evidence such an intent, courts have found that the non-party is not a third-party beneficiary and that claims are not barred. *Id.*

In *Doe 1 v. Deutsche Bank Aktiengesellschaft*, id. the court addressed a situation where a defendant bank sought to rely on a settlement agreement and release to which it was not a signatory. The court emphasized that the mere fact that a release is broad does not automatically confer standing on a third party to enforce it. Instead, the court examined the specific language of the agreement to determine whether the original contracting parties intended to confer a benefit on the non-party. The court found that the language must clearly evidence such an intent, and that any ambiguity should be resolved against the party seeking to

enforce the release. This high standard protects the rights of the original parties to control the scope of their agreement and prevents non-parties from seizing upon language that was never intended to benefit them.

Similarly, in *Elias v. Gettry Marcus CPA, P.C.*, 2018 WL 3317510 *4 (S.D.N.Y. June 25, 2018), the court confronted a scenario where an accounting firm sought to dismiss claims based on a release in a settlement agreement between the plaintiff and her former husband. The court denied the motion to dismiss, finding that the release clause and the subsequent conduct of the signatories did not evince a clear intention to release the defendants from liability. The court noted that determining whether the defendants were intended third-party beneficiaries required an examination of the parties' intent, which presented factual questions that could not be resolved on a motion to dismiss. This case highlights the importance of context and conduct in interpreting settlement releases, particularly when the party seeking to enforce the release was not involved in the original negotiations.

The Appellate Division of the New York Supreme Court has also weighed in on this issue, holding that even when settlement agreements use defined terms for groups of parties, courts must examine whether the language in the release makes clear that each individual party released each other individual party. *Long v. O'Neill*, 126 A.D.3d 404, 407-408 (N.Y. App. Div. 2015). In *Long*, the court found

4

that a general release did bar claims against a specific individual where the language of the release appeared to contemplate that release. T

Material issues of fact regarding the meaning and validity of the release preclude dismissal at this stage. The Southern District of New York has explicitly stated that factual issues about the meaning of a settlement agreement release preclude summary judgment on that issue. *Berman v. Parco*, 986 F. Supp. 195 (S.D.N.Y. 1997). In *Berman*, the court found that conflicting interpretations of a settlement agreement can create a genuine issue of material fact that required a trial.

Furthermore, disputes regarding the validity of a release, such as whether it was authorized or fraudulently signed, present triable issues of fact. *Choi v. Hoyt De Leon Corp.*, 2023 WL 5671993 *5 (E.D.N.Y. Sept. 1, 2023). In *Choi*, the court denied summary judgment where there was evidence suggesting that the plaintiff's attorney may have signed the release without authorization. The court held that this created a factual dispute that had to be resolved by a jury. This case is relevant here, where Plaintiffs have raised concerns about the circumstances under which the prior releases were executed and whether they were fully informed of their rights at the time.

In this case, the significant temporal distance between the original settlement and the current litigation creates further factual complexities regarding the parties'

original intent. Courts have recognized that the passage of time and changed circumstances may affect the interpretation of settlement terms, particularly when the current defendants were not involved in the original negotiations. The fact that the release was executed over twenty years ago, in a different legal and factual context, militates against a summary determination of its applicability to the present claims. The Defendants' attempt to apply this decades-old release to bar claims based on newly discovered evidence of government concealment ignores the fundamental requirement that a release must be knowing and voluntary.

Given these authorities, Defendants have not carried their burden to show that the prior release bars this action as a matter of law. At a minimum, limited discovery is required to obtain the complete executed releases and to determine the precise definition of released parties and the intent of the signatories. Without such discovery, the Court would be ruling on the scope of a release based on incomplete information and speculation about the parties' intent. This would be contrary to the well-established principles of contract interpretation and third-party beneficiary law in New York and the Second Circuit.

## III. DEFENDANTS' ARGUMENT FOR DISMISSAL BASED ON FTCA PRESENTMENT FAILS BECAUSE THE ABSENCE OF A LOCATED CLAIM FORM IS NOT DISPOSITIVE AND PLAINTIFFS ARE ENTITLED TO PROVE EXHAUSTION THROUGH OTHER EVIDENCE

Defendants contend that certain Plaintiffs, including the Gray Plaintiffs, failed to satisfy the administrative presentment requirements of the Federal Tort

Claims Act (FTCA), 28 U.S.C. § 2675, and are therefore jurisdictionally barred. While the burden is on the plaintiff to plead and prove compliance with the FTCA's exhaustion requirements, courts in the Second Circuit have not required plaintiffs to produce original administrative claim forms to prove exhaustion if other evidence demonstrates that a proper claim was presented. *Estate of George v. Veteran's Admin. Med. Ctr.*, 821 F. Supp. 2d 573 (W.D.N.Y. 2011). In *Estate of George*, the court acknowledged that the plaintiff bears the burden of proof but also recognized that this burden can be met through various forms of evidence. The court did not require the production of the original claim form as a prerequisite to jurisdiction, but rather looked to the totality of the evidence to determine whether the agency had been given adequate notice of the claim.

The critical inquiry is whether the claimant presented the claim to the appropriate federal agency and whether the agency received sufficient information to investigate the claim and estimate its worth. *Hardie v. United States*, 501 F. Supp. 3d 152 (E.D.N.Y. 2020). In *Hardie*, the court emphasized that the purpose of the presentment requirement is to facilitate settlement and avoid unnecessary litigation. The court found that a notice of claim can be sufficient if it provides the agency with enough information to conduct an investigation and determine whether to settle the claim. This functional approach to exhaustion focuses on the substance of the notice rather than its form.

7

The regulations under the FTCA specify that a claim must be in writing and state a sum certain, but aside from these conditions, the claim need not be presented in any particular format. *Sea Gate Beach Club Corp. v. United States*, 190 F. Supp. 3d 310, 314 (E.D.N.Y. 2016).

Consequently, the mere fact that an agency cannot locate a Standard Form 95 (SF-95) in its records is not dispositive of whether a claim was actually filed. As the Ayers Declaration attests, Plaintiffs contend that administrative claims may have been submitted by former counsel, Bailey & Glasser, who have refused to transfer their files. In such circumstances, evidence obtained from former counsel, such as cover letters, agency correspondence, or proof of mailing, can satisfy the exhaustion requirement. *Matthias v. United States*, 475 F. Supp. 3d 125, 135 (E.D.N.Y. 2020). Plaintiff had satisfied the presentment requirement by submitting evidence that her attorney had mailed a claim to the agency. Furthermore, the Second Circuit's decision in *Barrett v. United States*, 689 F.2d 324, 327-28 (2d Cir. 1982), provides strong support for Plaintiffs' position. In *Barrett*, the court noted that the government's active concealment of facts regarding can affect issues on the sufficiency and timeliness of an FTCA claim.

The Court should not dismiss these claims based on an incomplete record created by the refusal of former counsel to cooperate and the potential gaps in agency recordkeeping. Plaintiffs are entitled to the opportunity to obtain the

necessary proof of exhaustion through limited discovery. This includes subpoenas to prior counsel for proof of submission and discovery into the agency's claim logs and receipt records. Without such discovery, the Court would be adjudicating a jurisdictional fact based on an assertion of "no record located," which is insufficient to overcome a plaintiff's good faith assertion of compliance, particularly when the files that would prove compliance are being withheld.

## IV. OMISSION OF PARTIES FROM AN AMENDED COMPLAINT MAY IF INTENDED CONSTITUTE A VOLUNTARY DISMISSAL WITHOUT PREJUDICE AND WOULD NOT OPERATE AS AN ADJUDICATION ON THE MERITS BARRING FUTURE PARTICIPATION

Defendants argue that because certain individuals, the Grays, were omitted from the Second Amended Complaint, they have been dismissed from the action with prejudice and are barred from reasserting their status as parties. This argument does not reflect universal federal procedural law. While it is true that an amended complaint supersedes the original and that parties intentionally and voluntarily dropped from an amended complaint may not remain in the case. Such an omission is generally construed as a voluntary dismissal without prejudice.

Courts construe an amended complaint that removes a plaintiff as containing a notice of voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(i). *Roche v. Aetna, Inc.*, 167 F. Supp. 3d 700, 706 (D.N.J. 2016). In *Roche*, the court addressed a situation where a plaintiff filed an amended complaint that dropped certain defendants. The court treated this action as a voluntary

9

dismissal under Rule 41(a) and held that it was without prejudice. Id. at 714. This interpretation preserves the plaintiff's right to bring the claims again if necessary.

The Second Circuit has affirmed the principle that an amended complaint "ordinarily supersedes the original". *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994); *International Controls Corp. v. Vesco*, 556 F.2d 665 (2d Cir. 1977). However, this does not mean that the omission of a party from the amended complaint is dispositive when circumstances are not ordinary, nor act as an adjudication on the merits.  Consequently, the omission of the Gray Plaintiffs from the amended pleading did not adjudicate the merits of their claims or create a res judicata bar.

Absent a court order explicitly dismissing the Gray Plaintiffs with prejudice, their status is not conclusively adjudicated by their mere omission from the amended complaint. Therefore, any defect in their current party status is curable under Federal Rules of Civil Procedure 15, 17, and 21, and does not warrant the permanent extinguishment of their rights as Defendants suggest. The proper course of action is to allow Plaintiffs to seek leave to amend the complaint to re-add the omitted parties, provided that the amendment would not be futile or cause undue prejudice to the Defendants. Given the early stage of this litigation and the fact that discovery has not yet commenced, there is no reason to deny such an amendment.

10

## V.  LIMITED DISCOVERY IS NECESSARY TO RESOLVE FACTUAL DISPUTES REGARDING STANDING, RELEASE SCOPE, AND ADMINISTRATIVE EXHAUSTION

Defendants' arguments for dismissal rely heavily on factual assertions that are disputed and supported by an incomplete record. Specifically, the issues of whether the global release covers the present defendants, whether the Gray Plaintiffs satisfied the FTCA presentment requirement, and whether Christine Grogan possesses the requisite standing all turn on documents and information currently outside of Plaintiffs' control. As detailed in the Declaration of Stephani Ayers, Plaintiffs' former counsel has not transferred the litigation file, which assuming competent representation likely contains the proofs of mailing and administrative claim forms necessary to rebut Defendants' jurisdictional challenges.

Defendants' challenge to the standing of Plaintiff Christine Grogan rests on a factual assertion that she lacks the requisite relationship to the decedent to maintain her claims. This argument, however, ignores the existence of dispositive evidence that is currently sequestered within the files of Plaintiffs' former counsel. As set forth in the Declaration of Stephani Ayers, Ms. Grogan has represented that, during the course of her representation by Bailey & Glasser, she underwent DNA testing specifically to confirm her biological relationship to the decedent, O. Lamar Allen, and to corroborate her status as a proper plaintiff. This testing was

11

conducted in the context of addressing family and probate issues implicated by the litigation.

Ms. Grogan, a layperson, relied on her prior counsel to evaluate this evidence and to determine her standing to sue before filing the complaint. The fact that prior counsel proceeded to file and litigate her claims suggests that the results of that inquiry were sufficient to satisfy their obligations under Federal Rule of Civil Procedure 11. However, because prior counsel have refused to transfer their litigation files to successor counsel, the documentary proof of this testing and the resulting legal determination remains outside of Ms. Grogan's possession.

Under these circumstances, immediate dismissal is inappropriate. The proper course is to permit limited discovery tailored to resolve these threshold issues. This request aligns with the recognition by the District of Massachusetts that the factual questions in this case, such as the timing of accrual and the extent of concealment, are fact-intensive and often require discovery. Krick, 695 F. Supp. 3d at 219. Plaintiffs request targeted discovery into: (1) the complete executed set of releases from the prior multidistrict litigation; (2) agency claim files and logs regarding FTCA presentment; (3) subpoenas to prior counsel for proof of administrative claim submission; and (4) authority and capacity documentation for the Plaintiffs.

Denying this request would effectively penalize Plaintiffs for the conduct of their former counsel and the government's recordkeeping practices. The Federal

Rules of Civil Procedure favor decisions on the merits, and granting limited discovery will ensure that the Court's dispositive rulings are based on a complete and accurate factual record rather than on procedural technicalities and missing files.

## VI.  CONCLUSION

The instant litigation does not arise in a vacuum; it stems directly from the resolution of a mass tort involving a catastrophic loss of life. Federal courts have long recognized that mass tort litigations, by their sheer scale and the aggregation of numerous individual claims, create a unique procedural environment that demands a heightened judicial role in ensuring fairness. Even where a case is not formally certified as a class action under Federal Rule of Civil Procedure 23, the aggregation of claims in a mass disaster context frequently constitutes a "quasi-class action," triggering the Court's inherent ethical and supervisory authority to protect the interests of the plaintiffs. *In re World Trade Center Lower Manhattan Disaster Site Litig.*, 66 F. Supp. 3d 477, 492 (S.D.N.Y. 2014).

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' request for dismissal as set forth in their Joint Memorandum. In the alternative, Plaintiffs request that the Court grant the limited discovery detailed in the Declaration of Stephani Ayers and set a supplemental briefing schedule to allow for the resolution of these issues on a full and fair record.

Dated: January 14, 2026

Respectfully submitted,

*/s/ Thad M. Guyer*

_____

Thad M. Guyer (pro hac vice)
Stephani L. Ayers (pro hac vice)
T.M. Guyer and Ayers & Friends, PC
116 Mistletoe Street
Medford, OR 97501

thad@guyerayers.com
(202) 417-3910
Counsel for Plaintiffs