UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RONALD KRICK, et al.,
Plaintiffs,

v.                                                    Case No. 23-CV-8093 (AMD) (JAM)

RAYTHEON COMPANY, et al.,
Defendants.

---

**DECLARATION OF STEPHANI AYERS IN SUPPORT OF PLAINTIFFS' REQUEST FOR LIMITED DISCOVERY FROM PRIOR COUNSEL RE: GROGAN/KEMP/ALLEN ESTATE AND THE GRAY PLAINTIFFS (AND LIMITED WAIVER)**

I, Stephani Ayers, declare as follows:

1.      I am an attorney for all Plaintiffs remaining in the matter. I submit this declaration based on my personal knowledge, my review of docket materials in this action, documents and communications provided to me and/or my office, and communications with Plaintiffs and/or their representatives. If called as a witness, I could and would testify competently to the matters stated herein.

2.      I am associated with T. M. Guyer and Ayers & Friends, PC. My involvement in this matter began in earnest in December 2024 in connection with Plaintiffs' efforts to address the withdrawal of prior counsel Bailey & Glasser LLP ("B&G") and attorney Todd A. Walburg, and in connection with Defendants' late asserted dismissal arguments that attack, among others, Plaintiff Christine Grogan and Plaintiffs Charles Henry Gray IV and Chadwick Graham Gray (the "Gray Plaintiffs").

1

3.    Defendants' current dismissal arguments, especially as framed in their Joint Supplemental Brief (ECF No. 215), turn in material part on B&G counsel-controlled facts concerning (i) pleading decisions and party status, (ii) what B&G did or did not do regarding administrative exhaustion, and (iii) what B&G did or did not preserve in its file. These are matters outside ordinary layperson knowledge and outside the knowledge of present counsel.

### A. <u>Efforts to obtain cooperation from B&G and Mr. Walburg; refusal to engage</u>

4.    From the outset of my involvement, I and/or attorney Thad M. Guyer attempted to obtain B&G's and Mr. Walburg's cooperation in addressing these issues in a practical way that would minimize prejudice to Plaintiffs—beginning with conferring with them during the period when they were seeking leave to withdraw.

5.    Specifically, during the conferral process surrounding B&G's withdrawal request, we urged B&G and Mr. Walburg not to withdraw until the pending Motion(s) to Dismiss were resolved, because standing/capacity and administrative exhaustion were foreseeable and case-dispositive issues that would require information and documentation primarily within B&G's possession and knowledge.

6.    B&G and Mr. Walburg were not cooperative in a way to protect the affected Plaintiffs from foreseeable prejudice. They would not discuss the merits of their withdrawal efforts.

7.    According to plaintiffs, B&G and Mr. Walburg declined to engage with the affected clients on these specific merits-based issues in a manner that would allow clients to understand what had been done, what had not been done, what proof existed, and what steps might be needed to cure or address procedural vulnerabilities.

2

**B. Failure to transfer files to Guyer & Ayers or Clients; counsel-controlled evidence remains unavailable**

8.      Neither B&G nor Mr. Walburg have ever transferred their files to Guyer & Ayers. To my knowledge, despite my requests and efforts to obtain the full files, or even just relevant portions of the file necessary to address standing/exhaustion and pleading-history issues, our firm has not received the B&G litigation file materials needed to litigate these threshold disputes. Similarly the clients have requested copies but have not been provided their case files.  It is a significant ethical and due process/fair procedures issue.  Upon withdrawal, a law firm is obligated to transfer all files to new counsel.  Thus far they have refused.

9.      This absence of file transfer is particularly prejudicial to Plaintiffs because, if administrative claims were prepared/submitted or if party-removal decisions were made with client authorization, the relevant evidence would ordinarily include items such as: drafts and final versions of SF-95s (or equivalent), transmittal letters, proof of mailing (e.g., certified mail receipts/tracking), internal correspondence, attorney notes, client-instruction documentation, and communications relating to decisions to include or omit parties from amended pleadings.

10.     Plaintiff Christine Grogan has represented to me that, in the course of her discussions with other surviving family members regarding her relationship to the decedent, she took a DNA test relating to paternity (i.e., to confirm biological relationship). I am informed and believe that this was done to corroborate her asserted status as a biological child as part of ongoing efforts to address family/probate-related issues implicated by Defendants' standing challenges. She does not recall the extent of her discussions or questions on this from B&G and Mr. Walburg, but she has assumed they made the determinations on her standing to sue.

11.     Ms. Grogan is a layperson. She has reported to me that she relied on prior counsel for guidance about how her standing/capacity posture intersected with the pleadings and with

estate-related steps, and that these issues became more difficult to address once B&G withdrew without meaningfully engaging on the merits and without transferring the client files as ethically required. Ms. Kemp similarly relied on the advice and counsel of the B&G attorneys. Both attempted to hire outside counsel to assist them but that cannot change thatthe relevant files for these purposes reside with B&G.

### C. The Gray Plaintiffs' party status: no authorization to drop; no judgment with prejudice; Court order lists them as parties

12. The Gray Plaintiffs have represented to me that they are adamant that they never authorized B&G or Mr. Walburg to drop them from this suit, never signed a stipulation dismissing their claims, and never knowingly agreed to any litigation step that would have the legal effect of dismissing them.

13. Based on my review of the docket, no judgment has been entered dismissing the Gray Plaintiffs with prejudice that would bar them from continuing as parties. Defendants contend that omission from an amended pleading effectuated a dismissal; however, I have not located any separate judgment or order entered by the Court dismissing the Gray Plaintiffs with prejudice.

14. Moreover, Judge Donnelly's Memorandum Decision and Order dated November 20, 2024 (ECF No. 159), which overruled Plaintiffs' objections to the withdrawal order, lists the Gray Plaintiffs in the caption as Plaintiffs (including "CHARLES HENRY GRAY, IV; and CHADWICK GRAHAM GRAY") after Defendants' cited status conference. This underscores that, at minimum, the Court's own identification of the party roster in that order included the Gray Plaintiffs.

15. Defendants also rely on statements attributed to prior counsel in open court regarding the Gray Plaintiffs' status in August 2024. B&G did not have any authority to claim

4

the Grays had dismissed their claims. To the extent Defendants contend that prior counsel stated the Gray Plaintiffs "voluntarily dismissed" their claims, the Gray Plaintiffs dispute that they authorized any such "voluntary dismissal," and prior counsel's basis for making any such representation (if made) is itself a counsel-controlled fact that requires testimony and file proof.

16.     I am unaware of any provision under federal civil procedure that absent a judgment of dismissal with prejudice would bar the Gray Plaintiffs from continuing in this litigation.

**D. <u>Administrative exhaustion: counsel-controlled proof, and why limited discovery is necessary</u>**

17.     Defendants have relied on an agency custodian declaration (including Navy records-search evidence) asserting that a search did not locate an administrative claim for the Gray Plaintiffs. I do not dispute that such a declaration is evidence. However, if an administrative claim was prepared and submitted (including by mail) or if there were attempts to submit or cure, the best evidence typically would be counsel-held items, copies, logs, mailing receipts, cover letters, emails, or internal notes. That the Navy cannot find the administrative claims is not dispositive of whether they were indeed sent such a claim and it is not dispositive of any estoppel that might apply given the filing of this actions years ago.

18.     The Gray Plaintiffs report that they were not the persons who would have prepared, mailed, or tracked FTCA administrative submissions and that they relied on counsel for that. If proof exists, it would and should exist in B&G's file and/or within B&G/Walburg's knowledge.  The US government's defense counsel Kelly reached out to the involved B&G attorneys on August 15, 2025, to confirm the Government's claimed version of events which the Government now attempts to hold out as confirmed facts.  B&G never confirmed this version of events.  The Government claimed that he spoke with Plaintiffs' counsel Todd Walburg on

October 5, 2022 and at that time he claims Mr. Walburg indicated that he would look into determining if a FTCA claim notice was filed, and if not, would dismiss these plaintiffs.   Kelly then claims the omission of the Gray Plaintiffs from the caption and body of the Second Amended Complaint filed on November 17, 2022 was the way and proof the Grays were thus dismissed from the matter.

19.      I was cc'ed on the August 15, 2025 email, but I never saw any response from any B& G attorney whatsoever. However, I have seen emails to the Grays from the Bailey and Glasser law firm in 2023 the clients provided me offering both case updates and legal advice. The May 2023 emails even tell the Grays the deadline for proceeding with additional legal actions.  This completely rejects the Government's representation as to the Grays having been removed from the case in 2022

20.      Given B&G's and Mr. Walburg's low level of cooperation during withdrawal conferral, their refusal to discuss merits and specifics, and their failure to transfer their files to my firm or to any of the Plaintiffs, Plaintiffs are not in a position to fully defend against Defendants' motion-to-dismiss arguments as to the Allen estate that implicates Ms. Grogan and Ms. Kemp and the Gray Plaintiffs without targeted discovery from prior counsel.

### E.  Request for Depositions of Withdrawn Attorneys:

21.      Accordingly, Plaintiffs seek limited discovery from Todd A. Walburg (via a standard Rule 30 deposition), and Bailey & Glasser LLP (via a Rule 30(b)(6) deposition), strictly limited to topics that bear on (i) the Gray Plaintiffs' administrative exhaustion and proof-of-submission, (ii) the decision-making and client authorization (if any) regarding the Gray Plaintiffs' party status/pleading omission and any claimed dismissal, and (iii) Kemp- Grogan-related standing/capacity factual predicates insofar as they were used or relied upon in this

federal action.  Because Plaintiffs and clients have been unable to obtain their case files, Plaintiffs similarly request they be allowed to issue targeted subpoenas for the relevant but withheld files.

22.    Upon approval of this limited discovery, the affected Plaintiffs are prepared to provide a limited waiver of attorney-client privilege and work-product protection strictly confined to these narrow topics, so that the dismissal issues can be resolved on a reliable factual record rather than on an incomplete, one-sided record that Plaintiffs cannot fairly rebut without access to counsel-controlled facts and files.

I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: January 13, 2026 in the State of Florida.

/s/ *Stephani Ayers*

_____