UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RONALD KRICK, *et al.*,

                        Plaintiffs,                     Civil Docket No.: 1:23-cv-08093-JAM

         - against -

RAYTHEON COMPANY, *et al.*,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REPLY BRIEF IN SUPPORT OF DEFENDANT LOCKHEED MARTIN CORPORATION'S MOTION TO DISMISS

Defendant Lockheed Martin Corporation ("Lockheed Martin"), by and through its undersigned counsel, hereby submits the below Reply to Plaintiffs' Combined Opposition to Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint ("Plaintiffs' Opposition" or the "Opposition").

## <u>INTRODUCTION</u>

Plaintiffs' Opposition, based solely on conjecture and misrepresentations, is intended to divert the Court's attention away from the inescapable reality that Plaintiffs have no standing to bring the instant lawsuit and their claims are barred and have knowingly been barred for decades. This Reply focuses first on the broad releases that were voluntarily and knowingly entered into by representatives of decedents decades ago, which cannot be invalidated. Second, Plaintiffs have no standing to bring the present action as they were not the appointed personal representatives of decedent's estates at the time this lawsuit was filed–the same remains true today. Third, nothing

advanced in the Opposition—the Massachusetts decision[1] transferring venue and denying Defendants' motion without prejudice or the discovery rule—relieves Plaintiffs of the fact that their claims are barred by the statute of limitations. Likewise, Plaintiffs' claims should be dismissed under the political question doctrine. Finally, Plaintiffs' last-minute request to engage in limited discovery should be denied as it is exceptionally untimely, prejudicial, and unrelated to the central issues in this motion.

## I.    Plaintiffs Do Not Have Sufficient Grounds to Invalidate the Subject Releases.

There is no question as to the validity and authenticity of the broad releases executed by the subject estates here, which covered known and unknown claims "arising out of or in any way related to or resulting from the loss of TWA Flight 800." Doc. No. 182-2, # 957. Instead, Plaintiffs argue that Defendants allegedly fraudulently induced a settlement Doc. No. 196, pg. 23. Plaintiffs' argument is, of course, nonsensical, as Defendants were not even part of the negotiations or parties to the agreement.

To begin with, "[a] release is a species of contract," and is therefore "governed by principles of contract law." (citation and internal quotation marks omitted). *Goonewardena v. Forster & Garbus LLP*, 2019 US Dist. LEXIS 2680, at \*9. "When an agreement is unambiguous on its face, it must be enforced according to the plain meaning of its terms." *Id.* (quoting *South Rd. Assocs., LLC v. IBM*, 4 N.Y.3d 272, 277, 826 N.E.2d 806, 793 N.Y.S.2d 835 (2005); *Cooper v. City of New York*, No. 14-CV-1761, 2018 U.S. Dist. LEXIS 177791, 2018 WL 5115565, at \*6 (E.D.N.Y. Oct. 11, 2018). Likewise, "a contract provision is unambiguous 'if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion.'" *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (citing

---

[1] See Doc. No. 95.

2

*White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 267, 878 N.E.2d 1019, 848 N.Y.S.2d 603 (2007)). Here, it is undisputed that the release language is clear and unambiguous, and the release language should be enforced according to the plain meaning of its terms.

Plaintiffs claim that the releases are invalid because they were allegedly procured through fraud or misrepresentation occasioned by "systemic efforts" of the Defendants, who were not parties to the releases and who did not procure the releases Doc. No. 196, pg. 23. Plaintiffs acknowledge that there were previous settlements for wrongful death claims arising out of the subject accident involving Boeing, TWA, and other entities, yet Plaintiffs have not alleged fraudulent concealment concerning the parties to the agreement. New York law provides: "[t]o invalidate a contract, however, the alleged fraud must be between the parties to the contract or release..." *Veroblue Farms USA Inc. v. Canaccord Genuity LLC*, 2022 U.S. App. LEXIS 16344, at *5 (2d Cir. June 14, 2022, No. 21-2465-cv) (quoting *Nash v. Y & T Distribs*., 207 A.D.2d 779, 616 N.Y.S.2d 402, 403 (2d Dep't 1994); *Lodhi v. Stewart's Shops Corp.,* 52 A.D.3d 1084 (3d Dept 2008). Similarly, "a valid release constitutes a complete bar to an action on a claim which is the subject of the release" and "may encompass unknown claims, including unknown fraud claims, if the parties so intend and the agreement is fairly and knowingly made." *Id*. (quoting *Centro Empresarial Cempresa S.A. v. Am. Móvil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011).[2]

In the case at bar, the personal representatives of decedents involved in the prior multi-district lawsuit against Boeing, TWA and others had sophisticated legal representation and by Plaintiffs' own admission, there were questions about the cause of the aircraft crash and U.S. Government's role as early as 1998, three years before the releases were signed. Doc. No. 196, pg.

---

[2] Plaintiffs' Opposition cites to *Centro* where the court actually held that the alleged fraud claims were not viable because Plaintiff had knowledge of the issues present before signing the release. Likewise, Plaintiffs' reliance on *Global Mins* is misplaced as the court held that Plaintiff did not perform an appropriate investigation prior to signing the release.

328423380v.1

11. Plaintiffs do not dispute that proper representatives of the estates at issue here—with the assistance of sophisticated legal counsel—already reviewed and negotiated releases and ultimately settled wrongful death claims in 2001. The plain language of the agreements confirm that proper representatives of the decedents consulted with their attorneys concerning the releases, and there is no basis to suggest that the agreements were not fairly and knowingly made between the contracting parties. Plaintiffs executed releases that address and knowingly bar the very claims they now assert, and expressly entered the releases "contemplating the possibility that facts may be subsequently discovered that could support claims as yet unasserted." Doc. No. 182-2, # 959. Further, the subject releases/settlement agreements acknowledge that Boeing, TWA and the other defendants denied responsibility for the accident, demonstrating that personal representatives knew the risks of signing the release. *Id.* at # 961, ¶ 14.[3]

Further, Plaintiffs' arguments for invalidation seemingly disregard the total effect of invalidation, which would ultimately require the return of settlement funds the estates received decades ago. Plaintiffs have made no effort to repudiate this contractual release despite knowing and/or participating in the FOIA litigation since 1998 and ostensibly having awareness of conspiracy theories since the time of the accident, and thus should be "deemed to have ratified it". *KK Corp. v. Nat'l Football League*, 244 F.3d 114, 122-23 (2d Cir. 2001); *Sapio v. Selux Corp.*, 2021 U.S. Dist. LEXIS 199781 (N.D.N.Y. 2021). In fact, delays as short as six months have been held to constitute a forfeiture of any claim to invalidate. See *Austin v. Advance Publ'n, Inc.*, 2017 U.S. Dist. LEXIS 51421, *11.

---

[3] Plaintiffs' own Opposition concedes that family members have been pursuing the same conspiracy theories at issue in this motion in active litigation and FOIA requests as early as 1998. Likewise, because Plaintiffs represent that FOIA requests were initiated in 1998 and FOIA litigation was seven years long, it is clear these conspiracy theories of alternative causes of the crash were still being considered by family members at the time of the signing of the release (Doc. No. 196, pg. 11).

4

Plaintiffs' claims asserted in this lawsuit, including the allegation of fraudulent concealment, were knowingly contemplated in section 8 of the releases which discharged all known and unknown claims even when based on mistake of fact and even when Plaintiffs' loss was greater than anticipated. Plaintiffs cannot claim any type of "justifiable reliance" due to this release language.  See *Danann Realty Corp v. Harris,* 5 N.Y.2d 317 (1959). The case law is well settled that fraud in the inducement is foreclosed when the party specifically disclaims reliance on any statements in the document itself. Any finding to the contrary would not only be prejudicial to Defendants who are contemplated beneficiaries of the release, but also to the named contracting Releasees who provided monetary settlements to the personal representatives of the decedents.

Finally, Plaintiffs seem to suggest that the Court should not consider the releases in deciding the motion as they are "external" and outside the docket Doc. No. 196 at 14. That ship has sailed, as the releases have long been part of the public docket. When opposing Defendants requested to file the releases under seal, Plaintiffs represented to this Court that the releases/settlement agreements should be made a part of the public docket. Doc. No. 174. As a result, Magistrate Judge Marutollo ordered the production of the subject releases on February 2, 2024 with the consent of all parties. Doc. No. 159. The releases were also mentioned at a status conference setting the initial briefing schedule for this motion. Further, courts are always permitted to consider documents pertaining to jurisdictional issues that are outside the pleadings when deciding Rule 12 motions. See *Kitzen v. Hancock*, 2017 U.S. Dist. LEXIS 178461, 2017 WL 4892173, at *2 (E.D.N.Y. Oct. 27, 2017).

## II.    Plaintiffs' Incapacity to Sue Remains Unchanged and any Efforts to Cure Estate Defects are Futile.

Plaintiffs do not have standing to assert claims on the respective estates' behalf.  Contrary to their assertions, Plaintiffs' exhibits to their Opposition do not show that the estates have actually

5

328423380v.1

been reopened and are represented by a duly appointed personal representative as required by law. Plaintiffs provided no explanation concerning the reason why personal representatives were not appointed at the time of the commencement of the litigation pursuant to NY EPTL 1-2.13. Although petitions have purportedly been filed to reopen the Krick, Gough, and Kevorkian estates, Plaintiffs have not provided sufficient evidence to show that the estates have actually been reopened, no Orders have been provided to that effect, and there is no dispute that these Plaintiffs were not duly appointed personal representatives at the time of commencement of lawsuit. Further, documents provided on behalf of the respective estates fail to show that the estates are currently represented by duly appointed representatives named in this action.

Even if Plaintiffs could partially rectify some of these issues—which Defendants contend they cannot, Defendants will suffer prejudice if they have to continue to defend this matter while simultaneously evaluating the ever-changing representation status of the Plaintiffs who should have addressed these issues years ago. In some instances, Plaintiffs now seemingly advance claims for various individuals who previously dismissed their claims when represented by prior counsel. Astonishingly, Plaintiffs' counsel asserts that O. Lamar Allen's estate has been open since the 1990s and has never closed. *However, recently filed estate documents indicate that not only is Plaintiffs' counsel mistaken, she has not exercised due diligence in her representation of the estate.* In the Second Amended Complaint, Wanda Kemp alleged that she was the personal representative of the estates of Ashton Allen and O. Lamar Allen; however, it is now apparent that she has never been duly appointed as a personal representative of either estate.[4]

---

[4] This is confirmed by Ms. Kemp's own admission in October 2024 to the Court's Show Cause Order. Doc. No. 162. It is further confirmed by Plaintiffs' counsel's own admission in her Third Request for Extension of Time. Doc. No. 192-1, ¶ 25.

6

328423380v.1

More importantly, a letter filed by Amberly Anne Allen[5] a/k/a Amberly Anne Brasington, one of the sole beneficiaries of the estate provides the following concerning statements in pertinent part: (1) the former executrix ("Betty Anne Allen"), requested that the estate be closed on June 18, 2002; (2) Betty Anne Allen declined for the estate and beneficiaries to be represented in the current lawsuit; (3) all the rightful beneficiaries of the estate signed releases that released all potential and future claims, including the claims in the present case; (4) Wanda Kemp is fraudulently representing herself as a representative and beneficiary of the estates of O. Lamar Allen and Ashton Lamar Allen in the current litigation; (5) none of the beneficiaries of the estate of O. Lamar Allen consent to the current litigation, nor have they been contacted by Plaintiffs' counsel, neither former nor current; and (6) the beneficiaries of O. Lamar Allen's estate vehemently opposed Sheldon Friedman's request and petition to become successor executor of O. Lamar Allen's estate. The statements in Ms. Brasington's letter were recently affirmed in a declaration submitted to this Court. Doc. No. 215-1. In response to Ms. Brasington's letter, Mr. Friedman filed a petition to discharge his appointment as executor, and the petition was granted on August 11, 2025.[6] Following Mr. Friedman's discharge, no individual petitioned to remove Betty Anne Allen as personal representative of O. Lamar Allen's estate. Betty Anne Allen was formally discharged as the executrix of the estate on January 7, 2026, having fully administered the estate of O. Lamar Allen[7]. The discharge of Betty Anne Allen and the lack of any additional duly appointed personal representative of the O. Lamar Allen estate is indicative of the closure of the estate.

This lack of diligence is unfair to Defendants and underscores Plaintiffs' bad faith. As a result, Plaintiffs should be precluded from utilizing Rule 17(a)(3). See *Klein v. Qlik Techs, Inc.*,

---

[5] See Exhibit A.
[6] See Exhibit B.
[7] See Exhibit C.

328423380v.1

906 F.3d 215, (2nd Cir. 2018). Plaintiffs have wasted precious judicial time and resources by misrepresenting the statuses of the estates or, at the very least, failing to address the statuses of the estates at all. Contrary to Plaintiffs' assertions, it appears that the estate of O. Lamar Allen is not only closed, but is devoid of a duly appointed representative. Given the nature, or lack thereof, of Plaintiffs' counsel's relationship with the beneficiaries of the estate of O. Lamar Allen, the estate defects cannot be cured. [8]

Plaintiffs' counsel failed to address the status of the estate of Ashton Allen in the Opposition, so it is uncontested that there is no duly appointed personal representative for the estate of Ashton Allen. Similarly, Plaintiffs' counsel inappropriately included documentation related to the status of the estate of Charles Henry Gray, III, who is not a named Plaintiff in the Second Amended Complaint. Therefore, any reference to his estate should not be considered as fully set forth in Defendants' recent Joint Supplemental Brief. Doc. No. 215.

The below chart is still the best representation of the evolving status of the personal representatives. As highlighted below, Plaintiffs' Second Amended Complaint is defective now and at the time of the filing and any attempt to amend would be futile given the jurisdictional hurdles including the statute of limitations and the prior releases.

| Decedents' Estates | Personal Representative Identified in the Second Amended Complaint | Formal Changes Since Motion Filed | Personal Representative(s) Identified on the face of the Release |
|---|---|---|---|
| Krick | Ronald Krick | Petition to Reopen filed. No decision yet. | Co-Personal Representatives Ronald W. Krick and Margaret J. Krick |

---

[8] Contrary to Plaintiffs' most recent assertions, any purported DNA testing results of Dr. Christine Grogan that are in the prior counsel's file has no bearing on the absence of a duly appointed representative on behalf of O. Lamar Allen's estate. See Doc. No. 220, ¶ 11-12.

328423380v.1

| Kevorkian | Douglas Kevorkian | Petition to Reopen filed. No decision yet. | Douglas Kevorkian (although Christine Enlow signed the release as surviving spouse of decedent, and is also named as personal representative of the Kevorkian estate in pertinent estate documents rather than Douglas Kevorkian) |
|---|---|---|---|
| Gough | Eileen Zaharioudakis | Petition to Reopen Estate filed. No decision yet. | William E. Smith |
| O. Lamar Allen | Wanda Kemp | Executor discharged and Motion to Appoint Successor Executor denied | Betty Anne Allen |
| Ashton Allen | Wanda Kemp | None | Betty Anne Allen |

Plaintiffs assert that they should be afforded reasonable time to cure any remaining estate defects and imply that Defendants first raised the issue of Plaintiffs' standing on April 1, 2025. Contrary to Plaintiffs' assertions, Plaintiffs were on notice that there were defects with the estates certainly no later than late 2024 when their prior counsel sought to be relieved. See Doc. No. 140. Nevertheless, Plaintiffs and their new counsel waited until the eleventh hour to attempt to rectify issues they had known about for months, if not years. Any additional time afforded to Plaintiffs would be prejudicial to Defendants as there have been delays since the inception of this lawsuit including Plaintiffs choosing the wrong venue to file their claims, the then pro se Plaintiffs' failure to respond to an order directing information on the creditors and beneficiaries of the estates,

9

Plaintiffs' prior attorney seeking to be relieved, voluntary dismissals by some but not all of the Plaintiffs, and the presentation of inaccurate information about the status of the estates and whether personal representatives actually wanted to proceed. See Doc. No. 198. Any amendment of pleadings would also be futile because Plaintiffs' claims are barred given the broad releases signed decades ago and by virtue of the statute of limitations.

Plaintiffs' case law citing Rule 17 is not on point. The case law cited in Plaintiffs Opposition involves "technical mistakes" where Plaintiffs moved within a "reasonable" time allowed by Rule 17(a). See *Brohan v. Volkswagen Mft Corp.*, 97 F.R.D.46 (E.D.N.Y. 1983). A Rule 17(a) substitution is liberally allowed only when the change is merely formal and does not alter the factual allegations or the participants. Here, in the case at bar, the participants are evolving and uncertain, and Plaintiffs' bad faith is unfairly prejudicing Defendants See *Klein v. Qlik Techs, Inc.*, 906 F.3d 215 (2nd Cir. 2018).

In the other cases cited by Plaintiffs, substitution serves the interests of justice, as the applicable statute of limitations was about to run on the wrongful death claim. *Levinson v. Deupree*, 345 U.S. 648, 652, 73 S. Ct. 914, 97 L. Ed. 1319 (1953) (permitting plaintiff to amend action to allege appointment as administrator "at a time when applicable statute of limitations would bar a new suit"); *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20, 36 F. 1458 (2d Cir. 1997) (allowing substitution "to avoid injustice"). Unlike those cases, the instant action involves claims that have been barred by the statute of limitations for decades.

The cases cited in Plaintiffs' Opposition also involve instances where Defendants were not prejudiced by substitution because "they had clear notice of the claims against them in the [complaint]." *Fletcher*, 2017 U.S. Dist. LEXIS 23519, 2017 WL 690533, at *6. However, in this case there was no notice to Defendant Lockheed Martin. The FOIA litigation or Plaintiffs' attempts

10

to gain information about the alleged government coverup did not involve Defendant Lockheed Martin.

Quite simply, there is no technical mistake by Plaintiffs. Rather, there is a blatant misrepresentation as to whether some of the Plaintiffs even have authority to bring a lawsuit, and some estate documents show fundamental disagreement among the decedents' beneficiaries concerning whether this lawsuit should have been filed. To bring a suit on behalf of a decedent under New York law without a personal representative would require extraordinary circumstances that are not present here such as claims of financial self-dealing by the appointed representative. See *Aetna Life Insurance Co v. Frank*, 592 F. Supp. 3d 317, * 2022 U.S. Dist. LEXIS 51294, 2022 WL 845651. See also *Hartke v. Bonhams & Butterfields Auctioneers Corp.*, 2023 U.S. Dist. LEXIS 220019 (S.D.N.Y. 2023).

The cases cited in Plaintiffs' Opposition involve delays ranging from a few days to at most months. In the subject case, the delays have been decades long and resolution of estate representation issues does not appear imminent in many instances. Defendants' case law is more on point with respect to amendments. Courts have held that a district court has broad discretion in determining whether to grant leave to amend. *Perez v. 117 Ave. of the Americas Food Corp.*, 2016 U.S. Dist. LEXIS 132910, 2016 WL 5415090, at *1 (S.D.N.Y. Sept. 27, 2016) (quoting *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000)). However, "[it is well established that leave to amend a complaint need not be granted when amendment would be futile." *Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018) (quoting *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003)). "Amendment to a pleading is futile if it could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Long v. Parry*, 679 F. App'x 60, 63 (2d Cir. 2017) (citing *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)). Here Plaintiffs' efforts to

11

328423380v.1

amend the Second Amended Complaint would be entirely futile and a further waste of judicial resources given the statute of limitations bar and the undisputed fact that decedents' true personal representatives signed clear and broad releases decades ago while alternative theories of the crash were still being investigated.

### III.    Plaintiffs' Reliance on the Massachusetts' Decision and Fraudulent Concealment/Discovery Rule is Misplaced.

Plaintiffs' reliance on the Massachusetts decision is misplaced and mischaracterizes the overall effect of the decision and surrounding circumstances. In fact, at some points in the Opposition Plaintiffs concede that the decision is "not binding". The Massachusetts Order merely required Plaintiffs' claims to be transferred to a proper venue and denied Defendants' Motions to Dismiss without prejudice, yet Plaintiffs misrepresent the Order as much more.

Judge Kelley was tasked with addressing the statute of limitations for the limited purpose of determining whether it was in the interest of justice or futile to transfer this matter. At the time in which the Massachusetts decision was being decided, Defendants' arguments were predominantly based on the untimeliness of Plaintiffs' Complaint. The releases were not before Judge Kelley; Plaintiffs made no reference to prior settlement or releases at the time they instituted this action, and Defendants had not yet obtained authorization to receive copies of the releases.

The statute of limitations issue now needs to be evaluated under Second Circuit law, which directly states that equitable tolling arguments against each Defendant must be stated with particularity. While Plaintiffs attempt to group the concepts of equitable tolling and discovery rule together, these are actually related but distinct concepts that require analysis under both federal and New York state law. See *Pearl v. City of Long Beach,* 296 F.3d 76 (2d Cir. 2002). No such inquiry was addressed in Judge Kelley's decision as she left that analysis for this court.

328423380v.1

Contrary to Plaintiffs' overt reliance on the decision, the Massachusetts decision has no precedential value and Plaintiffs concede that the decision is not binding. The decision was made by Judge Kelley without full knowledge of the content of the releases that clearly bar Plaintiffs' present claims, and this previously unavailable information should not be taken lightly or ignored. Lastly, the issue of standing in this case has evolved even since the Massachusetts decision, with additional estate documents coming to light showing that these purported representatives do not have standing under New York law and were certainly not appointed personal representatives at the commencement of the litigation.

Fraudulent concealment is not sufficiently pled in the Second Amended Complaint against Lockheed Martin[9]. Doc. No. 95, p. 17. Our Courts have held that "like a claim for fraud, fraudulent concealment must be [pled] with particularity, in accordance with the heightened pleading standards of Fed. R. Civ. P. 9(b). See *Agoliati v. Block 865 Lot 300 LLC*, 2021 US Dist. LEXIS 77295, at \*12 (E.D.N.Y. Apr. 20, 2021.) Further, "[a] plaintiff bringing a claim for fraud must allege 'the time, place, speaker, and sometimes even the content of the misrepresentation.'" *Id.* (quoting *Bertini v. Smith & Nephew, Inc.*, 8 F. Supp. 3d 246, 259 (E.D.N.Y. 2014) (internal citation omitted). Equitable tolling is a limited doctrine that applies only in rare and exceptional circumstances. See *Litle v. Arab Nank PLC*, 507 F. Supp. 2d 267 (E.D.N.Y. 2007).

Contrary to Plaintiffs' assertions and misplaced reliance on the Massachusetts decision, they have not satisfied the heightened pleading standard. Plaintiffs repeatedly mention concealment on behalf of the U.S. Government but fail to adequately explain what concealment efforts were allegedly performed on behalf of Lockheed Martin or Raytheon. Plaintiffs have conceded that their allegations of fraud, *inter alia*, were not formulated in the Second Amended

---

[9] Even though the decision is not binding, we note that even Judge Kelley's prior decision holds that there was no specific allegation of fraudulent concealment alleged as to Lockheed specifically.

13

328423380v.1

Complaint to state specific causes of action. Plaintiffs seek redress for this problem via Rule 15; however, they disregard the potential for "undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.," [all of which are sufficient grounds to deny Plaintiffs' request for leave to amend]." See *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)).

The elements of a fraudulent concealment claim require that defendant: 1) concealed from the Plaintiff the existence of his cause of action 2) that he remained in ignorance of that cause of action and 3) the continuing ignorance was not attributable to a lack of diligence. See *Kronish v. United States,* 150 F.3d 112 (2nd Cir 1998). In the present matter, Plaintiffs do not meet any of these elements as to Defendant Lockheed Martin. Plaintiffs do not allege ***any*** concealment by Lockheed Martin and the Second Amended Complaint does not document any steps Plaintiffs took to obtain information from Lockheed Martin specifically or how Lockheed Martin interfered.

In addition, there is in essence no applicable discovery rule that Plaintiffs can use to excuse their decades long delay in filing this action. Plaintiffs seek to rely on Judge Kelley's discussion of tolling under First Circuit case law to support their assertions that their cause of action against Defendants was purportedly inherently unknowable. This argument is wholly insufficient, as each federal circuit evaluates the discovery rule differently and there is an interplay between state and federal law when analyzing the discovery rule.  See *Pearl v. City of Long Beach,* 296 F.3d 76 *(*2nd Cir. 2002*)*. In evaluating the discovery rule, courts in the Second Circuit have placed more emphasis on a party's diligence in establishing the cause of the injury than courts in the First Circuit. Accordingly, this difference in circuits- even if minor- undermines Plaintiffs' arguments that this Court should effectively rubber stamp Judge Kelley's decision.

The discovery rule equates date of accrual with injury. As a general rule under New York law, statutes of limitation begin to run at the time an injury is inflicted, irrespective of whether or not a plaintiff is aware of the fact that they have been injured. This general accrual rule contrasts with some other jurisdictions, which generally hold that a statute of limitations accrues "when plaintiff knows or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long Beach*, 296 F.3d 76, 85 (2d Cir. 2002). Unlike federal law and the law of some other states, New York does not, as a general matter, apply a discovery rule. As explained by the court in *Greenwald*, "under the EPTL, plaintiffs have two years, measured from the date of death, in which to bring a wrongful death action," and "a wrongful death action accrues at the time of death." *Hernandez*, 78 N.Y.2d at 690, 693; see also *Rivera v. Viva Bar & Lounge*, No. 101161/09, 2010 N.Y. Misc. LEXIS 2651 (N.Y. Sup. Ct. New York Cnty. Mar. 11, 2010) (citing EPTL § 5-4.1) ("It is well-settled that an action by a personal representative for damages for the wrongful death of its decedent must be commenced within two years after the decedent's death."); *Morano v. St. Francis Hosp.*, 100 Misc. 2d 621, 625, 420 N.Y.S.2d 92 (N.Y. Sup. Ct. Dutchess Cnty. 1979).

Courts have held that the clearly expressed intention of the Legislature in enacting EPTL 5-4.1 was to provide that an action for wrongful death must be commenced within two years after the date of death, regardless of the underlying negligent act which gave rise to the cause of action. See *Greenwald v. City of New York*, 2012 US Dist. LEXIS 185361 (E.D.N.Y. 2012). Accordingly, there is no applicable discovery rule applied by New York state courts that Plaintiffs can utilize. And even if Plaintiffs could rely on such doctrine it would fail as the unfortunate death of these decedents was within minutes or even less of any alleged negligent act. Plaintiffs' reliance on Judge Kelley's decision is misplaced as Judge Kelley intentionally chose not to reach a final determination on the accrual date for calculation of the statute of limitations.

328423380v.1

IV.    **The Political Question Doctrine is Applicable.**

Plaintiffs' arguments about the factors discussed in *Baker v. Carr* consist of conclusory assertions and ignore key arguments set forth in Defendants' prior briefs. Plaintiffs blindly assert that their claims do not arise out of foreign affairs but seek redress for negligent operational conduct in commercial airspace. Doc. No. 196, pg. 42. Even if their assertions were true, Plaintiffs ignore the fact that the redress that they are seeking will require this Court to review military decisions of the then Department of Defense and the Navy, including procurement decisions, choices concerning the alleged prioritization of the Navy's missile program in 1996, and the need to upgrade its capabilities as a missile defense system. Doc. No. 33, ¶ 55, 56. Contrary to Plaintiffs assertions, discovery in this matter would undoubtedly uncover the how's and why's related to decision-making of the then DOD and Navy. Plaintiffs seek to ignore the importance of such how's and why's by merely indicating that they are focused on allegations of operational negligence; however, the circumstances surrounding the alleged operational negligence by the government and Contractor Defendants would certainly be imperative to a fair and thorough resolution of this case.

Plaintiffs misunderstand and make light of Defendants' anticipated defenses and the role of causation associated with tort claims. They state that their negligence claims are governed by standard tort principles, yet fail to acknowledge the role that military decision-making would undoubtedly play in a causation analysis. In the Second Amended Complaint, Plaintiffs clearly allege that "testing missiles off the east coast of the United States was a departure from prior practices" and therefore are implicitly acknowledging that Plaintiffs' lawsuit is second-guessing military judgments about weapons testing. Doc. No. 33, ¶ 32.

The *Carmichael* and *Aktepe* cases have been recognized as valid law in the Second Circuit. See *Tarros S.p.A. v. US*, 982 F. Supp. 2d 325 (S.D.N.Y. 2013); *Aiello v. Kellogg, Brown & Root*

16

328423380v.1

*Servs.,* 751 F. Supp. 2d 698 (S.D.N.Y. 2011). While Plaintiffs' Opposition attempts to distinguish *Carmichael* and *Aktepe* by arguing that the conduct alleged to be negligent in those actions were high level decisions taking place during war, this is a distinction without a difference as the fact that the alleged negligence stemmed from war time activities was not central to either holding. Rather, the courts in *Carmichael* and *Aktepe* held it was not equipped to evaluate political questions as the judicial branch should not be second guessing military decisions or how a weapon system operator should behave.

Plaintiffs allege that Defendants breached a duty not to test missiles in commercial airspace and claim that they merely seek redress for alleged negligent operational conduct. Doc. No. 196, pp. 42-43. In doing so, Plaintiffs gloss over the intricacies of the political question doctrine and minimize the role that this Court will have to play in this litigation if this matter proceeds. It is clear that the political question doctrine generally precludes judicial review of discretionary military decisions related to military operations. See *Tarros* at 333 (referencing *Gilligan v. Morgan*, 413 U.S. 1, 6 (1973).  Therefore, the political question doctrine is applicable to this action, and Plaintiffs' claims should be dismissed.

**V.      Plaintiffs' Request for Limited Discovery is Untimely, Prejudicial, and Seeks Information Unrelated to the Central Issues in the Motion.**

In Plaintiffs' Response to Defendants' Joint Supplemental Brief, they include a request for limited discovery into, inter alia, (1) the complete executed set of releases from the prior multidistrict litigation; and (2) authority and capacity documentation. Doc. No. 220, ¶ 12. Additionally, Plaintiffs are seeking limited discovery from Plaintiffs' former counsel Todd A. Walburg and Bailey & Glasser LLP based upon allegations that Todd Walburg and Bailey & Glasser have never transferred their litigation files, failed to cooperate during the withdrawal

328423380v.1

process, and declined to engage with affected clients on specific merits-based issues. Doc. No. 220-1. According to Plaintiffs, such limited discovery is necessary for a full and fair record.

Plaintiffs' untimely and inappropriate request for limited discovery is a tactic that effectively asserts an irrelevant malpractice claim against Plaintiffs' former counsel. Plaintiffs' present counsel, Ms. Ayers, has been involved in this litigation since October of 2024, and has had countless opportunities to advise the Court that she was having issues obtaining litigation files from former counsel, yet she opted to remain silent. By illogically seeking to obtain releases that have never been claimed to be inauthentic and that are already part of the docket, Plaintiffs would further delay resolution of this case. All pertinent releases were provided to Ms. Ayers on both January 23, 2025 and September 23, 2025 via email from Robert Kelly on behalf of the U.S. Government, notwithstanding the fact that Ms. Ayers previously requested for the releases to be filed on the public docket. See Doc. 174. Plaintiffs are also seeking to determine the intent of the contracting parties via limited discovery which would be prejudicial and unnecessary given the plain language of the releases.

As to the request for limited discovery concerning Todd A. Walburg and Bailey and Glasser, Plaintiffs have had full knowledge for over a year that they were not in possession of former counsel's litigation file, yet it conveniently has not become an issue until the very end of the briefing period. Plaintiffs have actively participated in all aspects of this litigation since the withdrawal of Todd A. Walburg and have failed to make mention of any potential issues concerning the withholding of documentation or lack of cooperation since his withdrawal when there has been ample opportunity to do so. The issues surrounding the estates, Plaintiffs' lack of standing, and the Gray Plaintiffs are not new issues. Similarly, prior counsel's litigation file is unnecessary to resolve these issues. Defendants have obtained relevant estate documentation on

18

328423380v.1

behalf of each estate evidencing the lack of duly appointed personal representatives, and Ms. Ayers personally failed to recognize the Gray parties as Plaintiffs previously.[10] These facts coupled with Mr. Walburg's admission to the Court are sufficient indicators that the Gray parties are no longer parties to this action. Doc. No. 216, ¶ 13. There is no true probative value in the limited discovery that Plaintiffs now seek, and the untimeliness and inappropriateness alone is sufficient to warrant denial of their requests. Plaintiffs' actions and omissions have unfairly prejudiced Defendants and diverted precious court resources. Plaintiffs' eleventh hour request to pursue discovery cannot turn back time or convey legal standing. Granting such a request would just lead to more costs, delays, and the inevitable decision that Plaintiffs' claims are time-barred, previously released, and not properly before this Court.

**CONCLUSION**

Lockheed Martin requests that this Court dismiss Plaintiffs' Second Amended Complaint under both Rule 12(b)(6) and 12(b)(1) with prejudice and deny Plaintiffs' request for limited discovery. Lockheed Martin further requests that the Court grant any other and further relief that the Court deems just and proper.

This the 20th day of January, 2026.

Respectfully submitted,

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP**

*Kathryn A. Grace*

Kathryn A. Grace (PHV)
kathryn.grace@wilsonelser.com
227 West Trade Street, Suite 1830
Charlotte, North Carolina 28202
Phone: 703-852-7869

---

[10] Doc. No. 154, ¶ 1 and Doc. No. 157, ¶ 3.

328423380v.1

John P. Kelly
john.p.kelly@wilsonelser.com
150 E 42nd Street
New York, NY 10017
Phone: 212-915-5848

*Attorneys for Lockheed Martin Corporation*

20

328423380v.1

## CERTIFICATE OF SERVICE

I, Kathryn A. Grace, hereby certify that the foregoing document was filed through the ECF system, the document will be sent electronically to the registered participants, and paper copies will be served via first class mail on those indicated as non-registered participants.

*Kathryn A. Grace*
Kathryn A. Grace

328423380v.1