**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

RONALD KRICK, et al.,

No.: 1:23-cv-08093-AMD-JAM

                                        Plaintiffs,

        - against -                                         Donnelly, D.J.
                                                            Marutollo, M.J.

RAYTHEON COMPANY, et al.,

                                        Defendants.

-----------------------------------------------------------------X


**DEFENDANT RAYTHEON COMPANY'S REPLY BRIEF**
**IN SUPPORT OF ITS RULE 12(b)(6)**
**MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................... ii

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION ............................................................................................................1

ARGUMENT ...................................................................................................................2

    I.       PLAINTIFFS DO NOT HAVE STANDING ...........................................................2

    II.     PLAINTIFFS SHOULD NOT BE ALLOWED TO UTILIZE RULE 17(a)(3) ..........4

    III.    MARITIME LAW GOVERNS THIS DISPUTE .......................................................6

    IV.   UNDER THE DISCOVERY RULE, PLAINTIFFS' CLAIMS ACCRUED, AT THE LATEST, WHEN THEY HIRED COUNSEL AND FILED LAWSUITS.................7

    V.    PLAINTIFFS HAVE NOT ALLEGED FRADULENT CONCEALMENT AGAINST RAYTHEON .............................................................................................9

    VI.   PLAINTIFFS' ALLEGATIONS OF FRAUD CANNOT INVALIDATE RELEASES AT ISSUE.................................................................................................10

        a.  Plaintiffs Cannot Establish Justifiable Reliance...................................................10

        b.  Plaintiffs Released Their Fraud Claims.................................................................13

        c.  The U.S. Government's Alleged Fraud Cannot Invalidate the Release Because It Was Not a Party to the Contract .............................................................14

        d.  Plaintiffs Ratified the Releases ............................................................................15

    VII.   PLAINTIFFS' CLAIMS AGAINST RAYTHEON ARE NOT JUSTICIABLE UNDER THE POLITICAL QUESTION DOCTRINE.............................................15

        a.  Plaintiffs' Claims Require Adjudication of Matters Committed to the Legislative and Executive Branches of Government ............................................15

        b.  There Are No Judicially Discoverable, Manageable Standards for Resolving the Issues Implicates by This Lawsuit.........................................................17

        c.  Raytheon Properly Relies on *Carmichael and Aktepe* .........................................19

CONCLUSION.................................................................................................................20

**TABLE OF AUTHORITIES**

**Cases**

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*
106 F.3d 11, 20, 36 F. 1458 (2d Cir. 1997) ....................................................................4

*Aktepe v. USA,*
105 F.3d 1400 (11th Cir. 1997) ...............................................................................19

*A.Q.C. ex rel. Castillo v. United States,*
656 F.3d 135 (2d Cir. 2011)....................................................................................7, 8

*Bensky v. Indyke,*
743 F. Supp. 3d 586, 589 (S.D.N.Y. 2024)...............................................................12

*Bentzlin v. Hughes Aircraft Co.,*
833 F. Supp. 1486, 1497 (C.D. Cal. 1993) ..............................................................18

*Carmichael v. Kellogg,*
572 F.3d 1271, 1275 (11th Cir. 2009) .....................................................................19

*Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.,*
17 N.Y.3d 269, 276, 929 N.Y.S.2d 3, 8, 952 N.E.2d 995, 1000 (2011)..............13, 14

*Chira v. Lockheed Aircraft Corp.,*
634 F.2d 664, 666 (2d Cir. 1980)..............................................................................6

*Couch v. United States,*
694 F.3d 852, 854-55 (7th Cir. 2012) .......................................................................7

*Danann Realty Corp. v. Harris,*
5 N.Y.2d 317, 320, 157 N.E.2d 597, 184 N.Y.S.2d 599, 601 (1959)......................11

*Dolan Bros. v. Shellfish Boissoneault*
2007 U.S. Dist. LEXIS 22999, at *2 (D. Conn. Mar. 29, 2007)................................7

*Ferguson v. Lion Holding, Inc.,*
312 F. Supp. 2d 484, 499 (S.D.N.Y. 2004)................................................................5

*Frymer v. Bell,*
99 A.D.2d 91, 95, 472 N.Y.S.2d 622, 625 (App. Div. 1st Dept. 1984)..................5-6

*Giller v. Kate, Nussman, Ellis Farhi & Earle, LLP,*
2019 NY Slip Op 32301(U), ¶ 9 (Sup. Ct. 2019) ...................................................12

*Gilligan v. Morgan,*
413 U.S. 1, 10 (1973)...............................................................................................19

*In re Air Crash Disaster off the Coast of Nantucket Island,*
2010 U.S. Dist. LEXIS 30075, at *18 (E.D.N.Y. Mar. 29, 2010) ............................6

*In re D'ancona,*
2023 U.S. Dist. LEXIS 16490, at *7 (E.D.N.Y. Jan. 30, 2023) ...............................7

*Klein v. Qlik Techs., Inc.,*
906 F.3d 215, 226 (2d Cir. 2018)..............................................................................4

*Koohi v. United States,*
976 F.2d 1328 (9th Cir. 1992) .................................................................................20

*Krick v. Raytheon Co.,*
    695 F. Supp. 3d 202, 217 (D. Mass. 2023) ........................................................7

*Lodhi v. Stewart's Shops Corp.,*
    52 A.D.3d 1084, 1085, 861 N.Y.S.2d 160, 162 (App. Div. 3rd Dept. 2008) ..................14

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555, 569 n.4 (1992) ..........................................................................2

*Macias v. Jzanus Ltd.,*
    No. 20-CV-286, 2020 U.S. Dist. LEXIS 202048, at *3 (E.D.N.Y. Oct. 29, 2020) ............2

*McMahon v. Presidential Airways, Inc.,*
    502 F.3d 1331, 1359-62 (11th Cir. 2007) ........................................................17

*Moore v. Cohen,*
    548 F. Supp. 3d 330, 343 (S.D.N.Y. 2021) ........................................................11

*Nash v. Y & T Distribs.,*
    207 A.D.2d 779, 780, 616 N.Y.S.2d 402 (App. Div. 2d Dept. 1994)) ..........................14

*Nicomedez v. AIG,*
    2012 U.S. Dist. LEXIS 153623, at *10 (S.D.N.Y. Oct. 16, 2012) ..................................15

*Nusbaum v. Nusbaum,*
    280 A.D. 315, 318-19, 113 N.Y.S.2d 440 (App. Div. 1st Dept. 1952) ..........................15

*PetEdge, Inc. v. Garg,*
    234 F. Supp. 3d 477, 488 (S.D.N.Y. 2017) ........................................................11

*Rodriguez v. General Dynamics,*
    696 F. Supp. 2d 1163, 1185 (D. Haw. 2010) ......................................................18

*Rotella v. Wood,*
    528 U.S. 549, 552 (2000) ..............................................................................9

*Shelley v. S. Shore Healthcare,*
    123 A.D.3d 797, 797, 999 N.Y.S.2d 103, 104 (App. Div. 2nd Dept. 2014) ......................2

*Tarros S.p.A. v. United States,*
    982 F. Supp. 2d 325, 338 (S.D.N.Y. Nov. 19, 2013) ..............................................20

*Tiffany v. United States,*
    931 F.2d 271 (4th Cir. 1991) ..........................................................................18

*Veroblue Farms v. Cannaccord Genuity,*
    No. 21-2465-cv, 2022 U.S. App. LEXIS 16344, at *5 (2d Cir. June 14, 2022) .......... 14-15

*VKK Corp. v. Nat'l Football League,*
    244 F.3d 114, 122-23 (2d Cir. 2001) ................................................................15

*W.W.W. Assocs. v. Giancontieri,*
    77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 443 (1990) ..............................................10

*Yeadon v. N.Y.C. Transit Auth.,*
    719 F. Supp. 204, 211 (S.D.N.Y. 1989) ............................................................5

*Zirvi v. Flatley,*
    838 F. App'x 582, 585 (2d Cir. 2020) ................................................................8

**Statutes**

N.Y. Est. Powers & Trusts Law § 1-2.13 ........................................................................2

## INTRODUCTION

Plaintiffs' Opposition confirms that their claims cannot proceed. It is now clear that at the time the operative Complaint was filed, none of the Plaintiffs had the requisite standing to bring the wrongful-death claims asserted and they should therefore be dismissed. Their attempt to invoke Rule 17(a)(3) to salvage this case fails because the deficiencies are not merely technical. The proposed substitutions would accompany other changes that would materially alter the parties and allegations, as shown by a record reflecting years of delay, shifting theories, and newly raised assertions that are inconsistent with the limited purpose of Rule 17.

Even setting standing aside, Plaintiffs' claims are time-barred by decades. Under the discovery rule, their claims accrued no later than when they hired counsel and filed lawsuits in the 1990s—conduct Plaintiffs concede. Their reliance on alleged government concealment goes, at most, to fraudulent concealment tolling, not accrual itself, and Plaintiffs plead no fraudulent concealment as to Raytheon at all. Indeed, the District of Massachusetts already recognized that Plaintiffs fail to allege fraudulent concealment against the contractor Defendants.

Furthermore, Plaintiffs cannot escape the settlement agreements their decedents' representatives executed. The Releases foreclose any claim of justifiable reliance by expressly disclaiming reliance on statements concerning the cause of the accident; bar unknown claims, including fraud claims; and were ratified by Plaintiffs through years of inaction after the alleged fraud was "discovered." Plaintiffs' assertion that government conduct induced settlement cannot invalidate a contract between Plaintiffs and Boeing.

Finally, Plaintiffs' allegations fall squarely within the political question doctrine. The claims challenge military judgment of the Executive Branch concerning the timing, location, and manner of Aegis system testing—issues constitutionally committed to the Executive Branch and

beyond judicial review. Courts confronted with materially similar allegations have repeatedly dismissed them.

For all these reasons—and those set forth in Raytheon's opening brief—Plaintiffs' claims fail as a matter of law and should be dismissed with prejudice.

## ARGUMENT

### I. PLAINTIFFS DO NOT HAVE STANDING

Standing is to be determined at the time of the filing of the Complaint. *Macias v. Jzanus Ltd.*, No. 20-CV-286, 2020 U.S. Dist. LEXIS 202048, at *3 (E.D.N.Y. Oct. 29, 2020) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 n.4 (1992)). Only personal representatives have standing to assert the wrongful death claims alleged and individual beneficiaries are improper parties. [*See* Dkt. 186, Raytheon Br. at pp. 12-14]. Further, the opening of an estate is not enough to confer standing; a personal representative needs letters of administration. *See* N.Y. Est. Powers & Trusts Law § 1-2.13 ("A personal representative is a person who has received letters to administer the estate of a decedent."); *Shelley v. S. Shore Healthcare*, 123 A.D.3d 797, 797, 999 N.Y.S.2d 103, 104 (App. Div. 2nd Dept. 2014) (explaining same). It is now clear that none of the Plaintiffs[1] had standing at the time the operative Complaint was filed.

**Decedent Daniel Gaetke** - Plaintiffs' Complaint alleges that Jodelle Gearon brought this action on behalf of the Estate of Daniel Gaetke, and Todd and Craig Gaetke brought claims in their individual capacities. [Dkt. 33, 2d Am. Compl. at ¶¶ 21-23]. Jodelle Gearon and Todd Gaetke dismissed their claims, with prejudice, on May 14, 2024. [Dkts. 137, 138]. That leaves only Craig

---

[1] Raytheon does not address the claims of Charles Henry Gray, IV and Chadwick Gray here, who were unilaterally reinserted into the litigation via Plaintiffs' response brief despite not appearing in the operative Complaint. That issue is the subject of the supplemental briefing at Dkts. 215 and 220.

Gaetke, in his individual capacity, as a Plaintiff and none of Plaintiffs' briefs or pleadings even mention the status of decedent Daniel Gaetke's estate. Craig Gaetke must therefore be dismissed.

**Decedents O. Lamar Allen and Ashton Allen** - Plaintiffs' Complaint alleges that Wanda Kemp is the personal representative of these estates, [Dkt. 33, 2d Am. Compl. at ¶¶ 24], which is now acknowledged to be inaccurate (or at best strategically ignored as to Ashton Allen's estate). [*See* Dkt. 162, Kemp Ltr.; Dkt. 192-1, Decl. ISO Mot. To Ext. at ¶ 25; Dkt. 215, Defs'. Supp. Br. at pp. 2-4 (collectively demonstrating that while O. Lamar Allen's estate was open, Ms. Kemp was not the personal representative, the true personal representative did not authorize this action, and the individual seeking appointment withdrew his petition)]. Dr. Christine Grogan only brings claims in her individual capacity for the death of O. Lamar Allen. [Dkt. 33, 2d Am. Compl. at ¶¶ 25]. As there was no personal representative representing these decedents' estates, Ms. Kemp and Dr. Grogan must be dismissed.

**Decedent Oliver Krick** - Plaintiffs Ronald Krick, Margareta Krick, and Christopher Krick brought claims on behalf of decedent Oliver Krick, with Ronald Krick alleging to be the personal representative. [Dkt. 33, 2d Am. Compl. at ¶¶ 15-17]. This was acknowledged to be inaccurate. [*See* Dkt. 192-1, Decl. ISO Mot. To Ext. at ¶ 28 ("Oliver Krick: This estate is not currently open"); Dkt. 194-2 at PageID 1332-33 (asserting a petition to reopen the estate was filed 7/15/25 that asks for *Christopher* Krick be appointed as personal representative, but no letters testamentary included)]. As there was no personal representative, each Krick Plaintiff must be dismissed.

**Decedent Donald Gough** - Plaintiffs Eileen Zaharioudakis and Michael Deteresa bring claims on behalf of decedent Donald Gough, with Ms. Zaharioudakis alleging to be the personal representative. [Dkt. 33, 2d Am. Compl. at ¶¶ 26-27]. That was acknowledged to be inaccurate. [*See* Dkt. 192-1, Decl. ISO Mot. To Ext. at ¶ 28 ("Donald Gough: This estate is not currently

open.”); Dkt. 194-2 at PageID 1305-08 (asserting only a petition to <u>reopen</u> the estate was drafted by Ms. Zaharioudakis, but no letter testamentary included)]. As there was no personal representative, Ms. Zaharioudakis and Mr. Deteresa must be dismissed.

**Decedent Ralph Kevorkian** - Plaintiff Douglas Kevorkian brought claims on behalf of decedent Ralph Kevorkian individually and as personal representative. [Dkt. 33, 2d Am. Compl. at ¶¶ 18]. That was acknowledged to be inaccurate. [*See* Dkt. 192-1, Decl. ISO Mot. To Ext. at ¶ 27 (“Ralph Kevorkian: This estate is not currently open.”); Dkt. 194-2 at PageID 1311-31 (asserting a petition to reopen the estate submitted 6/20/25, but no letter testamentary included)]. As there was no personal representative, Mr. Kevorkian must be dismissed.

Plaintiffs' allegations that personal representatives had been appointed were false at the time the operative Complaint was filed and it is too late to fix.

## II.     PLAINTIFFS SHOULD NOT BE ALLOWED TO UTILIZE RULE 17(a)(3)

Plaintiffs argue that they should be able to cure their defective standing pursuant to Fed. R. Civ. P. 17(a)(3). [Dkt. 196, Pltfs.' Br. at pp. 22-24]. Rule 17(a) substitutions are appropriate “when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants.” *Klein v. Qlik Techs., Inc.*, 906 F.3d 215, 226 (2d Cir. 2018) (quoting *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997)). Even if this requirement is met, the substitution should be denied if the amendment proposed is “in bad faith or in an effort to deceive or prejudice the defendants” or would otherwise result in “unfairness to the defendant.” *Id.* There should be no amendment under this standard.

Plaintiffs' original Complaint, filed on June 8, 2022, included the same inaccurate personal representative allegations that exist today. [Dkt. 1, Compl. at ¶¶ 15-27]. The only reasonable inference is that Plaintiffs' prior counsel was aware of the need for a personal representative to

prosecute these claims but failed or declined to do what is necessary to render the allegations true. Defendants' new counsel appeared in December 2024, [Dkt. 165], and Defendants raised the lack of personal representatives in their April 1, 2025 motions, yet the issues remain.

Raytheon anticipates that any amendment <u>will</u> alter the Complaint's allegations as to events and participants given the various representations on Plaintiffs' intentions[2]. At various points, Plaintiffs mention unpled claims of abuse of process, loss of companionship, reckless infliction of emotional distress, and violations of civil rights. [Dkt. 196, Pltfs.' Br. at pp. 38, 40]. They also raised, for the first time on January 13, 2026, issues on whether the Releases at issue were "authorized or fraudulently signed," suggestions that they need "the complete executed releases[3]," and discovery from their prior counsel to evaluate the viability of their claims. [*See* Dkt. 220, Pltfs.' Supp. Br.].

Moreover, many of the Plaintiffs were signatories to the original Releases. [*See* Dkt. 186, Raytheon Br. at pp. 22-24]. The fact they are only <u>now</u> suggesting the Releases were unauthorized or fraudulently signed when such information would be within their personal knowledge suggests some level of bad faith or inexcusable delay (and also begs the question of whether non-signatories could make these assertions). Further, if there was fraud, the Plaintiffs must either seek rescission of the settlement and sue again on the original claims or bring a separate claim for fraud. *See Yeadon v. N.Y.C. Transit Auth.*, 719 F. Supp. 204, 211 (S.D.N.Y. 1989). Rescission requires a return of the consideration and to bring all parties to the agreement before the Court. *Ferguson v.*

---

[2] Raytheon can only "anticipate" the amendment because despite raising the issue of amendments at various points, Plaintiffs have never moved for any relief or specifically articulated the content of any proposed amendments. They only raise the issue in response to Defendants' arguments rather than proactively curing the well-known deficiencies or moving to amend.

[3] Raytheon does not know what this refers to as there has been no suggestion the Releases received from Boeing are inauthentic or incomplete.

*Lion Holding, Inc.*, 312 F. Supp. 2d 484, 499 (S.D.N.Y. 2004); *Frymer v. Bell*, 99 A.D.2d 91, 95, 472 N.Y.S.2d 622, 625 (App. Div. 1st Dept. 1984).

The complexities that could arise three and a half years into this litigation and over 25 years since the events at issue are extensive. The various causes of action alluded to would raise new standing issues. They could also inject new parties into the case and create potential conflicts of interest given the rights of the decedents' beneficiaries that are not before the Court could be affected by attempts to invalidate the Releases. There could also be fresh statute of limitations and choice of law considerations. This is therefore not a scenario where a mere substitution would cure a technical defect. Instead, it would almost certainly alter the original complaint's factual allegations and result in patent unfairness to the Defendants.

Finally, underlying Plaintiffs' arguments appear to be an assumption that the present deficiencies were caused by their former counsel's actions or failures and those cannot affect the viability of their claims. That is not true. *See Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 666 (2d Cir. 1980) ("Absent a truly extraordinary situation…the client is not excused from the consequences of his attorney's nonfeasance."); *In re Air Crash Disaster off the Coast of Nantucket Island*, 2010 U.S. Dist. LEXIS 30075, at *18 (E.D.N.Y. Mar. 29, 2010) (finding Rule 17(a) inapplicable to cure personal representative deficiencies under the circumstances and declining relief based on counsel's failure to complete the appointment process).

Rule 17(a)(3) is not properly invoked given the history and present posture of this case and if the Court grants any of the dispositive bases in Defendants' motions the case should be dismissed with prejudice.

### III.    MARITIME LAW GOVERNS THIS DISPUTE

Plaintiffs' argument that the "land-based elements" of their claim require further discovery and analysis before admiralty jurisdiction attaches ignores the authority in Raytheon's opening

brief. [Dkt. 196, Pltfs'. Br. at pg. 29]. The location of tort is defined as the location of the *alleged negligence's effect*, even if originating on land. *See In re D'ancona*, 2023 U.S. Dist. LEXIS 16490, at *7 (E.D.N.Y. Jan. 30, 2023); *see also Dolan Bros. Shellfish v. Boissoneault*, 2007 U.S. Dist. LEXIS 22999, at *2 (D. Conn. Mar. 29, 2007) (same). Thus, Plaintiffs' allegations that TWA Flight 800 exploded over, and crashed into, the Atlantic Ocean is determinative as to the locality prong of the two-part test. [*See* Dkt. 33, 2d Am. Compl. at ¶¶ 2, 8].

Plaintiffs also ask that the case be transferred to the admiralty side of the Court if admiralty jurisdiction is found, but that is unnecessary. Raytheon is not claiming the mere application of admiralty law results in dismissal and this side of the Court has jurisdiction to hear the claims.

Finally, Raytheon takes no position on whether the Court has jurisdiction under the FTCA as that statute applies only to governmental entities. *See Couch v. United States*, 694 F.3d 852, 854-55 (7th Cir. 2012) (FTCA applies to injuries caused by federal employees).

## IV.   UNDER THE DISCOVERY RULE, PLAINTIFFS' CLAIMS ACCRUED, AT THE LATEST, WHEN THEY HIRED COUNSEL AND FILED LAWSUITS[4]

Plaintiffs knew their decedents' deaths were wrongfully-caused (i.e. their injury) when they hired counsel and filed lawsuits in the 1990s[5]. That is all the information they needed for their claims to accrue, rendering them untimely by decades. Plaintiffs do not address the cases in Raytheon's opening brief supporting this proposition and rely on a case that further supports it – *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135 (2d Cir. 2011).

---

[4] This argument is ripe for review despite Judge Kelley's analysis of it prior to transfer. Judge Kelley stated in her order transferring this case that she did not reach a determination on the date of accrual for the applicable statute of limitations and only evaluated the argument to see if a transfer was futile. *Krick v. Raytheon Co.*, 695 F. Supp. 3d 202, 220 (D. Mass. 2023). The First and Second Circuits also differ in their application of the discovery rule.

[5] Raytheon contends that learning of the accident itself was sufficient for the claim to accrue because aircraft accidents do not typically occur absent wrongful conduct, but relies upon the filing of the original lawsuits as the most unassailable point of accrual. Either date leads to the same result – that the filing of the instant Complaint is untimely.

In *A.Q.C.*, AQC was born in February 2005 with weakness in her arm and leg. *Id.* at 138. In December 2005, an intervention counselor raised the possibility that the injury could have been caused by malpractice. *Id.* AQC's mother contacted a law firm in February 2006 and retained it in April 2006. *Id.* The firm reviewed medical records and determined the injuries were caused by medical malpractice by August 2006. *Id.* The firm initially did not know that the clinic and doctor at fault were federally-funded and when it learned of such, presented an administrative claim in April 2008 and filed a lawsuit. *Id.* at 139. The case was dismissed based on the failure to file an administrative claim within the two-year statute of limitations. *Id.*

On appeal, the Second Circuit explained that AQC's claim accrued under the discovery rule when she knew or should have known enough to "seek[] legal advice." *Id.* at 140. As AQC's injuries were discernable shortly after her February 2005 birth, "any claim related to that injury accrued once [AQC's mother] had reason to suspect A.Q.C.'s injury was iatrogenic." *Id.*

AQC's mother argued she could not have known her daughter's injuries were iatrogenic until an expert reviewed her medical records in July 2006 or when she retained counsel in April 2006. *Id.* at 139. The Second Circuit disagreed, finding accrual was simply when AQC's mother was "told or had reason to suspect" that the injury was "related in some way to the medical treatment" AQC received. *Id.* at 142. While the claim may have accrued as of the December 2005 consultation, "it [wa]s beyond question that [AQC's mother] was sufficiently on notice by the time she first consulted counsel in February 2006." *Id.* at 143. At that point, her counsel could determine "whether, against whom, and in what forum to bring a malpractice action." *Id.* at 143. In other words, <u>suspecting</u> an injury is wrongfully-caused – i.e. knowing enough "to seek legal advice" - is enough to trigger accrual and it is not delayed because a claimant does not know whether the

claim is actionable or who specifically is at fault. [*See* Dkt. 186, Raytheon Br. at pp. 26-28 (collecting cases supporting same)].

It is incontrovertible that Plaintiffs knew enough to "seek legal advice," and in fact did seek legal advice, to determine "whether, against whom, and in what forum" to bring an action when they hired counsel and filed lawsuits. That is when their claims accrued. Their reliance on the U.S. Government's alleged concealment and lies during the investigation and litigation of the plane crash is only relevant to fraudulent concealment, not the discovery rule. *Rotella* is instructive.

In *Rotella v. Wood*, the U.S. Supreme Court held that a RICO claim accrues under the discovery rule when the claimant discovers his injury and not the other elements of his claim, like the requisite pattern of racketeering activity. 528 U.S. 549, 552 (2000). While acknowledging the plaintiff's concern that the racketeering activity "may well be complex, concealed, or fraudulent" and suits could be barred by Fed. R. Civ. P. 9(b) because a plaintiff will not be able to plead fraud with particularity until they discover the fraudulent activity, the Court rejected that this could extend the point of accrual. *Id.* at 559-560. Instead, it noted that federal statute of limitations are still subject to "equitable principles of tolling" that a plaintiff could rely upon when they need information on the scheme and perpetrators. *Id.* Fraudulent concealment is a form of equitable tolling and the only doctrine Plaintiffs' allegations of concealment invoke. *See Zirvi v. Flatley*, 838 F. App'x 582, 585 (2d Cir. 2020).

## V.    PLAINTIFFS HAVE NOT ALLEGED FRAUDULENT CONCEALMENT AGAINST RAYTHEON

Raytheon rests on the fraudulent concealment argument in its opening brief. [Dkt. 186, Raytheon Br. at pp. 29-32]. Plaintiffs do not contest Raytheon's authority holding fraudulent concealment must be shown as to each defendant, nor do they attempt to identify any acts of

concealment undertaken by Raytheon[6]. Judge Kelley's analysis of this issue prior to the case being transferred sums it up perfectly: "Plaintiffs have failed to plead with any particularity, fraudulent concealment allegations against Contractor Defendants, so the analysis for those respective defendants ends here." *Krick*, 695 F. Supp. at 217.

In sum, Plaintiffs' cause of action accrued, at the latest, when their decedents' representatives filed lawsuits in the late 1990s. The statute of limitations expired decades ago and there are no doctrines or exceptions that can render their claims against Raytheon timely.

## VI. PLAINTIFFS' ALLEGATIONS OF FRAUD CANNOT INVALIDATE RELEASES AT ISSUE[7]

The U.S. Government's alleged fraudulent acts cannot invalidate the Releases[8] between Boeing and Plaintiffs' decedents' representatives[9] because 1) the language of the Releases forecloses the "justifiable reliance" element of fraud, 2) the U.S. Government was not involved in negotiating the Releases, and 3) Plaintiffs ratified the Releases by not seeking to return the consideration paid or take other steps to void the Releases upon learning of the alleged fraud.

### a. Plaintiffs Cannot Establish Justifiable Reliance

Plaintiffs acknowledge that to invalidate a release based on fraud, they need to establish

---

[6] Plaintiffs sometimes cite to "Defendants" when referring to acts of concealment, but neither their Complaint nor brief refers to any acts of concealment by Raytheon.

[7] To the extent the Court addressed the claims of the Gray Plaintiffs that are the subject of the parties' supplemental briefs, [Dkt. 215, Defs.' Supp. Br.; Dkt. 215-4 (Gray Release)], Raytheon hereby incorporates the arguments in its opening brief and reply.

[8] Plaintiffs suggest that interpreting the parties' intent as to the scope of the releases at issue present questions of fact under New York law. [Dkt. 220, Pltfs.' Supp. Br. at pp. 2-6]. Unambiguous contracts should be enforced according to their terms and evidence outside the four corners as to intent is generally inadmissible, however. *W.W.W. Assocs. v. Giancontieri*, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 443 (1990). Whether a contract is ambiguous such that extrinsic evidence may be submitted is a question of law for the Court. *Id.* As neither Defendants nor Plaintiffs identify any ambiguous provisions, there are no factual issues presented by the releases.

[9] The settlements were also with TWA and other entities, but Raytheon refers to "Boeing" for ease of reference. Also, see Raytheon's Opening Brief (Dkt. 186) at pp. 17-24 for a summary of who the named Releasors were and why the releases are binding on all potential beneficiaries.

their "justifiable reliance" on the fraudulent statements at issue. The language of the Releases foreclose this argument.

The defense of fraud in the inducement is foreclosed to a party who disclaims, in the contract itself, reliance on fraudulent statements allegedly made to induce him to enter into the contract. *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320, 184 N.Y.S.2d 599, 601 (1959). "Under New York law, when a contract states that a contracting party disclaims the existence of or reliance upon specified representations, that party will not be allowed to claim that he was defrauded into entering the contract in reliance on those representations." *Moore v. Cohen*, 548 F. Supp. 3d 330, 343 (S.D.N.Y. 2021) (citing *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 488 (S.D.N.Y. 2017)). The Releases here contain such disclaimers:

> 9.    In entering into this Release, Releasors do not rely on any statement or representation made by any Releasee or by any attorney, agent or other person representing any Releasee concerning:
>
> > \*\*\*
> > B.  The cause or causes for the Event; or
> > C. The legal liability of any Releasee for the losses, injuries or damages to Releasors; or…
> >
> > \*\*\*

[Dkt. 187-3, Ex. C, Krick Release at BOE0040]. This is a <u>specific representation</u> that is binding upon the releasing parties that the Releasors were not relying on any statements concerning the "causes for the Event" or the "legal liability of any Releasee." Yet, Plaintiffs' very argument here is that they relied on the U.S. Government's statements as to the <u>cause of the accident</u>. This, combined with the merger clause in Paragraph 15 of the Releases, terminates any claim that Plaintiffs "justifiably relied" on any statements by the U.S. Government. [*Id.* at BOE0041 ("This Release contains the entire agreement and understanding of the parties.")].

This is further supported by Paragraph 8 of the Releases, which states, in relevant part:

> Releasors enter into this Release contemplating the possibility that facts may be subsequently discovered that could support claims as yet unasserted against

> Releasees for compensatory, consequential and/or punitive damages…. Releasors intend to discharge Releasees from all liability for all losses, injuries or damages arising out of the injury to or death of Decedent, both those now known and those that may be subsequently discovered. **This Release shall not be subject to any claim of mistake of fact or law by Releasors. Releasors also fully understand and acknowledge that facts concerning their claims may be found hereafter to be other than or different from the facts they now believe to be true. Releasors expressly accept and assume the risk of any such possible differences in facts and agree that this Release shall remain in full effect notwithstanding any such difference in facts**.

[*Id.* at BOE0039-40 (emphasis added)]. This is a precise waiver of Plaintiffs' right to claim what they are now claiming – that they were mistaken about the facts they then "believe[d] to be true," and the Releases should <u>not</u> "remain in full effect notwithstanding any such difference in facts." *See Giller v. Kate, Nussman, Ellis Farhi & Earle, LLP*, 2019 NY Slip Op 32301(U), ¶ 9 (Sup. Ct. 2019) (citing to substantially similar language in denying plaintiff's fraudulent inducement claim). Furthermore, the Releasors agreed to the following:

> 14. Nothing in this Release shall be construed as an admission of liability or fault of any Releasee or of the validity or propriety of any claims that may be asserted arising out of the Event. It is understood and agreed that this Release is made as part of the compromise and settlement of a disputed claim. **No action taken by Releasees, either previously or in connection with this compromise and settlement, shall be deemed or construed to be an admission of the truth or falsity of any matter pertaining to any claim, demand or cause of action arising out of the Event, or an acknowledgment by Releasees of any fault or liability whatsoever to Releasors or any other person or entity.** Releasors acknowledge that Releasees expressly continue to deny and disclaim liability and responsibility for the Event and intend merely to avoid litigation.

[Dkt. 187-3, Ex. C, Krick Release at BOE0041]. This is yet another representation that Releasors did <u>not</u> rely on the "truth or falsity" of any Releasees' statements about the accident.

In *Bensky v. Indyke*, a victim of Jeffrey Epstein brought suit against Epstein's lawyer and accountant for facilitating his sex-trafficking. 743 F. Supp. 3d 586, 589 (S.D.N.Y. 2024). The defendants argued that the victim's claims were barred by a release. After finding that Epstein's lawyer and accountant were included in the release even though they were not specifically named,

the Court addressed the victim's argument that, "Defendants procured [her] assent to the [release] through fraudulent inducement in the form of public and private denials as to their role in the Epstein Enterprise" when the denials were fraudulent. *Id.* at 595.

The Court rejected this argument, finding there was nothing in the release suggesting that it was based on the victim's understanding that Epstein's lawyer and accountant had nothing to do with Epstein's abuse. *Id.* The Court further explained:

> [B]y its nature, a settlement compromises claims that could otherwise be brought against the released parties. If a settlement could be defeated solely on the basis that a released party was more liable than they previously let on, then there would be no point to settling cases at all—the releasor could just keep digging for dirt.

*Id.* The same circumstances are present here. Plaintiffs argue that the U.S. Government's allegedly-fraudulent denials induced them into settling with Boeing. However, that understanding is found nowhere in the Releases. On the contrary, the Releases specifically disclaim reliance on statements extrinsic to the release. As such, Plaintiffs' allegations cannot invalidate the release.

### b. Plaintiffs Released Their Fraud Claims

"[A] release may encompass unknown claims, including unknown fraud claims, if the parties so intend and the agreement is 'fairly and knowingly made.'" *Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276, 929 N.Y.S.2d 3, 8 (2011). In *Centro*, the Court found that the following language encompassed fraud claims: "[A]ll manner of actions…whatsoever…whether past, present or future, actual or contingent, arising under or in connection with the Agreement Among Members and/or arising out of…the ownership of membership interests in [TWE]." *Id.* The Releases at bar release: "3…all actions, causes of action…, claims, and demands whatsoever, in law, admiralty, or equity, which against Releasees the Releasors ever had, now have or hereafter can, shall, or may have, for, upon, by reason of, arising out of, or in any way related to the Event." [Dkt. 187-3, Ex. C, Krick Release at BOE0037-

038]. Paragraph 8 also states that Releasors intend to discharge Releasees for all liability, including "both those know known and those that may be subsequently discovered." [*Id.* at BOE0039-40]. The Releases here have even stronger language than that in *Centro* and Plaintiffs therefore released the fraud claims they now assert.

### c. The U.S. Government's Alleged Fraud Cannot Invalidate the Releases Because It Was Not a Party to the Contract

"To invalidate a contract…, the alleged fraud must be between the parties to the contract or release, not between a party and his or her agent." *Lodhi v. Stewart's Shops*, 52 A.D.3d 1084, 1085, 861 N.Y.S.2d 160, 162 (App. Div. 3rd Dept. 2008) ("As plaintiff does not allege any fraud committed by defendant relative to the release, she is bound by that document.") (citing *Nash v. Y&T Distribs.*, 207 A.D.2d 779, 780 (App. Div. 2d Dept. 1994)). The situation here is even more removed than an agent of the contracting party because neither the U.S. Government nor Raytheon[10] had a role in Plaintiffs' settlement with Boeing. [*See* Dkt. 220, Pltfs.' Resp. at p. 6 (acknowledging "the current defendants were not involved in the original negotiations")]. Therefore, the Releases remain valid.

In addition, a party that releases a fraud claim may still challenge the release only if it can identify a separate fraud from the subject of the release. *Centro*, 17 N.Y.3d at 276, 929 N.Y.S.2d at 8. The same rule requiring the fraud to be between parties to contract applies, however. *Veroblue Farms v. Cannaccord Genuity*, No. 21-2465-cv, 2022 U.S. App. LEXIS 16344, at *5 (2d Cir. June 14, 2022) ("Therefore, the [company's] Founders' alleged fraud on VBF—which Canaccord was not directly involved with—cannot invalidate the release between Canaccord and VBF."). Thus,

---

[10] As stated above, Plaintiffs failed to plead fraudulent concealment against Raytheon, and on that basis alone, any fraud argument against Raytheon should be dismissed. Furthermore, Raytheon was not a direct contracting party to the Releases and therefore could not have fraudulently induced Releasors to enter into them. This is another basis for dismissal of the argument.

if Plaintiffs were to argue that the fraud at issue was "separate" from the subject of the Releases, it would still not save their claims.

### d. Plaintiffs Ratified the Releases

The Releases at issue have fully and finally released Plaintiffs' claims of fraud. However, for the sake of argument, if the fraud claims had not been released, a release that is the product of fraud is voidable rather than void and is capable of ratification. *See Nicomedez v. AIG*, 2012 U.S. Dist. LEXIS 153623, at *10 (S.D.N.Y. Oct. 16, 2012) (quoting *Nusbaum v. Nusbaum*, 280 A.D. 315, 318-19, 113 N.Y.S.2d 440 (App. Div. 1st Dept. 1952)). Upon learning that a release is voidable because fraud is uncovered, the releasing party must promptly repudiate the release or be deemed to have ratified it. *Id.* at *11 (quoting *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122-23 (2d Cir. 2001)). Where money is paid as consideration for a release acquired by fraud, retention of the money is a basis to find ratification. *Id.* at *12.

Plaintiffs allege that they discovered a missile caused the subject crash on April 15, 2021. [Dkt. 33, 2d Am. Compl. at ¶¶ 97-98]. The alleged fraud had thus been uncovered at that point. In the four and a half years since that time, they have not taken any steps to void the Releases and return the consideration, nor signaled their intent to do so. This constitutes ratification of the releases that bar their claims. *See Nicomedez*, 2012 U.S. Dist. LEXIS 153623, at *11-*12 (finding retention of consideration for seven months sufficient for ratification and collecting cases showing filings of EEOC actions did not constitute repudiation).

## VII. PLAINTIFFS' CLAIMS AGAINST RAYTHEON ARE NOT JUSTICIABLE UNDER THE POLITICAL QUESTION DOCTRINE

### a. Plaintiffs' Claims Require Adjudication of Matters Committed to the Legislative and Executive Branches of Government

Plaintiffs argue that the first Baker factor – whether the Constitution commits the challenged decision to another branch of government – is not invoked because they only allege "operational negligence" and product defects rather than "military strategy, foreign policy, or high-level decisions" regarding the Aegis missile system's development and testing. [Dkt. 196, Pltfs.' Br. at p. 41]. This is belied by their own allegations. [*See* Dkt. 33, 2d Am. Compl. at ¶¶ 55-82].

Plaintiffs allege that the Legislative and Executive branches wanted the Aegis development to proceed "as quickly as possible to production and deployment" due to "here and now" missile threats from rogue nations. [*Id.* at ¶¶ 56-57]. The Navy "accelerated the testing and development" when it received funding. [*Id.* at ¶ 58]. When the testing of the SPY-ID(V) radar began, there were no ships to operate it; only a New Jersey land-based testing site could. [*Id.* at ¶ 64]. Thus, "[i]nstead of waiting for five years" for ships to be constructed "so that testing could be conducted far from congested air corridors," it was tested on "an expedited basis" in and around the New Jersey site. [*Id.* at ¶ 65]. Plaintiffs call this "fast-track[] implementation…an accelerated and unrealistic timetable." [*Id.* at ¶ 67]. The Defendants thus negligently "authorized and conducted the testing of missiles in commercial airspace." [*Id.* at ¶ 108].

To evaluate this "negligent testing" allegation, the Court would have to evaluate the military's decisions considering the legislative authorization and "here and now" missile threat from rogue nations. Should the testing have "wait[ed] for five years" before a ship could be built given the threats? What is a "realistic timetable" when facing foreign threats? How are the national security risks balanced against these considerations? Plaintiffs do not address these issues in their brief, but the Court will have to in order to evaluate the reasonableness of the military's testing decisions. This is precisely what the political question doctrine is supposed to prevent – the Judicial

branch from overseeing decisions that are constitutionally relegated to the Executive branch. The case is thus far from a standard products case or simple issue of "operational negligence."

Further, the cases Plaintiffs cite in claiming this case merely presents "negligent operational conduct" do not support that conclusion. In *McMahon v. Presidential Airways, Inc.*, the issue was whether a contractor operated a flight negligently, which was solely the contractor's responsibility. 502 F.3d 1331, 1359-62 (11th Cir. 2007). Whether the flight should have occurred or whether the military should have used a contractor was not at issue, so the Court explicitly said it did not need to review <u>any</u> U.S. military decisions, unlike the present case. *Id.* Plaintiffs also cite *Peterson*, *Ward*, and *Wiener*, but none of those cases involved the political question doctrine. [[Dkt. 196, Pltfs.' Br. at pp. 42-43].

In sum, this Court will be required evaluate the reasonableness of the military's decision made by the Executive branch as to how, when, and where to test a missile defense system under the threat of hostile actors, implicating the first Baker factor[11].

### b. There Are No Judicially Discoverable, Manageable Standards for Resolving the Issues Implicated by This Lawsuit

Plaintiffs attempt to circumvent the second Baker factor – judicially discoverable and manageable standards - on the theory that standard tort rules, FAA airspace rules, and Department of Defense ("DOD") weapons testing protocols can be used to evaluate Plaintiffs' claims. [Dkt. 196, Pltfs.' Br. at pp. 43-44]. This mischaracterizes their claim.

First, there are no allegations that Defendants violated any FAA or DOD regulations in deciding to test the missiles off the coast, so their existence does not support Plaintiffs' position.

---

[11] There has been no evidence adduced to date to support Plaintiffs' claims that the missile testing occurred, and at this point in time the allegations of missile testing are just that – allegations. For purposes of this Motion, Raytheon presents arguments as if the missile testing did in fact occur as alleged, but does not concede this point, and leaves Plaintiffs to their proof.

Regardless, the Fourth Circuit rejected a similar argument in *Tiffany v. United States*, 931 F.2d 271 (4th Cir. 1991). There, plaintiffs argued that the political question doctrine was not implicated in a collision arising out of NORAD's response to an unidentified aircraft in U.S. airspace because the case was governed by "regulations, manuals, and procedures" that could be evaluated. *Id.* at 279. The court disagreed, concluding that the existence of regulations governing NORAD's conduct "does not change the reality that legislative and executive oversight of these particular military missions is to be preferred to that of the judiciary." *Id.* Such is the case here.

Second, Plaintiffs' claim focuses on the testing of what they contend was an unfinished military product, distinguishing it from other cases. They cite to *Rodriguez v. General Dynamics*, for instance, but that case simply addressed whether a fielded product (a mortar cartridge) was properly manufactured and did not involve military decisions or look at "the reasonableness of military procedures." 696 F. Supp. 2d 1163, 1185 (D. Haw. 2010). Here, the reasonableness of the military's decision to field-test the missile system and its "procedures" in doing so are directly implicated. Moreover, the purpose of product testing is to evaluate what needs to be done to meet specifications, so whether it meets specifications during testing would not be determinative of its defectiveness. Again, the relevant inquiry would be the wisdom of the testing in the context of expedited military product development while under foreign threat. In other words, "[n]o trier of fact c[ould] reach the issue of manufacturing defect without eliminating other variables which necessarily involved political questions," like the military's decisions and policies for testing the missile system. *Bentzlin v. Hughes Aircraft Co.*, 833 F. Supp. 1486, 1497 (C.D. Cal. 1993). Therefore, Plaintiffs' claims meet the second Baker factor making Plaintiffs' claims inappropriate for judicial review.

### c. Raytheon Properly Relies on *Carmichael* and *Aktepe*

Plaintiffs try to distinguish Raytheon's use of *Carmichael* and *Aktepe*, but they are on point. [Dkt. 196, Pltfs.' Br. at pp. 44-45]. *Aktepe v. USA* involved claims of an inadvertent Naval missile accidentally striking a vessel during a NATO exercise. 105 F.3d 1400 (11th Cir. 1997). In holding that it could not determine whether the Navy was negligent, the Court explained, "[i]n order to determine whether the Navy conducted the missile firing drill in a negligent manner, a court would have to determine how a reasonable military force would have conducted the drill." *Id.* at 1404. That is the central question here and a near factual parallel when the word "drill" is replaced with "test."

*Carmichael v. Kellogg* involved a U.S. Army Sargeant who was severely injured while serving as an armed escort for a convoy in Iraq. 572 F.3d 1271, 1275 (11th Cir. 2009). The military decided the timing of the convoy, the speed, the route, the vehicles, and the security measures. *Id.* at 1281-82. These decisions were based on "military judgment, experience, and intelligence-gathering," which included "calibrat[ing] the risks" and balancing them against the mission's needs. *Id.* at 1282. Here, the military had to use its judgment as to the time, place, and necessity of the expedited Aegis testing in the context of perceived threats, which would encompass the balancing of safety issues. The Court's analysis is thus directly relevant here.

Plaintiffs further suggest that their claims are different from those in the cases cited by Raytheon because they were in the wartime context. They cite to no authority limiting the doctrine to wartime (or defining what constitutes "wartime") because there is no such limitation. *See Gilligan v. Morgan*, 413 U.S. 1, 10 (1973) (applying political question doctrine to Ohio National Guard training that did not involve foreign military operations or wartime). Even if there was such a limitation, if missile firing drills constitute wartime activities, then missile firing tests constitute wartime activities as well. *See Aktepe*, 105 F.3d at 1404.

19

Finally, Plaintiffs rely on *Koohi v. United States*, 976 F.2d 1328 (9th Cir. 1992), but at least one court in the Second Circuit has declined to follow the reasoning in *Koohi* because it generally allowed judicial review of military decisions whenever monetary damages were sought and that would eviscerate the separation of powers central to the political question doctrine. *See Tarros S.p.A. v. United States*, 982 F. Supp. 2d 325, 338 (S.D.N.Y. Nov. 19, 2013). The political questions doctrine applies and Plaintiffs have failed to provide any authority to the contrary.

## **CONCLUSION**

For the reasons herein, Raytheon requests that Plaintiffs' Complaint be dismissed with prejudice, requesting costs, fees, and any other relief the Court may deem just and proper.

Dated: January 20, 2026          RAYTHEON COMPANY

                   By:    */s/ Shane B. Nichols*
                          Shane B. Nichols (*pro hac*)
                          Fitzpatrick, Hunt, & Pagano, LLP
                          shane.nichols@fitzhunt.com
                          10 S. LaSalle St., Suite 3400
                          Chicago, IL 60603
                          T: (312) 728-4902

                          Ralph V. Pagano, Esq. (RP7138)
                          Fitzpatrick, Hunt, & Pagano, LLP
                          ralph.pagano@fitzhunt.com
                          12 East 49th Street, 34th Floor
                          New York, New York 10017
                          T: (212) 937-4000
                          F: (212) 937-4050
                          *Attorneys for Defendant Raytheon Company*

**LOCAL RULE 7.1(c) CERTIFICATE OF WORD COUNT COMPLIANCE**

The undersigned certifies that this document complies with the word and page limitations in Local Rule 7.1(c), save for the exception noted herein. Each additional page beyond the 10-page reply limit, which was authorized by the Court (up to 25 pages), contains no more than 350 additional words per page, save for page 12, which is due to block quotation of a relevant document and not argument. The entire brief contains 6,613 words, calculated in accordance with the strictures of Local Rule 7.1(c).

Dated: January 20, 2026         By:     */s/ Shane B. Nichols*
                                        Shane B. Nichols (*pro hac*)
                                        Fitzpatrick, Hunt, & Pagano, LLP
                                        shane.nichols@fitzhunt.com
                                        10 S. LaSalle St., Suite 3400
                                        Chicago, IL 60603
                                        T: (312) 728-4902

**CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on January 20, 2026, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the U.S. District Court for the Eastern District of New York, by using the CM/ECF system, which will send notification of such filing to all CM/ECF participants of record in this matter.

Dated: January 20, 2026

By:     */s/ Shane B. Nichols*
        Shane B. Nichols (*pro hac*)
        Fitzpatrick, Hunt, & Pagano, LLP
        shane.nichols@fitzhunt.com
        10 S. LaSalle St., Suite 3400
        Chicago, IL 60603
        T: (312) 728-4902