UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X
:
**RONALD KRICK, Individually and on Behalf**
**of the Estate of Oliver Krick; MARGARETA**
**KRICK; CHRISTOPHER KRICK; DOUGLAS**        :    **MEMORANDUM DECISION AND**
**KEVORKIAN, Individually and on Behalf of**        **ORDER**
**the Estate of Ralph Kevorkian; LISA**        :
**MICHELSON, Individually and on Behalf of**        23-CV-8093 (AMD) (JAM)
**the Estate of Yonatan Rojany; ERIC ROJANY;**        :
**JODELLE GEARON, Individually and on**
**Behalf of the Estate of Daniel Gaetke; TODD**        :
**GAETKE; CRAIG GAETKE; WANDA KEMP,**        :
**Individually and on Behalf of the Estates of O.**
**Lamar Allen and Ashton Allen; CHRISTINE**        :
**GROGAN; EILEEN ZAHARIOUDAKIS,**
**Individually and Behalf of the Estate of**        :
**Donald Gough; and MICHAEL DETERESA,**

                                        Plaintiffs,
                                                    :

              – against –                            :

                                                    :
**RAYTHEON COMPANY; LOCKHEED**                      :
**MARTIN CORPORATION; UNITED**
**STATES; and DOES 1 through 20, inclusive,**        :

                                        Defendants.    :

-------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The plaintiffs bring this action individually and on behalf of various estates against the

United States, Raytheon Company, Lockheed Martin Corporation, and 20 John Does for

negligence, gross negligence, wrongful death and survivorship.[1]  They also bring a claim for

failure to warn and manufacturing defect against Raytheon, Lockheed, and the John Does.

Before the Court are the defendants' motions to dismiss the complaint pursuant to Federal Rules

---

[1] The plaintiffs bring their claims against the United States pursuant to the Federal Tort Claims Act
("FTCA"), 28 U.S.C. § 2671 *et seq.*

of Civil Procedure 12(b)(1) and 12(b)(6).  For the reasons that follow, the Court grants the motions.

## BACKGROUND

### I.    Factual Background[2]

This action arises from the crash of Trans World Airlines Flight 800 ("TWA 800").  On July 17, 1996 at approximately 8:20 p.m., a Boeing 747 operated as TWA 800 took off from John F. Kennedy International Airport in New York.  (ECF No. 33 ¶¶ 2, 34.)  Twelve minutes after the plane took off, it exploded and crashed into the Atlantic Ocean off the coast of Long Island.  (*Id.* ¶¶ 2, 36.)  All 230 passengers and crew members aboard the flight died.  (*Id.* ¶¶ 2, 37.)

After the crash, the National Transportation Safety Board ("NTSB") and Federal Bureau of Investigation ("FBI") launched an investigation into the cause of the explosion.  (*Id.* ¶¶ 38–39.)  The FBI "took charge," and "enlisted the assistance of the Central Intelligence Agency ('CIA')."  (*Id.* ¶ 39.)  The FBI "essentially froze the NTSB out of the investigation;" they "plac[ed] [Navy radar tapes] out of the NTSB's reach," and did not allow the NTSB to interview eyewitnesses or review the FBI's records about "the true cause of the TWA 800 crash."  (*Id.* ¶ 40.)  Eyewitnesses maintained that they "saw something arcing toward TWA 800 before the plane erupted into flames and fell from the sky," which led some to theorize that a missile struck TWA 800.  (*Id.* ¶¶ 42–46.)  According to the plaintiffs, eyewitnesses who were interviewed by the FBI "recall being threatened by the organization."  (*Id.* ¶ 41.)

---

[2] The facts are based on the allegations in the complaint, which the Court is required to accept as true on a motion to dismiss.  *See Williams v. Richardson*, 425 F. Supp. 3d 190, 200 (S.D.N.Y. 2019) ("In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint.").

At the conclusion of the investigation, the CIA prepared a video entitled "What Did The Eyewitnesses See?" (*Id.* ¶¶ 47–48.) In the video, which "was displayed during a nationally televised FBI press conference," the CIA explained its conclusions and "attempted to reconcile" eyewitness testimony — that a projectile struck the plane — with the government's "official position" — that a defect in the plane's center fuel tank caused the crash. (*Id.* ¶ 47.) The video included the words "NOT A MISSLE" in large, capitalized, and underlined font. (*Id.* ¶ 48.)

After the FBI press conference, the NTSB released a report stating that the crash was likely caused by an explosion of flammable vapors in the plane's center fuel tank. (*Id.* ¶ 50.) The report "ignored crucial evidence that ran counter to its conclusion." (*Id.* ¶ 51.) Moreover, the NTSB was "ordered not to draft analysis reports, which ran contrary to the usual procedure for NTSB aviation crash reports." (*Id.*) The government's explanation "became the publicly accepted view of what happened," and the plaintiffs "relied upon this misinformation." (*Id.* ¶ 50.) The NTSB also formed an Office of Families, which advanced the government's theory that the fuel tank caused the crash, and dismissed the idea that a missile caused the crash as a "conspiracy theory." (*Id.* ¶ 52.) Thus, according to the plaintiffs, for over twenty-five years, they and the public "were led to believe . . . that the victims of the TWA 800 crash were killed by a one-of-a-kind exploding fuel tank." (*Id.* ¶ 54.)[3]

## II.    FOIA Litigation

In March 2010, Dr. Thomas Stalcup submitted Freedom of Information Act (FOIA) requests to the CIA and the Department of Defense for information on the investigation into the

---

[3] The complaint alleges background information related to the "missile program that resulted in the crash of TWA 800." (ECF No. 33 ¶ 55.) According to the plaintiffs, the Unites States government "fast-tracked implementation of the system, and put it on an accelerated and unrealistic timeline" because of increased threats from other countries. (*Id.* ¶¶ 56–57, 67.) The government tested the missiles in and around New Jersey, in highly populated areas, and witnesses observed missiles flying in those areas. (*Id.* ¶¶ 69–81.)

TWA 800 crash and the government's missile activity around that time.  (*Id.* ¶ 4.)  *See Stalcup v. C.I.A.*, No. 11-CV-11250, 2013 WL 4784249, at *2 (D. Mass. Sept. 5, 2013), *aff'd*, 768 F.3d 65 (1st Cir. 2014); *Stalcup v. Dep't of Def.*, No. 13-CV-11967, 2015 WL 5545059, at *1 (D. Mass. Sept. 18, 2015).  In the subsequent litigation, Stalcup alleged, as the plaintiffs do in this case, that the government covered up the true cause of the crash.  (ECF No. 33 ¶¶ 1, 4.)  *See Stalcup v. C.I.A.*, 2013 WL 4784249, at *3.  The plaintiffs assert that Stalcup "obtained crucial new evidence regarding what caused TWA 800 to explode."  (ECF No. 33 ¶ 83.)  For example, he received FBI records "showing an object 'heading straight for TWA 800,'" records that were "never made part of the NTSB investigation" or released to the public or to the families of those who died in the crash.  (*Id.* ¶¶ 84–85.)  He also consulted with a former FBI official who told him that the drones used in the missile tests were near TWA 800 when the plane went down.  (*Id.* ¶ 86.)  Stalcup also deposed government witnesses, one of whom said that minutes after the crash, he was ordered to allow the FBI to remove from his facility all Navy radar tapes that might have recorded the incident.  (*Id.* ¶¶ 88–89.)  According to records from the FOIA litigation, the tapes "show an object 'impact' TWA 800, which directly contradicts the FBI's, CIAs, and NTSB's public conclusions that what caused the incident was 'NOT A MISSILE.'"  (*Id.* ¶ 92.)  According to the plaintiffs, the evidence reveals that a missile hit TWA 800, and that "the government hid this truth from Plaintiffs and the public at large for over twenty-five years."  (*Id.* ¶ 93.)

### III.    This Action

On June 28, 2022, thirteen plaintiffs brought this action individually, and some on behalf of the estates of relatives who died in the crash, in the United States District Court for the

District of Massachusetts. (ECF No. 1.)[4] The plaintiffs amended their complaint on September 19, 2022, and filed a second amended complaint on November 17, 2022. (ECF Nos. 6, 33.)[5] The plaintiffs brought claims for negligence, gross negligence, and wrongful death and survivorship against all the defendants, and against Raytheon and Lockheed for product liability for failure to warn and manufacturing defect. (ECF No. 33 ¶¶ 105–48.) They seek compensatory and punitive damages, interest, costs, expenses, and attorney's fees. (*Id.* at 35–36.)

On September 29, 2023, United States District Judge Angel Kelley ordered that the case be transferred out of the District of Massachusetts. (ECF No. 95.) The case was transferred to the Eastern District of New York on October 13, 2023. (ECF No. 100.) On January 29, 2024, the defendants asked the Court for permission to issue subpoenas to The Boeing Company for production of the settlement agreements and releases relating to the plaintiffs or their deceased

---

[4] Ronald Krick, Oliver Krick's father, brought this action individually and as personal representative on behalf of the Estate of Oliver Krick. (*Id.* ¶ 15.) Margareta Krick, Oliver's mother, and Christopher Krick, Oliver's brother, brought this action individually. (*Id.* ¶ 16–17.) Douglas Kevorkian, Ralph G. Kevorkian's son, brought this action individually and as personal representative on behalf of the Estate of Ralph G. Kevorkian. (*Id.* ¶ 18.) Lisa Michelson, Yonatan Rojany's mother, brought this action individually and as personal representative on behalf of the Estate of Yonatan Rojany. (*Id.* ¶ 19.) Eric Rojany, Yonatan's brother, brought this action individually. (*Id.* ¶ 20.) Jodelle Gearon, Daniel Gaetke's sister, brought this action individually and as personal representative on behalf of the Estate of Daniel Gaetke. (*Id.* ¶ 21.) Todd Gaetke and Craig Gaetke, Daniel Gaetke's brothers, brought this action individually. (*Id.* ¶ 22–23.) Wanda Kemp, O. Lamar Allen's sister and Ashton Allen's aunt, brought this action individually and as personal representative on behalf of the Estates of O. Lamar Allen and Ashton Allen. (*Id.* ¶ 24.) Christine Grogan, O. Lamar Allen's daughter, brought this action individually. (*Id.* ¶ 25.) Eileen Zaharioudakis, Donald E. Gough's sister, brought this action individually and as personal representative on behalf of the Estate of Donald E. Gough. (*Id.* ¶ 26.) Michael Deteresa, Donald E. Gough's nephew, brought this action individually. (*Id.* ¶ 27.)

[5] The amended complaint added Charles Henry Gray, IV and Chadwick Graham Gray as plaintiffs. Charles Henry Gray, IV is Charles Henry Gray, III's son, and he brought this action individually and as personal representative on behalf of the Estate of Charles Henry Gray, III. (ECF No. 6 ¶ 28.) Chadwick Graham Gray is also Charles Henry Gray, III's son, and he brought this action individually. (*Id.* ¶ 29.) However, the Grays were not included as plaintiffs in the second amended complaint. (*See* ECF No. 33.)

The Court refers to the second amended complaint as the "complaint."

relatives.  (ECF No. 131.)  According to defendants, the plaintiffs, or the estates of their deceased relatives, brought litigation in the TWA 800 Multi-District Litigation in the Southern District of New York in the 1990s, and those cases were settled, releases were obtained, and the cases were dismissed with prejudice.  (*Id.*)  The plaintiffs did not oppose the defendants' request (ECF No. 132), and Magistrate Judge Joseph A. Marutollo granted the motion on February 2, 2024 (*ECF Order dated Feb. 2, 2024*).  The parties received the settlement agreements and releases in March 2024.  (*See* ECF No. 166 at 1.)  On May 14, 2024, the plaintiffs Jodelle Gearon, Todd Gaetke, and Eric Rojany voluntarily dismissed their claims, and on August 29, 2024, Lisa Michelson voluntarily dismissed her claims.  (ECF Nos. 137, 138, 139, 148.)

On April 1, 2025, the defendants filed motions to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6).  (ECF Nos. 178, 181, 185.)[6]  The plaintiffs opposed the motions on July 28, 2025.  (ECF No. 196.)  Before filing their reply briefs, the defendants requested a status conference before Judge Marutollo for answers to the following questions: 1) who were the parties to the litigation; 2) which parties did the plaintiffs' counsel represent; and 3) what authority did certain plaintiffs have to act on behalf of their relatives' estates.  (ECF No. 198.) Judge Marutollo held a status conference on September 10, 2025 and ordered supplemental briefing on these issues.  (*ECF Minute Entry dated Sep. 10, 2025.*)  The parties briefed the supplemental issues, and the defendants then filed their reply briefs in support of their motions to dismiss.  (ECF Nos. 215, 220, 222, 223, 224.)

---

[6] After the parties received the settlement releases, the plaintiff's former counsel moved to withdraw, because the primary attorney switched law firms, and the attorneys at the former firm "reached an impasse as to the strategy of the case."  (ECF No. 140.)  Judge Marutollo granted the motion, and ordered the representative plaintiffs to show cause as to why they should be allowed to proceed *pro se* on behalf of the estates.  (ECF No. 152.)  Current counsel then filed a limited notice of appearance to appeal Judge Marutollo's decision on the prior counsel's motion to withdraw.  (ECF No. 154.)  The Court denied the appeal. (ECF No. 159.)  Current counsel then filed a notice of appearance in full representative capacity.  (*See ECF Minute Entry dated Dec. 16, 2024*; ECF No. 165.)

## LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id*. "Where a motion to dismiss asserts a lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) as well as other grounds for dismissal, 'the court should consider the Rule 12(b)(1) challenge first.'" *Burlington Ins. Co. v. MC&O Masonry, Inc.*, No. 17-CV-2892, 2018 WL 3321427, at *1 (E.D.N.Y. July 5, 2018) (quoting *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990)). "[I]n resolving a Rule 12(b)(1) motion, 'a district court . . . may refer to evidence outside the pleadings.'" *Molokotos-Liederman v. Molokotos*, No. 23-CV-1654, 2023 WL 5977655, at *5 (S.D.N.Y. Sept. 14, 2023) (quoting *Makarova*, 201 F.3d at 113).

To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings are construed in the light most favorable to the plaintiff. *See Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

**DISCUSSION**

The defendants make multiple arguments for dismissal of the complaint.  All the defendants argue that the plaintiffs do not have standing to bring this case because (1) those who purport to represent estates are not court-appointed personal representatives, (2) some of the estates are closed, and (3) the complaint does not allege damages specific to the plaintiffs who brought this action in their individual capacities.  (ECF No. 179 at 28–31; ECF No. 182 at 14–21; ECF No. 186 at 26–29.)  They also argue that the releases the estates signed in the prior multi-district litigation bar the plaintiffs' claims here.  (ECF No. 179 at 25–28; ECF No. 182 at 22–29; ECF No. 186 at 29–39.)  They argue that in any event, the statute of limitations has run, and the doctrine of fraudulent concealment does not toll the statute of limitations.  (ECF No. 179 at 32–45; ECF No. 182 at 29–32; ECF No. 186 at 39–47.)  The United States also argues that the plaintiffs plead an admiralty cause of action, not an FTCA action, and the FTCA does not provide a waiver of sovereign immunity for admiralty cases.  (ECF No. 179 at 46–49.) Lockheed and Raytheon also argue that this action presents nonjusticiable political questions. (ECF No. 182 at 32–36; ECF No. 186 at 47–56.)

**I.       Standing**

To have Article III standing, "the plaintiff must have alleged such a personal stake in the outcome of the controversy as to warrant its invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on its behalf."  *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*, 790 F.3d 411, 417 (2d Cir. 2015) (citation modified).  "Others may benefit collaterally from a resolution favorable to the plaintiff or suffer from an unfavorable one, but the plaintiff's genuinely personal stake ensures the presence of that concrete adverseness which sharpens the presentation of issues upon which a court so largely depends."  *Id.* (citation

modified).  Standing is a "jurisdictional issue" that "must be resolved before the merits."  *Id.*
(quoting *All. For Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir.
2006)).  The plaintiffs "bear[] the burden of establishing standing."  *Tzumi Innovations LLC v.
Regan*, 557 F. Supp. 3d 499, 505 (S.D.N.Y. 2021).

The defendants raise three issues related to the plaintiffs' standing to bring this action.
First, they argue that the plaintiffs who are purportedly acting on behalf of their deceased
relatives' estates — Ronald Krick, Douglas Kevorkian, Wanda Kemp, and Eileen Zaharioudakis[7]
— have not been appointed as representatives of those estates, and are therefore not authorized to
act on their behalf.  Second, they argue that several of the estates were closed when the plaintiffs
brought this action.  Third, they argue that the plaintiffs suing in their individual capacities do
not have standing based on the claims and injuries alleged in the complaint.

The plaintiffs do not dispute that the representative plaintiffs are not authorized
representatives or that most of the estates were closed when they initiated this action.  Rather,
they assert that some of the estates have been reopened or are in the process of being reopened,
and the Court must allow a reasonable time for the correct parties "to ratify, join, or be
substituted" pursuant to Federal Rule of Civil Procedure 17(a)(3).  (ECF No. 196 at 38.)

The Court begins by addressing the law that applies.  The United States argues that the
complaint pleads an admiralty cause of action (ECF No. 179 at 46–49), but asserts that New
York law applies to the plaintiff's FTCA claims because in "an FTCA case, courts apply the law
of the place where the alleged act or omission occurred," and the plaintiffs "allege negligent
missile testing off the coast of New York" (*id.* at 29).  Lockheed analyzes this issue primarily
under New York law, but says that the result would be the same if the Court applied substantive

---

[7] As noted earlier, Jodelle Gearon and Lisa Michelson — who also brought claims on behalf of their
  deceased relatives' estates — voluntarily dismissed their claims.  (ECF Nos. 137, 148.)

maritime law — specifically the Death on High Seas Act ("DOHSA"). (ECF No. 182 at 14–17.) Raytheon asserts only that admiralty law applies, because the "location of the crash was approximately eight nautical miles south of the shore of Long Island, which is within the territorial waters of the United States." (ECF No. 186 at 22–26.) This distinction is ultimately "academic," because "the New York statute has the same effect as DOHSA." *Cruz v. Korean Air Lines Co.*, 838 F. Supp. 843, 847 (S.D.N.Y. 1993).[8]

The plaintiffs do not have standing to bring this action regardless of the applicable standard. Under New York law, "[o]nly a duly appointed personal representative may bring suit on behalf of a decedent." *Palladino v. Metro. Life Ins. Co.*, 188 A.D.2d 708 (3rd Dep't 1992). "Inasmuch as letters of administration have not been issued to plaintiff, he has no standing to sue." *Id.*; *see also Hernandez v. N.Y.C. Health & Hosps. Corp.*, 78 N.Y.2d 687, 692 (1991) ("'Personal representative' is defined as 'a person who has received letters to administer the estate of a decedent.'" (quoting N.Y. Est. Powers & Trusts § 1–2.13)). Similarly, DOHSA provides that "the personal representative of the decedent may bring a civil action" when "the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas." 46 U.S.C. § 30302. "Courts have consistently interpreted the language in [DOHSA] providing that the personal representative 'may maintain a suit for damages . . . for the exclusive benefit' of other claimants to mean that *only* the personal representative may bring the claims of the other claimants." *Cruz*, 838 F. Supp. at 846–47 (emphasis in original).

---

[8] Raytheon asserts that the admiralty law analysis is governed by *Moragne v. State Marine Lines*, 398 U.S. 375, 395 (1970) ("*Moragne*"), but that the "same result occurs under New York's wrongful death statute and the Death on High Seas Act (DOHSA)." (ECF No. 186 at 28 n.6.) *See also Complaint of Cosmopolitan Shipping Co., S. A.*, 453 F. Supp. 265, 266-67 (S.D.N.Y. 1978) (stating that the "federal causes of action upon which [the plaintiff's] seek recovery . . . all vest in the 'personal representative' of the deceased seaman," where the plaintiffs brought claims pursuant to DOHSA, the Jones Act, and "the wrongful death action recognized under" *Moragne*).

The complaint alleges that Ronald Krick is the personal representative of the Estate of Oliver Krick, Douglas Kevorkian is the personal representative of the Estate of Ralph G. Kevorkian, Wanda Kemp is the personal representative of the Estates of O. Lamar Allen and Ashton Allen, and Eileen Zaharioudakis is the personal representative of the Estate of Donald E. Gough. (ECF No. 33 ¶¶ 15, 18, 24, 26, 130.) The complaint does not allege that a court appointed these plaintiffs as personal representatives or that they were issued letters of administration. *See e.g., Sonenberg v. Princess Cruise Lines, Ltd.*, No. 14-CV-8971, 2015 WL 13915634, at *9 (C.D. Cal. Apr. 22, 2015) ("Absent such facts" "indicating that [the plaintiff] was appointed by a court as the executrix or administratrix of [the] estate," "the bare allegation that plaintiff is the personal representative of [the] estate does not give rise to a plausible inference that she is the estate's personal representative as that term is defined in DOHSA." (citation modified)).

The defendants also submitted documents from the courts in which the estates were probated, which show that except for Ronald Krick, the other representative plaintiffs are not court-appointed personal representatives. (*See e.g.*, ECF Nos. 180-5, 180-6, 180-7, 180-8.)[9] Thus, these plaintiffs do not have standing to bring claims on behalf of their relatives' estates. *See Cruz*, 838 F. Supp. at 846–47 (decedent's widow "as the legal representative of the decedent's estate, had the sole authority to bring claims for the children and had full authority to settle those claims," and the children "had no authority either to bring or to settle such claims" even though the "claims existed for their benefit"); *Hartke v. Bonhams & Butterfields Auctioneers Corp.*, No. 22-CV-3571, 2024 WL 246139, at *6 (S.D.N.Y. Jan. 23, 2024) (the

---

[9] The plaintiffs "object to any consideration of the [defendants'] exhibits" (ECF No. 196 at 16), but do not deny their authenticity. The Court "may refer to evidence outside the pleadings" to resolve a Rule 12(b)(1) motion. *Molokotos*, 2023 WL 5977655, at *5 (citation omitted).

plaintiff lacked standing because she "does not plead that the Probate Court appointed [her] to serve as the executor, administrator, or personal representative of [the] estate, or that she received any letters of administration"), *aff'd sub nom. Hartke on behalf of Est. of Hartke v. Bonhams & Butterfields Auctioneers Corp.*, No. 24-258, 2024 WL 4380315 (2d Cir. Oct. 3, 2024). The documents also reveal that almost all of the estates were closed by the early 2000s (*see* ECF Nos. 180-5, 180-6, 180-7), and the complaint does not allege that the estates were reopened and that a court appointed new personal representatives.[10]

The plaintiffs do not dispute that the complaint lacks sufficient allegations about their appointment as personal representatives of their relatives' estates. Instead, the plaintiffs assert that O. Lamar Allen's estate has been open since the 1990s and was never closed, Oliver Krick's estate was reopened,[11] and the remaining estate plaintiffs have filed petitions to reopen the estates and are awaiting court dates. (ECF No. 196 at 21.) The plaintiffs also argue that these defects are "readily curable under FRCP 17(a)(3)," which provides that "technical defects in capacity are procedural, not jurisdictional, and can be cured during the litigation." (*Id.* at 22.) In other words, the plaintiffs maintain that the Court should wait to see if they can establish standing.

Even assuming that the plaintiffs could cure these deficiencies, the complaint would still have to be dismissed, because, as explained below, the settlement releases from the multi-district litigation bar the plaintiffs' claims in this action.

---

[10] The defendants assert that all of the estates were closed, but the documents they submitted for the Estates of O. Lamar Allen and Ashton Allen do not show that those estates were closed. (*See* ECF No. 180-8.) However, those documents show that Betty Anne Allen, not Wanda Kemp, was appointed administrator of the estates. (*Id.* at 7.)

[11] The order reopening Oliver Krick's estate was signed July 15, 2025, well after the plaintiffs initiated this action. (ECF No. 194-2 at 36.) *See Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 68 (S.D.N.Y. 2013) ("A plaintiff's standing is considered at the time the action was commenced.").

In addition to the four plaintiffs who brought this action both as representatives and in their individual capacities, five plaintiffs brought this action only in their individual capacities — Margareta Krick, Christopher Krick, Craig Gaetke, Christine Grogan, Michael Deteresa[12] — and brought claims for negligence, wrongful death and survivorship, and failure to warn and manufacturing defect. But these plaintiffs also lack standing. Only administrators of an estate have "standing to pursue [] cause[s] of action for wrongful death" or "claim[s] based on pain and suffering under survivorship." *Frometa v. Mar-Can Transp. Co., Inc.*, 72 Misc. 3d 316, 327 (N.Y. Sup. Ct. 2021). These plaintiffs are not administrators of the estates, and do not have standing to pursue their wrongful death and survivorship claims. In their opposition to the defendants' motions, the plaintiffs say they are bringing claims "in their individual capacities for their own injuries, including loss of companionship and emotional distress" (ECF No. 196 at 38), but other than a single list of various "damages and losses" they suffered (ECF No. 33 ¶ 119), the complaint does not allege any facts to support their negligence or product liability claims. These allegations are insufficient to show how the plaintiffs were personally injured.

## II. Settlement Releases

Shortly after the TWA 800 crash, various plaintiffs brought lawsuits related to the crash against Boeing, TWA, and Hydro-Aire, Inc. In February 1997, the Judicial Panel on Multidistrict Litigation transferred all wrongful death cases arising from the TWA 800 crash to the Southern District of New York for consolidated pretrial proceedings. *See In re Air Crash Off Long Island, New York, on July 17, 1996*, 209 F.3d 200, 201 (2d Cir. 2000). As of 1998, 145 cases had been consolidated. *Id.* The claims were ultimately dismissed pursuant to settlement agreements. (*See* ECF No. 196 at 11; ECF No. 179 at 22.) The defendants assert that six of the

---

[12] As noted earlier, Eric Rojany and Todd Gaetke voluntarily dismissed their claims. (ECF Nos. 138, 139.)

nine individual plaintiffs in this case personally signed general releases, and other individuals signed releases for the decedents on whose behalf the other three plaintiffs bring this action. (*See e.g.*, ECF No. 179 at 22.)  The defendants argue that the plaintiffs cannot bring this action because those releases cover the claims brought here.  (*See* ECF No. 179 at 25–28; ECF No. 182 at 22–29; ECF No. 186 at 29–39.)

     *a.  Consideration of the Releases*

First, the Court must determine whether it can consider the releases at this stage of the case.  The United States frames this issue in the context of sovereign immunity; it argues that the United States has waived its sovereign immunity under the FTCA "only to the extent that a similarly-situated private person could be liable under local law," and that the plaintiffs fail to allege "that a private person would be liable to them" because of the releases.  (ECF No. 179 at 24–26.)  Because sovereign immunity is "jurisdictional in nature," and a case is dismissed under Rule 12(b)(1) where there is no waiver of sovereign immunity, *Hamm v. United States*, 483 F.3d 135, 137 (2d Cir. 2007), the Court can consider the releases in resolving the United States' motion.  *See Figueroa v. Ministry for Foreign Affs. of Sweden*, 222 F. Supp. 3d 304, 307 (S.D.N.Y. 2016) ("[W]here jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists.").

Lockheed notes that some courts have considered releases under Rule 12(b)(1) and others have done so under Rule 12(b)(6), and asserts that the Court can consider the releases under either standard.  (ECF No. 182 at 26–29.)  Raytheon argues only that the Court can consider the releases under Rule 12(b)(6).  (ECF No. 186 at 30.)  The plaintiffs do not challenge the Court's

authority to consider the releases at this stage of the litigation; they argue that the releases do not bar the plaintiffs' claims in this case.  (*See* ECF No. 196 at 24–27.)

Courts adjudicating Rule 12(b)(6) motions generally "do not look beyond 'facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken.'"  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Entm't Props. Tr.,* 817 F.3d 46, 51 n.2 (2d Cir. 2016)).  The Second Circuit has "recognized, however, that in some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss."  *Id.*  "A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'"  *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002)).

In addition, courts can take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *Lee v. Springer Nature Am., Inc.*, 769 F. Supp. 3d 234, 247 (S.D.N.Y. 2025) (quoting Fed. R. Evid. 201).  "Courts have . . . taken judicial notice of materials in the public record, such as federal copyright registrations, newspaper articles, and regulatory filings."  *Id.* (quoting *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 462 (S.D.N.Y. 2020)). "Settlement agreements are documents of which a court may take judicial notice in order to determine whether future claims are barred by a previous settlement."  *Deylii v. Novartis Pharms. Corp.*, No. 13-CV-06669, 2014 WL 2757470, at *4 (S.D.N.Y. June 16, 2014). "Moreover, if taking judicial notice of a previous agreement would aid a court in resolving

whether to 'dispose of [the] matter . . . it makes no sense to deny dismissal simply because [the agreement] was not referenced in the [c]omplaint.'" *Johnson v. City of New York*, No. 21-CV-10535, 2023 WL 5629232, at *3 (S.D.N.Y. Aug. 31, 2023) (quoting *Deylii*, 2014 WL 2757470, at *4) (alterations in original). Courts also "retain[] discretion to consider even at this early stage an affirmative defense" — for example, "that a plaintiff's claim is barred by agreement" — "that presents a straightforward issue of law." *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 400–01 (S.D.N.Y. 2023).

The plaintiffs do not dispute the authenticity of the releases. To the contrary, in opposing the defendants' motion to seal the releases, the plaintiffs acknowledged that the "releases at issue here emerged from [the] settlements" of the multi-district litigation, and opposed sealing because "the fact of settlement releases has been judicially reported." (ECF No. 174 at 2, 8 (citing *Krick v. Raytheon Co.*, 695 F. Supp. 3d 202, 208 (D. Mass. 2023)).) When the defendants asked the Court for permission to subpoena Boeing for the releases (ECF No. 131), the plaintiffs responded that they would "not oppose a narrowly-tailored subpoena issued to the MDL defendant(s) who drafted the settlement agreements and releases;" the plaintiffs suggested in the alternative that the plaintiffs could disclose the releases "if the MDL defendant(s) agree in writing to waive the confidentiality provisions of the settlement agreements and releases" (ECF No 132). The defendants subsequently subpoenaed and received the releases from Boeing.

Because there is no question that the Court can consider the releases in resolving the United States' motion pursuant to Rule 12(b)(1), it would be inefficient to consider them for that motion, but not the other defendants' motions. Accordingly, the Court takes judicial notice of the releases and considers them in resolving all of the defendants' motions. *See Doe 1*, 671 F. Supp. 3d at 401 ("The authenticity of the Settlement Agreement is not disputed, and neither party

has suggested that extrinsic evidence would inform the Court's interpretation of it. Thus, [the defendant's] argument presents an unfettered question of law that can be resolved on a motion to dismiss and should not be deferred."); *Giuffre v. Andrew*, 579 F. Supp. 3d 429, 438 (S.D.N.Y. 2022) (considering settlement agreement, even though it "neither appears in nor is referred to in the complaint," because it is "concededly is authentic," its "wording (as distinguished from its legal effect) is undisputed, and the Court consequently has taken judicial notice of it"); *Bensky v. Indyke*, 743 F. Supp. 3d 586, 593 (S.D.N.Y. 2024) ("[The plaintiff] doesn't dispute the release's authenticity or that she signed it. Nor does she argue that extrinsic evidence is needed to interpret the release's terms. She just says that the release, by its terms, shouldn't apply to the claims here. So, consistent with *Doe I* and *Giuffre*, the Court may consider the release on a motion to dismiss.")

  *b. Scope of Releases*

  Next, the Court must determine whether the releases cover the parties and claims in this case. The defendants attached to their papers releases related to the remaining nine plaintiffs: Ronald Krick (ECF No. 187-3), Margareta Krick (ECF No. 187-3), Christopher Krick (ECF No. 187-3), Christine Grogan (ECF No. 187-6), Eileen Zaharioudakis (ECF No. 187-8), Douglas Kevorkian (ECF No. 187-9), Craig Gaetke (ECF No. 187-7), Wanda Kemp (ECF No 187-4), and

Michael Deteresa (ECF No. 187-8).[13]  All of the releases are governed by New York law, except

for the Kevorkian release, which is governed by California law.  (*See* ECF No. 187-9 ¶ 16.)[14]

"It is well established that settlement agreements are contracts and must therefore be

construed according to general principles of contract law." *Tromp v. City of New York*, 465 F.

App'x 50, 51 (2d Cir. 2012) (quoting *Collins v. Harrison–Bode*, 303 F.3d 429, 433 (2d Cir.

2002)).  "'Where the language of [a] release is clear, effect must be given to the intent of the

parties as indicated by the language employed.'"  *Id.* (quoting *Wang v. Paterson,* No. 07-CV-

2032, 2008 WL 5272736, at *4 (S.D.N.Y. Dec.18, 2008)) (alteration in *Tromp*).  "[U]nder New

York law, '[e]xtrinsic evidence of the parties' intent may be considered only if the agreement is

ambiguous.'"  *Solis v. 666 Fifth Asociates LLC*, No. 20-CV-5105, 2021 WL 5998416, at *3

(S.D.N.Y. Dec. 20, 2021) (quoting *Greenfield v. Philles Records*, 98 N.Y.2d 562, 569 (2002)).

"Under New York law, a contract is unambiguous 'if the contract language has a definite and

precise meaning . . . and concerning which there is no reasonable basis for a difference of

---

[13] In supplemental briefing the parties addressed an issue related to two additional purported plaintiffs, Charles Henry Gray, IV and Chadwick Graham Gray.  (*See* ECF Nos. 215, 220.)  The defendants assert that they did not address these plaintiffs in their motions to dismiss because those plaintiffs were previously dismissed; they were not named in the original complaint (ECF No. 1), were added in the amended complaint (ECF No. 6 ¶¶ 28–29), and then omitted from the second amended complaint (ECF No. 33).  In addition, filings by both the former and current plaintiffs' attorneys suggested that the Grays were not plaintiffs.  For example, the plaintiffs' former attorney filed a letter in September 2024 with contact information for the remaining plaintiffs and did not list the Grays.  (ECF No. 151.)  The plaintiffs' current attorney filed a status report in October 2024 in which she identified nine remaining plaintiffs; she did not include the Grays.  (ECF No. 157 ¶ 3.)  The defendants assert that the Grays "re-emerged as active participants only after [the defendants] filed their Motions to Dismiss, and without any notice." (ECF No. 215 at 6.)  The plaintiffs seek leave to amend the complaint to add the Grays back to the complaint, on the theory that without "a court order explicitly dismissing [the Grays] with prejudice, their status is not conclusively adjudicated by their mere omission from the amended complaint."  (ECF No. 220 at 10.)  Whatever the merits of that argument, amendment would be futile because the Grays, like the other plaintiffs, are barred from bringing this action by the releases they signed in the multi-district litigation.  (*See* ECF No. 215-4 (Chadwick Graham Gray release); ECF No. 215-5 (Charles Henry Gray, IV release).)

[14] The releases are materially the same, so the Court uses the Krick release to refer to all of them.  (*See* ECF No. 187-3)

opinion.'" *Burrell v. Sowers*, No. 22-CV-2687, 2023 WL 7320867, at *1 (2d Cir. Nov. 7, 2023)

(quoting *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 157 (2d Cir.

2016)). Similarly, under California law "[t]he interpretation of a release is governed by the same

principles applicable to any other contract." *Wave Neuroscience, Inc. v. Peaklogic, Inc.*, No. 21-

CV-1330, 2024 WL 4048862, at *1 (S.D. Cal. Sept. 3, 2024). "A contract must be so interpreted

as to give effect to the mutual intention of the parties as it existed at the time of contracting, so

far as the same is ascertainable and lawful." *Id.* "To ascertain the parties' intent the Court must

start with the language of the contract itself and if that language is clear and explicit, it governs."

*Id.*

Six of the nine plaintiffs remaining in this case personally signed releases: Ronald Krick,

Margareta Krick, Christopher Krick (ECF No. 187-3), Christine Grogan (ECF No. 187-6), Eileen

Zaharioudakis (ECF No. 187-8), and Douglas Kevorkian (ECF No. 187-9). As for the other

plaintiffs, the releases for their relatives provide that the signatories are authorized "to execute

this release on behalf of Decedent's Estate and all heirs thereto." (*See* ECF No. 187-7 (Craig

Gaetke); ECF No 187-4 (Wanda Kemp); ECF No. 187-8 (Michael Deteresa).) The releases

unambiguously bind not only the personal representatives who signed the releases, but all

beneficiaries, regardless of whether the beneficiaries signed the releases themselves.

> This Release is intended to, and Releasors represent and warrant
> that it will, dispose of all liability of Releasees to Releasors and all
> heirs and dependents of Decedent not otherwise identified, and
> their successors and assigns, that might now or in the future assert
> a claim, demand, action or bring suit arising out of injury to or the
> death of Decedent.

(*See, e.g.,* ECF No. 187-3 ¶ 6.) *See Cruz*, 838 F. Supp. at 846–47 (decedent's widow "as the

legal representative of the decedent's estate, had the sole authority to bring claims for the

children and had full authority to settle those claims," even though the "claims existed for [the children's] benefit").

The releases also cover unnamed entities.

> Releasors state that they intend to release fully all individuals, entities or corporations, whether specifically named or not, that might be liable for damages arising out of the injury to or death of Decedent.  Releasors agree that they will not, directly or indirectly, make or cause to be made any further action against any person (including any individual, corporation or other entity) for losses, damages or injuries arising out of the injury to or death of Decedent.

(*See, e.g.,* ECF No. 187-3 ¶ 5.)  The releases also define the "Releasees:"

> all other persons and entities not specifically identified who are or may be liable to Releasors in whole or in part for any and/or all damages and losses to Releasors, whether known or unknown, arising out of or in any way related to or resulting from the loss of TWA Flight 800.

(*See, e.g.,* ECF No. 187-3 at 1.)  The plaintiffs allege that the defendants here are liable for damages "arising out of or in any way related to or resulting from the loss of TWA Flight 800." (*Id.*; *see generally* ECF No. 33.)  Thus, the releases apply to the defendants in this action, even though they were not parties in the multi-district litigation.[15]

Finally, the Court must determine whether the releases bar the claims the plaintiffs bring here.  The plaintiffs argue that "newly uncovered evidence reveals systemic efforts by the Defendants to fraudulently conceal critical facts before, during, and after the settlement period, thereby invalidating the agreements."  (ECF No. 196 at 24–25.)  This argument mirrors the theory of the plaintiffs' complaint: that the defendants falsely claimed that a fuel tank explosion caused the TWA 800 crash, while covering up the true cause — a government-tested missile that

---

[15] The release that Douglas Kevorkian signed identifies the United States as a releasee.  (ECF No. 187-9 at 2.)

hit the plane. (*Id.* at 25.) The defendants argue that the general language in the releases covers claims of which the plaintiffs were unaware when they signed the releases, including fraudulent concealment claims. (*See* ECF No. 222 at 10–13; ECF No. 223 at 3–5; ECF No. 224 at 15–20.)

"Under New York law, 'a valid release constitutes a complete bar to an action on a claim which is the subject of the release.'" *Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 362 (S.D.N.Y. 2022) (quoting *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011)), *amended*, No. 21-CV-1657, 2022 WL 2479110 (S.D.N.Y. July 6, 2022), and *aff'd sub nom. In re Wade Park Land Holdings, LLC*, No. 23-591, 2024 WL 3024648 (2d Cir. June 17, 2024). "[A] release may encompass unknown claims, including unknown fraud claims, if the parties so intend and the agreement is 'fairly and knowingly made.'" *Id.* (quoting *Centro Empresarial*, 17 N.Y.3d at 276.) "A general release 'prevents plaintiffs from . . . bringing an action for fraud based on misrepresentations predating it' in the absence of allegations that the release itself 'was induced by a separate fraud.'" *Id.* (quoting *Arfa v. Zamir*, 17 N.Y.3d 737 (2011)). "In particular, 'a party that releases a fraud claim may later challenge that release as fraudulently induced only if it can identify a separate fraud from the subject of the release. Were this not the case, no party could ever settle a fraud claim with any finality.'" *Id.* (quoting *Centro Empresarial*, 17 N.Y.3d at 276). "[W]hen general language is used in the releasing document, 'the release is to be construed most strongly against the releasor.'" *Consorcio Prodipe v. Vinci,* 544 F. Supp. 2d 178, 189 (S.D.N.Y. 2008) (quoting *Middle East Banking Co. v. State Street Bank Intern.*, 821 F.2d 897, 907 (2d Cir. 1987)).

Furthermore, "when a 'contract states that a contracting party disclaims the existence of or reliance upon *specified* representations, that party will not be allowed to claim that he was defrauded into entering the contract in reliance on those representations.'" *Moore v. Cohen*, 548

F. Supp. 3d 330, 343 (S.D.N.Y. 2021) (quoting *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 488

(S.D.N.Y. 2017)), *aff'd sub nom. Moore v. Baron Cohen*, No. 21-CV-1702, 2022 WL 2525722

(2d Cir. July 7, 2022). For example, in *Moore,* the court held that Moore's affirmations that he

was "not relying upon any promises or statements made by anyone about the nature of the

Program or the identity, behavior, or qualifications of any" other individuals who were

participating in the Program, and that he had "no expectations or understandings concerning the

conduct, offensive or otherwise, of anyone involved in this Program" constituted "an explicit

disclaimer." *Id.* Moore "disclaimed reliance on the very 'promises or statements' that he now

relies on to argue fraudulent inducement;" he "argued that the waivers [he] signed should not be

enforced because [he] w[as] fraudulently induced by misrepresentations as to the nature of the

production and identities of the defendants." *Id.* at 344.

> The releases at issue here are general releases. They provide:

>> Releasors release and forever discharge any and all actions, causes
>> of action, suits . . . and demands whatsoever, in law, admiralty or
>> equity, which against Releasees the Releasors ever had, now have
>> or hereafter can, shall or may have, for, upon, by reason of, arising
>> out of, or in any way related to the Event . . . This Release
>> expressly extends to and includes, but is not limited to, any and all
>> causes of action based on any wrongful death act, survival statute,
>> or common law. This Release also expressly extends to and
>> includes, but is not limited to, each and every claim or cause of
>> action that could have been asserted for all past and future
>> economic damages, noneconomic damages and awards recoverable
>> or potentially recoverable from any person, including, but not
>> limited to . . . pain and suffering, grief or emotional distress, and
>> loss of consortium, support, pecuniary benefits, income,
>> companionship, assistance, services, training, education or society.

(ECF No. 187-3 ¶ 3.)

>> Releasors enter into this Release contemplating the possibility that
>> facts may be subsequently discovered that could support claims as
>> yet unasserted against Releasees for compensatory, consequential
>> and/or punitive damages. Releasors realize that losses, injuries or
>> damages not now known may be subsequently discovered and that

their known losses, injuries or damages may prove to be greater
than presently believed . . . Releasors intend to discharge Releasees
from all liability for all losses, injuries or damages arising out of
the injury to or death of Decedent, both those now known and
those that may be subsequently discovered.  This Release shall not
be subject to any claim of mistake of fact or law by Releasors.
Releasors also fully understand and acknowledge that facts
concerning their claims may be found hereafter to be other than or
different from the facts they now believe to be true.  Releasors
expressly accept and assume the risk of any such possible
differences in facts and agree that this Release shall remain in full
effect notwithstanding any such difference in facts.  Releasors
waive any rights or benefits conferred by any statute or common
law decision with respect to unknown or unsuspected claims . . .

(*Id.* ¶ 8.)  This language covers "any and all actions . . . arising out of, or in any way related to the" TWA 800 crash (*id.* ¶ 3), and contemplates the possibility that information may be subsequently discovered related to liability for the crash, and that the facts may turn out to be different than those that were known at the time the releases were signed.  "Such language of 'remarkable breadth' makes clear the parties' intent to release all claims, including those of fraudulent inducement."  *Consorcio Prodipe*, 544 F. Supp. 2d at 192 (citation omitted); *see also Shapiro v. NFGTV, Inc.*, No. 16-CV-9152, 2018 WL 2127806, at *7 (S.D.N.Y. Feb. 9, 2018) ("The 'clear, broad, and dispositive[ ]' language used in the release agreed to by Plaintiff bars Plaintiff from asserting any claims related to her participation in the Program, including those involving fraud."); *Kalikow*, 589 F. Supp. 3d at 364 ("The references to known and unknown claims, to foreseen or unforeseen claims, and to claims which are contingent and which Plaintiffs 'may have,' combined with the absence of any language excluding fraud claims, plainly reflects the parties' intent that fraud claims would be included in the scope of the release.")[16]

---

[16] The plaintiffs argue that there are "genuine disputes . . . regarding the parties' intent" and that discovery is needed.  (ECF No. 220 at 3.)  The cases they cite, however, are readily distinguishable, because the agreements did not "clearly evidence" the intent to release liability.  *See Doe 1*, 671 F. Supp. 3d at 402 ("Read as a whole, therefore, the Settlement Agreement does not 'clearly evidence' an intent to benefit Deutsche Bank.  Thus, the Court finds that Deutsche Bank is not a third-party beneficiary of that

The releases also contain unequivocal disclaimers.

> In entering into this Release, Releasers do not rely on any statement or representation made by any Releasee or by any attorney, agent or other person representing any Releasee concerning:
>
> . . .
>
> b. The cause or causes for the Event; or
>
> c. The legal liability of any Releasee for the losses, injuries or damages to Releasors

(*See, e.g.,* ECF No. 187-3 ¶ 9.) The releasors disclaimed reliance on statements or representations regarding the "cause of causes for the Event" and the "legal liability of any Releasee for the losses." *Id.* This disclaimer clearly forecloses the plaintiffs' claim that the defendants fraudulently concealed the true cause of the TWA 800 crash. *See Moore*, 548 F. Supp. 3d at 343. The releases — the subject of which was the TWA 800 crash — also cover the plaintiffs' claim that the defendants fraudulently misled them as to the true cause of the TWA 800 crash. *See Int'l Bus. Machines Corp. v. Simon*, 376 F. Supp. 3d 292, 302 (S.D.N.Y. 2019) (where the "subject of the release" included claims involving "any other matters related to" a software agreement, "alleged understatement of Sales Revenue" related to the agreement was not a "separate fraud"); *O.F.I. Imports Inc. v. Gen. Elec. Cap. Corp.*, No. 15-CV-7231, 2016 WL 5376208, at *5 (S.D.N.Y. Sept. 26, 2016) (where the "Credit Agreement release applies to any and all claims relating to the subject matter of the Credit Agreement," the defendant's "alleged

---

agreement, and DB Jane Doe's claims are not barred by it."); *Elias v. Gettry Marcus CPA, P.C.*, No. 17-CV-4066, 2018 WL 3117510, at *4 (S.D.N.Y. June 25, 2018) ("The most natural reading of this language is that the parties intended to release each other and those individuals acting as the *counterparties'* agents, not that the parties intended to release claims against their own agents."). The plaintiffs do not deny that releases are unambiguous, which is a prerequisite to considering extrinsic evidence. *See Solis*, 2021 WL 5998416, at *3. They also argue for the first time in the two years since the defendants brought the releases to the Court's attention that the releases were "[un]authorized or fraudulently signed" and that they need "the complete executed releases" and discovery from their prior counsel. (ECF No. 220 at 5–6.) The plaintiffs offer no factual basis for their conclusory assertions.

promise to make a post-closing purchase price adjustment is not a fraud separate from the subject of the release" (citation modified)).[17]

The plaintiffs, who were represented by counsel when they signed the releases, could have negotiated to include a specific warranty in the releases, but did not. *See Morefun Co. v. Mario Badescu Skin Care Inc.*, No. 13-CV-9036, 2014 WL 2560608, at *5 (S.D.N.Y. June 6, 2014) ("If Plaintiff was concerned about the representations Defendant made prior to the signing of the Settlement Agreement, it could have included a specific warranty in the Settlement Agreement."), *aff'd,* 588 F. App'x 54 (2d Cir. 2014). Ultimately, because the plaintiffs signed general releases that broadly apply to "any and all actions . . . arising out of, or in any way related to the" TWA 800 crash (ECF No. 187-3 ¶ 3), and the plaintiffs have not alleged any fraud separate from the subject of the releases, the plaintiffs' claims are barred.[18]

## CONCLUSION

For these reasons, the defendants' motions to dismiss are granted. The plaintiffs' claims are dismissed.


**SO ORDERED.**

s/Ann M. Donnelly

_____

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
　　　 March 2, 2026

---

[17] The plaintiffs assert that the Massachusetts District Court already found that they pled "intentional deception," and that there are factual disputes that cannot be resolved at this stage. (ECF No. 196 at 27, 34.) But Judge Kelley decided only whether "interests of justice warrant transfer." (ECF No. 95 at 22.) This is distinct from the issues the Court addresses here.

[18] Because the Court finds that the releases bar this action, the Court does not consider the defendants' other arguments.